1 | DENNIS J. HERRERA, State Bar #139669
City Attorney
2 | WAYNE SNODGRASS, State Bar #148137
SHERRI SOKELAND KAISER, State Bar #197986
3 | Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
4 | City Hall, Room 234
San Francisco, California 94102-4682
5 | Telephone:    (415) 554-4691
Facsimile:    (415) 554-4747
6 | E-Mail:    sherri.kaiser@sfgov.org

7 | Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
8 | MAYOR GAVIN NEWSOM and POLICE CHIEF
HEATHER FONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPANOLA JACKSON, PAUL COLVIN, THOMAS BOYER, LARRY BARSETTI, DAVID GOLDEN, NOEMI MARGARET ROBINSON, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC. SAN FRANCISCO VETERAN POLICE OFFICERS ASSOCIATION,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM, in his official capacity; POLICE CHIEF HEATHER FONG, in her official capacity, and Does 1-10,<br><br>                    Defendants. | Case No. C09-2143 PJH<br><br>**MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, Fed. R. Civ. P. 12(b)(1)**<br><br>Hearing Date:    September 23, 2009<br>Time:    9:00 a.m.<br>Place:    Courtroom 5, 17th Floor |

DEFENDANTS' MOTION TO DISMISS
USDC No. C09-2143 PJH

n:\govlit\li2009\091333\00567581.doc

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii
NOTICE AND MOTION ......................................................................................................1
STATEMENT OF ISSUES TO BE DECIDED ....................................................................1
INTRODUCTION ..................................................................................................................2
ARGUMENT..........................................................................................................................4
    I.    PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO SHOW THIS COURT HAS SUBJECT MATTER JURISDICTION AND STAND READY TO PROVE THEIR ALLEGATIONS AS THE COURT DIRECTS. ....................4
    II.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING BECAUSE PLAINTIFFS HAVE NOT ALLEGED THAT THEY FACE PROSECUTION OR AN IMMINENT THREAT OF PROSECUTION UNDER THE CHALLENGED ORDINANCES. ..............................................................5
    III.    THE COURT ALSO SHOULD DENY STANDING FOR PRUDENTIAL REASONS TO AVOID UNNECESSARY CONSTITUTIONAL QUESTIONS ABSENT FURTHER DOCTRINAL DEVELOPMENTS OR A BETTER DEVELOPED FACTUAL RECORD. ..................................................................10
    IV.    THERE IS NO TRUE CASE OR CONTROVERSY TO ADJUDICATE BECAUSE, WITHOUT AT LEAST A SPECIFIC AND INDIVIDUALIZED THREAT OF ENFORCEMENT, THE CLAIMS ARE UNRIPE.........................12
CONCLUSION......................................................................................................................14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Alaska Airlines, Inc. v. City of Long Beach*
    951 F.2d 977 (9th Cir. 1991) .................................................................................................12

*Ashwander v. Tennessee Valley Authority*
    297 U.S. 288 (1936) ..............................................................................................................10

*Carey v. Population Services International*
    431 U.S. 678 (1977) ................................................................................................................7

*Colwell v. Dept. of Health & Human Servs.*
    558 F.3d 1112 (9th Cir. 2009) ..............................................................................................5, 9

*District of Columbia v. Heller*
    128 S.Ct. 2783 (2008) .........................................................................................................2, 12

*Doe v. Bolton*
    410 U.S. 179 (1973) ................................................................................................................6

*Laird v. Tatum*
    408 U.S. 1 (1972) ....................................................................................................................8

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ...........................................................................................................5, 13

*National Rifle Association v. City of Chicago*
    567 F.3d 856 (7th Cir. 2009) .................................................................................................12

*Nordyke v. King*
    563 F.3d 439 (9th Cir. 2009) .................................................................................................12

*Planned Parenthood of Idaho v. Wasden*
    376 F.3d 908 (9th Cir. 2004) ...................................................................................................6

*Poe v. Ullman*
    367 U.S. 497 (1961) ..............................................................................................5, 7, 8, 9, 10

*Renne v. Geary*
    501 U.S. 312 (1991) ................................................................................................................5

*Rincon Band of Mission Indians v. County of San Diego*
    495 F.2d 1 (9th Cir. 1974) ...............................................................................................7, 8, 9

*Sabri v. United States*
    541 U.S. 600 (2004) ..............................................................................................................11

*Sacks v. Office of Foreign Assets Controls*
    466 F.3d 764 (9th Cir. 2006) .................................................................................................13

*San Diego Gun Rights Comm. v. Reno*
   98 F.3d 1121 (9th Cir. 1996) ..............................................................5, 8, 9, 12, 13, 14

*St. Clair v. City of Chico*
   880 F.2d 199 (9th Cir. 1989) ..............................................................................5

*State of Georgia v. Stanton*
   6 Wall. 50 (1868) ...............................................................................................10

*Steffel v. Thompson*
   415 U.S. 452 (1974) ...........................................................................6, 7, 8, 9

*Stoianoff v. State of Montana*
   695 F.2d 1214 (9th Cir. 1983) ...........................................................................6, 9

*Thomas v. Anchorage Equal Rights Commission*
   220 F.3d 1134 (9th Cir. 2000) (en banc) ...........................................................12, 13

*United States v. Raines*
   362 U.S. 17 (1960) ............................................................................................10

*Washington Mercantile Assoc. v. Williams*
   733 F.2d 687 (9th Cir. 1984) ...........................................................................6

*Yazoo & Mississippi Valley R. Co. v. Jackson Vinegar Co.*
   226 U.S. 217 (1912) ...........................................................................................10

**San Francisco Statutes, Codes & Ordinances**
San Francisco Police Code
   Section 1290 ....................................................................................................3, 11
   Section 4512 ....................................................................................................2
   Section 4512(a) ................................................................................................3
   Section 4512(c)(1) ............................................................................................3
   Section 613.10(g) ..............................................................................................3
   Section 613.10(g)(1)-(3) ...................................................................................3

**Rules**
Federal Rules of Civil Procedure
   Rule 12(b)(1) ....................................................................................................1, 4, 5
   Rule 12(b)(6) ....................................................................................................5

**Constitutional Provisions**
United States Constitution
   Article III ..........................................................................................................5, 6

# NOTICE AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:   Defendants hereby move to dismiss the complaint in this matter in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction.  Specifically, Plaintiffs fail to demonstrate both constitutional and prudential standing, and the face of their complaint reveals that their claims are unripe.  The hearing on the motion will take place at 9:00 a.m. on September 23, 2009, or as soon thereafter as may be heard, before the Honorable Phyllis J. Hamilton in Courtroom 5 at the United States District Court, San Francisco Division, 450 Golden Gate Ave., San Francisco, California.  The motion shall be based on this memorandum of points and authorities, the accompanying request for judicial notice and proposed order, the arguments of counsel at the hearing, and any such further matters as the Court deems appropriate.

# STATEMENT OF ISSUES TO BE DECIDED

1) Do Plaintiffs have standing to make a pre-enforcement challenge to local criminal laws if they do not allege that they are being prosecuted or face a threat of imminent prosecution under those laws, if they have no concrete plans to violate the challenged laws, and if they do not demonstrate a robust history of enforcement for each law?

2) Should the Court grant prudential standing to Plaintiffs, who ask this Court to declare three local gun-related laws unconstitutional without the aid of a developed factual record, when the federal courts have a strong prudential concern in avoiding any unnecessary constitutional questions, there are serious questions about how the challenged ordinances would actually be enforced, and so little Second Amendment jurisprudence currently exists that no one knows the proper standard of review for the laws the Plaintiffs seek to challenge?

3) Are the Plaintiffs' claims ripe where, in a pre-enforcement challenge such as this one, the same considerations governing standing also govern the ripeness inquiry?

## INTRODUCTION

Just last year, for the first time in the Nation's history, the Supreme Court announced that each individual has a Second Amendment right to bear arms: specifically, the right to keep and use handguns in the home for self-defense. *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). In the giddy aftermath of that decision, the National Rifle Association and others with similar interests appear to have embarked on a campaign to identify local gun-control laws that they could challenge under *Heller* to cleanse them from the books. Or at least that's the most likely explanation for this complaint.

Because as it turns out, the three local gun-related ordinances that the Plaintiffs challenge here have never been enforced, or even inspired any threat of enforcement, against any of the Plaintiffs. They have no personal stake in the matter. Yet that type of personal, actual or imminent injury-in-fact is constitutionally required for a litigant to have standing—and for the Court to have subject matter jurisdiction to hear the complaint. The injury-in-fact requirement also serves the important purpose of separating those plaintiffs with a real story to tell and the pressing need to tell it from the ideologues, who bring to court only their debates and policy preferences.

Plaintiffs' failure to allege that they have suffered any actual or imminent injury from the ordinances they challenge reveals them as cause-based crusaders. There is nothing wrong with that, but in the absence of injury-in-fact, the Constitution says they have no business in federal court. This Court should dismiss their complaint for lack of subject matter jurisdiction.

## BACKGROUND

On May 15, 2009, the National Rifle Association (NRA) along with six San Francisco residents and the San Francisco Veteran Police Officers Association (SFVPOA) (collectively, Plaintiffs) filed suit against the City and County of San Francisco, San Francisco Mayor Gavin Newsom, and Chief of Police Heather Fong (collectively, Defendants or the City). Plaintiffs' suit is a pre-enforcement challenge to three local criminal ordinances, each of which, in their view, violates the Second Amendment.

The first, San Francisco Police Code section 4512 (the "safe storage law"), allows San Francisco residents to carry their handguns freely in their homes at all times. *See* Police Code §

4512(c)(1). But when they are not carrying their weapons, the safe storage law requires gun owners to apply a trigger lock or store the handgun in a locked container. *See id*. § 4512(a). Plaintiffs assert that this ordinance violates the Second Amendment because the handgun might be unavailable in a self-defense emergency for the time it takes to unlock it. Compl. ¶ 4.

Second, Plaintiffs also challenge a somewhat unusual section of the Police Code that, in one breath, prohibits firing both firearms and fireworks. Police Code § 1290 ("No person or persons, firm, company, corporation or association shall fire or discharge any firearms or fireworks of any kind or description" within City limits.) This section and its precursors hail back more than a century, to at least 1892, when the provision was Section 22 of General Order 1,587 of the Board of Supervisors. *See* Request for Judicial Notice, Ex. A at 35-36. Old Section 22 delimited a central area in the City bounded by various City streets within which one could not discharge any "firearms, firecrackers, bombs or fireworks," though every person explicitly retained the right to "shoot[] destructive animals within or upon his own inclosure." *Id* at 36. This prohibited shooting-bombing-exploding area also extended to within "300 yards from any public highway, or upon any ground set apart as a cemetery or public square, or park, or within three hundred yards of any dwelling-house." *Id*. Plaintiffs charge that section 1290 violates the Second Amendment because it lacks an explicit exception for discharging handguns inside the home for lawful self-defense purposes. Compl. ¶ 5.

Third, plaintiffs attack Police Code section 613.10(g), which prohibits San Francisco gun shops from selling "cop-killer" type ammunition, such as fragmenting bullets, expanding bullets, bullets that project shot or disperse barbs into the body, or other bullets that serve no sporting purpose. *See* Police Code § 613.10(g)(1)-(3). Baldly asserting that any ammunition lacking a sporting purpose must be "self-defense ammunition," and implicitly claiming that they cannot adequately defend themselves with more conventional ammunition, Plaintiffs allege that the ordinance violates the Second Amendment because it bans "the sale of ammunition specifically designed for self-defense." Compl. ¶ 6. Plaintiffs also allege that this sales ban on unusually dangerous ammunition is unconstitutionally vague and overbroad, in violation of their rights to due process. Compl. ¶ 7.

DEFENDANTS' MOTION TO DISMISS  3  n:\govlit\li2009\091333\00567581.doc
USDC No. C09-2143 PJH

Notably, the complaint lacks any allegations that Plaintiffs themselves have ever been threatened with prosecution, much less charged or prosecuted, under any of these ordinances.[1]  Rather, the complaint identifies the individual plaintiffs simply as San Francisco residents who keep handguns in their homes (Compl. ¶¶ 13-18) and who believe that their Second Amendment rights are broader in scope than the ordinances allow.  Compl. ¶ 34.  One plaintiff, David Golden, alleges that he "has been harassed by city agencies regarding the manner of storage of firearms in his home," (Compl. ¶ 17) but he does not allege that the safe storage law was implicated, nor that he was threatened with arrest or prosecution under that law.  Beyond that, Plaintiffs make no allegations of individualized injuries.  Rather, they locate their shared injury in the generalized allegation that the City "continues to enforce" the ordinances, and "Plaintiffs continue to face the potential for criminal prosecution" if they disobey the ordinances to act in harmony with their own interpretation of the Constitution.  Compl. ¶¶ 34-35.  Nowhere do they allege that they actually intend to engage in unlawful acts.  Nor do they allege any specific action that the City has taken to "enforce" any of the ordinances, whether against Plaintiffs or anyone else.

## ARGUMENT

Because the Plaintiffs do not allege imminent and individualized injuries-in-fact that flow from any of the ordinances, the complaint must be dismissed in its entirety.  Plaintiffs do not meet the criteria for Article III standing, and prudential standing concerns also counsel strongly against entertaining plaintiffs' challenge to the ordinances.  For the same set of reasons, plaintiffs' claims must also be dismissed as unripe.

**I.    PLAINTIFFS MUST ALLEGE FACTS SUFFICIENT TO SHOW THIS COURT HAS SUBJECT MATTER JURISDICTION AND STAND READY TO PROVE THEIR ALLEGATIONS AS THE COURT DIRECTS.**

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint must be dismissed if the plaintiffs' allegations fail to establish subject matter jurisdiction, including standing.  "The federal

---

[1] The NRA and SFVPOA allege no closer connection to the ordinances than the individual Plaintiffs.  Plaintiff David Golden is alleged to be a member of the NRA, and the SFVPOA claims Plaintiff Larry Barsetti.  Compl. ¶¶ 19-22.

courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record." *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("*Gun Rights Committee*") (internal quotation marks omitted).  The burden of establishing standing rests solely on the plaintiffs. *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the allegations in the complaint need not be assumed to be true.  Rather, in support of a motion to dismiss for lack of standing under Rule 12(b)(1), "the moving party may submit 'affidavits or any other evidence properly before the court….  It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.' " *Colwell v. Dept. of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  This Court may also use its inherent power to independently assess the truth of the jurisdictional allegations.  *Poe v. Ullman*, 367 U.S. 497, 501 (1961).  It is not bound to accept the complaint's allegations as true, because implausible allegations, even if not disputed by the defendant, are "too fragile a foundation for indulging in constitutional adjudication."  *Id*.

**II.   THE COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING BECAUSE PLAINTIFFS HAVE NOT ALLEGED THAT THEY FACE PROSECUTION OR AN IMMINENT THREAT OF PROSECUTION UNDER THE CHALLENGED ORDINANCES.**

Under Article III of the U.S. Constitution, the judicial branch is empowered to adjudicate only "Cases" or "Controversies."  U.S. Const. Art. III, § 1.  This limitation defines and safeguards the separation of powers between the judiciary and coordinate branches of government by preventing such intrusions as advisory opinions or preemptive injunctions, and it necessarily circumscribes the kinds of disputes the federal courts can hear and resolve.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Although portions of the standing doctrine reflect prudential considerations rather than constitutional requirements, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id*.

Accordingly, a plaintiff who seeks to invoke the jurisdiction of a federal court must demonstrate standing.  One "irreducible constitutional minimum of standing" is injury-in-fact, which

1   requires every plaintiff to show "an invasion of a legally protected interest which is (a) concrete and
2   particularized … and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " *Id*. (citations
3   omitted).  A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual
4   way." *Id*. at 561 n.1.  If the plaintiff has not yet suffered an actual injury from the complained-of law
5   or conduct, "imminent" injury may also be sufficient to show injury-in-fact.  Imminence exists where
6   plaintiff can show that the injury is "*certainly* impending" or has a "high degree of immediacy, so as to
7   reduce the possibility of deciding a case in which no injury would have occurred at all." *Id*. at 564 n.2
8   (emphasis in original) (internal quotation marks and citation omitted).

9   In the context of constitutional challenges to criminal laws, these standing concerns require the
10  plaintiff to show that he or she is actually being prosecuted or, at a minimum, has received an
11  individualized threat of imminent prosecution under the challenged law.[2]  "The mere existence of a
12  statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or
13  controversy with the meaning of Article III." *Stoianoff v. State of Montana*, 695 F.2d 1214, 1223 (9th
14  Cir. 1983).  Nor does standing flow from a simple "ideological" interest in seeing the statute
15  invalidated.  *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004).

16  But at the other end of the spectrum, neither is it necessary "that petitioner first expose himself
17  to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of
18  his constitutional rights," so long as he or she faces an individualized threat of imminent prosecution.
19  *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).  Steffel challenged the constitutionality of a criminal
20  trespass statute that the police had twice invoked to stop him from passing out handbills against the
21  Vietnam War in front of a local shopping mall.  Unwilling to be arrested, Steffel complied both times
22  the police warned him to stop handbilling or face arrest and prosecution.  In contrast, his companion
23  on the second occasion continued handbilling—and was promptly arrested and arraigned on a criminal
24  trespass charge.  Moreover, during the course of the litigation, the defendant officials stipulated that
25  Steffel would likewise be arrested for criminal trespass if were ever to ignore the order to cease

---

[2] This rule has been relaxed for First Amendment and abortion-related cases due to their unique considerations.  See, *e.g.*, *Doe v. Bolton*, 410 U.S. 179 (1973) (abortion); *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004) (same); *Washington Mercantile Assoc. v. Williams*, 733 F.2d 687, 688-89 (9th Cir. 1984) (First Amendment).

handbilling. *Id*. at 455-56. On these facts, the Court found a sufficiently concrete and imminent threat of prosecution under the challenged law to support standing. *Id*. at 459.

In *Carey v. Population Services International*, 431 U.S. 678, 682 (1977), plaintiff Population Planning Associates, Inc. (PPA), a mail-order contraceptives distributor in North Carolina, brought a challenge to the constitutionality of a New York criminal statute prohibiting the display, distribution, and advertising of contraceptives under certain circumstances. PPA did business in New York and routinely violated the New York restrictions. Various officials became aware of these violations, and PPA received two letters documenting violations and requesting future compliance. The second letter also threatened PPA, warning that its continued failure to comply would result in the matter being referred to the Attorney General for legal action. In addition, PPA received a report from inspectors at the State Board of Pharmacy. This report again documented that PPA had violated the law and been warned to stop. *See id.* at 682-83. In reliance on *Steffel*, the Court found these threats of enforcement sufficiently imminent to support standing, even though no legal action had yet been initiated against PPA. *Id*. at 684 n.3.

In *Poe*, in contrast, the Supreme Court denied standing to plaintiffs seeking a similar declaration that a Connecticut statute prohibiting the use of contraceptives was invalid. 367 U.S. at 501. Unlike PPA and its history of actual tangles with officials, the plaintiffs in *Poe* alleged only that the State's Attorney had declared that he intended to prosecute any violations of Connecticut law, including the use of and advice concerning contraceptives. *Id*. at 500-01. The Court suggested that such an allegation is insufficient to show standing, because it lacks the required immediacy. *Id*. at 501. In addition, the Court noted that the challenged statute, which had been on the books since 1879, appeared to have gone unenforced but for a single prosecution twenty years earlier, even though it was common knowledge that contraceptives were widely sold at Connecticut drug stores. *Id*. at 501-02. In the Court's view, the fact that the statute had so rarely been used made it highly improbable that the plaintiffs faced an imminent threat of prosecution. *Id*. at 502.

In *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1, 4 (9th Cir. 1974), plaintiffs were again denied standing for lack of an imminent threat of enforcement. The Band sought a declaratory judgment and injunction against the San Diego County gambling ordinance so that it

DEFENDANTS' MOTION TO DISMISS          7          n:\govlit\li2009\091333\00567581.doc
USDC No. C09-2143 PJH

could establish a card room on its reservation. To show injury-in-fact, the Band alleged that (1) even before its decision to open a card room, several tribe members had been arrested for impromptu gambling at their annual fiestas; (2) Sheriff's Department representatives had informed individual tribe members that gambling on the reservation was illegal, and that the San Diego gambling ordinance would be enforced against the Band; and (3) after the Band requested a written statement of the county's view of its jurisdiction to enforce the gambling ordinance on reservation land, the Sheriff responded that all gambling laws would be enforced on the reservation to the same extent as in the rest of the county. *Id*. at 3-4. On these facts, and in reliance on *Poe v. Ullman*, the court concluded that the threat alleged by the Band "is clearly of a general nature." *Id*. at 4. Even though the threats were directed to plaintiff, and even though they addressed the very law under dispute, at bottom they boiled down to nothing more the assertion that the authorities would enforce the law. That proposition is insufficient to confer standing as a matter of law. *Id.*

These decisions and the distinctions they draw together provide the foundation for a case with facts so similar to the case at bar that it directly controls this lawsuit. In *Gun Rights Committee*, 98 F.3d 1121, three individual and two associational plaintiffs brought a facial constitutional challenge to a federal law banning semiautomatic assault weapons and large capacity ammunition feeding devices for a period of ten years. *Id*. at 1124. Like the Plaintiffs here, none of the individual plaintiffs had been arrested or prosecuted under the challenged law, though they wished to engage in conduct it prohibited. And taking it one step further than Plaintiffs here, they also alleged that they actually intended to do so. *Id*.

Even so, the Ninth Circuit held that the *Gun Rights Committee* plaintiffs lacked standing. Rejecting their argument that they were injured simply by "the chilling of their desire and ability" to engage in the prohibited conduct (*id*. at 1129), the Court explained that " '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *See id*., quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) and further citing to *Steffel*, 415 U.S. at 476 (Stewart, J. concurring). Chilling effect aside, plaintiffs, again like the Plaintiffs here, were left with complaints about the "mere existence of a statute, which may or may not ever be applied to plaintiffs." *Gun Rights Committee*, 98 F.3d at 1121. That, admonished the court,

was not enough to support standing. *Id.* (citing *Stoianoff*, 695 F.2d at 1223); *see also id.* ("[T]he mere possibility of criminal sanctions applying does not of itself create a case or controversy" (internal quotation marks omitted)).

Further, the *Gun Rights Committee* plaintiffs, like the Plaintiffs here, failed to establish a specific threat of an imminent intent to prosecute sufficient to satisfy the irreducible injury-in-fact component of standing.[3] *Id.* at 1127-28. None of them demonstrated that they had been threatened with arrest or prosecution under the challenged law, again leaving nothing but a constitutionally inadequate claim that they, at most, might possibly be prosecuted if and when they broke the challenged law. *Id.* at 1127-28 (relying *inter alia* on *Poe*, *Steffel*, and *Rincon Band*).

Finally, the court took the plaintiffs to task for failing to meet their burden of alleging past prosecutions under the challenged law, which is also a requirement for standing. *Id.* Here too, Plaintiffs allege in the most general terms that the City enforces the challenged ordinances, but they fail to allege the existence of past prosecutions. And, in fact, after a diligent search of the available sources for evidence of prosecutions under any of the three ordinances or their precursors, there appear to be none. *See* Declaration of Maria Protti at ¶¶ 4-8. This preliminary evidence of the absence of past prosecutions shifts the burden to the Plaintiffs to produce evidence, not just further allegations, that for each ordinance such past prosecutions do exist. *See Colwell*, 558 F.3d at 1121.

Summing it all up, the *Gun Rights Committee* Court remarked: "Indeed, it would be difficult to imagine a circumstance under which plaintiffs could have made a more feeble showing of injury-in-fact." 98 F.3d at 1133. Here, by failing to allege that they ever intend to violate the ordinances and

---

[3] In the case at bar, Plaintiff David Golden has alleged that he "has been harassed by city agencies regarding the manner of storage of firearms in his home." (Compl. ¶ 17) This language falls considerably short of meeting his burden to allege sufficient injury to demonstrate standing, because he does not even allege that the safe storage law was at issue, much less that he was threatened with arrest or prosecution under that ordinance. But in the event the Court considers indulging the deficient allegation, it should require at least a curative affidavit showing that the constitutionally mandatory underlying facts truly exist. Because Golden is the only Plaintiff who alleges any sort of individualized contact with City authorities that might possibly involve one of the challenged ordinances, his is the only claim with even a remote possibility of survival. As such, and given the marked vagueness of his allegation, the Court should assure itself of its jurisdiction before undertaking further proceedings.

1  thereby dispelling the notion that a threat of prosecution is even possible, Plaintiffs have made a

2  showing of injury-in-fact so feeble that it puts the Ninth Circuit's is collective imagination to the test.

### III. THE COURT ALSO SHOULD DENY STANDING FOR PRUDENTIAL REASONS TO AVOID UNNECESSARY CONSTITUTIONAL QUESTIONS ABSENT FURTHER DOCTRINAL DEVELOPMENTS OR A BETTER DEVELOPED FACTUAL RECORD.

Prudential concerns as well as constitutional requirements must guide the courts in evaluating standing when a plaintiff makes a constitutional challenge to a criminal statute without showing at least a threat of imminent prosecution under the statute. *See Poe*, 367 U.S. at 502 . The Supreme Court has "developed, for its own governance in the cases confessedly within its jurisdiction, a series of rules under which it has avoided passing on a large part of all the constitutional questions pressed upon it for decision." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341, 346 (1936).

The need to avoid the unnecessary consideration of constitutional challenges is particularly acute where, as here, a federal court is asked to strike down a legislative enactment. That awesome power to nullify an act of a coordinate branch of government, and sometimes the act of a separate if also subordinate government, must be wielded cautiously. That is why a federal court " 'can have no right to pronounce an abstract opinion upon the constitutionality of a State law. Such law must be brought into actual or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here.' " *Poe* at 504 (quoting *State of Georgia v. Stanton*, 6 Wall. 50, 75 (1868)). For this prudential reason, courts should wait to adjudicate such constitutional questions until the decision becomes one of "strict[] necessity," that is, "only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." *Poe* at 504 (internal quotation marks omitted). A party seeking a declaratory judgment cannot "invoke the power of [the Supreme] Court to obtain constitutional rulings in advance of necessity." *Id*. at 506. This prudential consideration, standing alone, should close the courthouse door to Plaintiffs' complaints.

Moreover, courts should also use their prudential power to avoid adjudicating facial challenges to criminal statutes whenever possible. According to the Supreme Court,

> [F]acial challenges are best when infrequent. See, *e.g.*, *United States v. Raines*, 362 U.S. 17, 22 (1960) (laws should not be invalidated by 'reference to hypothetical cases'); *Yazoo & Mississippi Valley R. Co. v. Jackson Vinegar Co.*, 226 U.S. 217, 219-220 (1912) (same). Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing

> the lessons taught by the particular, to which common law method normally looks. Facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually barebones records. *Raines*, *supra*, at 22.

*Sabri v. United States,* 541 U.S. 600, 609-610 (2004).

That is certainly the case here. Without any sort of factual record to guide the Court, it is impossible to know how the challenged ordinances operate outside the realm of hypothetical vagaries. When, for example, a gun owner shoots an intruder in self-defense in his or her home, is that person actually threatened, charged with, or prosecuted for a safe storage violation if the police find no evidence that the gun was either carried by the owner or secured when the intruder broke in? Unless the authorities at least threaten to enforce the law in a way that might violate the Second Amendment, there can be no prudential standing to challenge that law. Similarly, do the police ever arrest, or do prosecutors ever bring prosecutions under Police Code section 1290 for discharging a firearm, much less for doing so indoors in self-defense? There is clearly an implicit exception for some kinds of discharges; the police may fire their weapons in an otherwise lawful manner without consequence, and so, apparently, may the target shooters at San Francisco's firing ranges. Why not also those firing in self-defense in their homes? Moreover, given the pairing of firing with fireworks, and the initial perceived need to reserve the right to shoot animals outdoors, the most reasonable interpretation is that section 1290 only applies outdoors—if, in current times, at all. Without a factual record demonstrating the ordinance's actual, modern operation, the Court would be forced to answer these questions in a vacuum. Finally, without knowing what kind of ammunition forms the factual basis for an actual threat to enforce the sales ban on unusually dangerous ammunition, nor whether the affected gun shop owner had reasonable commercial knowledge or made reasonable inquiries into whether such ammunition was prohibited, this Court would be left guessing how the ordinance may or may not comport with Second Amendment guarantees and due process notice requirements in its real-life application. That is no way to settle delicate constitutional questions, nor to use federal courts' judicial muscle to invalidate state and local laws.

Such factual uncertainties are particularly ill-advised in Second Amendment jurisprudence, which faces many as-yet-unresolved questions in the wake of *District of Columbia v. Heller*, 128

S.Ct. 2783 (2008). Indeed, no one knows for sure whether Second Amendment rights are even incorporated to apply to the States (and, hence, these ordinances). The Ninth Circuit says yes (*Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009)), the Seventh Circuit says no (*National Rifle Association v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009)), and so far the Supreme Court has expressly reserved the question (*Heller*, 128 S.Ct. at 2813 n.23). Nor is it yet clear what standard of review to apply to laws alleged to violate the Second Amendment. The Supreme Court has eliminated the rational basis test and a balance-of-interests test as contenders (*id.* at 2817 n.27) , but no one knows more than two things that the standard of review is *not*. Likewise, there is no indication as of yet how far the Second Amendment might extend beyond the core right to keep handguns in the home for self-defense purposes. We don't even know whether handguns can lawfully be curtailed when a gun owner is outdoors—even if only in the yard. This remarkably undeveloped area of constitutional law is treacherous terrain for fact-free adjudication. If any field of law currently calls out for cautious, fact-driven, common-law-style doctrinal development, it is this one.

Again borrowing the court's words in *Gun Rights Committee*, "[t]o grant plaintiffs standing to challenge the constitutionality of the [gun law] in the circumstances of this case would … throw all prudential caution to the wind." 98 F.3d at 1133. Indeed.

**IV.    THERE IS NO TRUE CASE OR CONTROVERSY TO ADJUDICATE BECAUSE, WITHOUT AT LEAST A SPECIFIC AND INDIVIDUALIZED THREAT OF ENFORCEMENT, THE CLAIMS ARE UNRIPE.**

Plaintiffs' complaint must also be dismissed for lack of subject matter jurisdiction because, in a case of this nature, the same concerns that underlie the standing inquiry also determine ripeness. "[W]here it is impossible to know whether a party will ever be found to have violated a statute, or how, if such a violation is found, those charged with enforcing the statute will respond, any challenge to the statute is premature." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 986 (9th Cir. 1991).

Sitting en banc, the Ninth Circuit has explained that in a case in which the court must measure whether an injury is real and concrete rather than hypothetical or speculative, the ripeness and standing inquiries will yield the same result. *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). In that case, landlords objected for religious reasons to an Alaska law

prohibiting housing discrimination on the basis of marital status. They sought a declaratory judgment and injunction halting enforcement of the law under the First Amendment. However, although they alleged that they had violated the law in the past and would violate it again in the future, they could identify no would-be tenants they had turned away on the basis of marital status, nor had any prospective tenant complained to the authorities. They faced no realistic, much less immediate threat of enforcement. *Id*. at 1137-38, 1140.

Looking largely to *Gun Rights Committee* and other standing cases, the court distilled the factors used to test the genuineness of a threat of prosecution: (1) whether the plaintiffs allege a concrete plan to violate the statute; (2) whether the authorities have made a specific threat to initiate enforcement proceedings against the plaintiffs; and (3) evidence of a history of past enforcement actions or prosecutions under the statute. *Thomas*, 220 F.3d at 1139. To demonstrate ripeness, a plaintiff must satisfy all three elements of the test. *See Sacks v. Office of Foreign Assets Controls*, 466 F.3d 764, 773 (9th Cir. 2006).

As do the Plaintiffs in this case, the landlords in *Thomas* roundly failed this inquiry. Although the Thomas plaintiffs alleged they intended to violate the law at some unspecified time in the future, the court rejected those allegations as too speculative. Echoing *Lujan*, 504 U.S. at 564, the court remarked that plaintiffs' "some day" intentions could "hardly qualify as concrete." *Thomas*, 220 F.3d at 1139-40. In this case, Plaintiffs' failure is more acute. They allege no intent to violate any of the ordinances, much less all three. Rather, they repeatedly assert that they cannot alter their behavior unless the Court first invalidates the ordinances. Compl. at ¶¶ 34, 36. Likewise, neither the *Thomas* plaintiffs nor the Plaintiffs here provided allegations or evidence that they had received specific threats of prosecution. *Id*. at 1140. Finally, the *Thomas* plaintiffs were able to show two prior instances of civil enforcement of the challenged law, but the court rejected this showing as inadequate because there was no record of any criminal enforcements. *Id*. Here, there is neither allegation nor evidence of prior enforcement actions or prosecutions, so again the *Thomas* plaintiffs' failed showing surpasses what Plaintiffs offer this Court. For each of these three reasons, Plaintiffs claims are not justiciable. Or, to be charitable, at least not yet.

As the *Gun Rights Committee* Court concluded its opinion, "to hold that [plaintiffs'] claims are ripe for adjudication in the absence of any factual context would essentially transform district courts into the general repository of citizen complaints against every legislative action." 98 F.3d at 1133. This case and its baldly hypothetical challenge to three gun-related restrictions that have not injured—only offended—the NRA and the other Plaintiffs, demonstrate the truth of the Ninth Circuit's remarks and one of the many powerful reasons why the Court must dismiss the complaint.

## CONCLUSION

For all of the reasons set forth above, the City respectfully requests that the Court dismiss the complaint in its entirety for lack of subject matter jurisdiction.

Dated: July 9, 2009

> DENNIS J. HERRERA
> City Attorney
> WAYNE SNODGRASS
> SHERRI SOKELAND KAISER
> Deputy City Attorneys
>
> By: _____/s/_____.
> SHERRI SOKELAND KAISER
>
> Attorneys for Defendants City and County of San Francisco, Mayor Gavin Newsom and Police Chief Heather Fong

DEFENDANTS' MOTION TO DISMISS    14    n:\govlit\li2009\091333\00567581.doc
USDC No. C09-2143 PJH