DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
SHERRI SOKELAND KAISER, State Bar #197986
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:     (415) 554-4691
Facsimile:      (415) 554-4747
E-Mail:          sherri.kaiser@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
MAYOR GAVIN NEWSOM and POLICE CHIEF
GEORGE GASCÓN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPANOLA JACKSON, PAUL COLVIN, THOMAS BOYER, LARRY BARSETTI, DAVID GOLDEN, NOEMI MARGARET ROBINSON, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC. SAN FRANCISCO VETERAN POLICE OFFICERS ASSOCIATION,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM, in his official capacity; POLICE CHIEF GEORGE GASCÓN, in his official capacity, and Does 1-10,<br><br>Defendants. | Case No. C09-2143 RS<br><br>**MOTION TO ENLARGE TIME TO RESPOND TO FIRST AMENDED COMPLAINT AND EXCEED OTHERWISE APPLICABLE PAGE LIMITS (CIV. L.R. 6-3 and 7-11)** |

Defendant City and County of San Francisco ("City") seeks additional time and additional pages to allow it to provide a succinct but comprehensive response to Plaintiffs' First Amended Complaint, while first addressing the procedurally important issue of consolidation. As detailed below, six individual and two organizational Plaintiffs have raised a total of ten federal and state claims against three San Francisco Police Code sections that respectively regulate in-home gun storage, ammunition sales, and firearm discharges within the City. In response, the City intends to raise a total of 23 substantive and jurisdictional grounds to dismiss these claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and it will also move under Rule 12(e) for a more definite statement of one plaintiff's vague allegations that may or may not support standing. In addition, however, the City must first file a motion seeking consolidation of identical claims now pending before the Honorable Claudia Wilken in order to avoid an unnecessary duplication of efforts by the Court and counsel, and to avoid the risk of inconsistent adjudications. In these circumstances, the City's request for more time to respond and more pages to accommodate the breadth of issues is reasonable, and Plaintiffs' silent refusal to agree to these requests is not. Briefing novel, complicated constitutional issues well and resolving them efficiently serves everyone's interests.

## BACKGROUND

On May 15, 2009, the National Rifle Association ("NRA"), the San Francisco Veteran Police Officers Association, and six individual plaintiffs filed the original complaint in this action against the City, the Mayor, and the Chief of Police. Docket No. 1. The complaint attacks three sections of the San Francisco Police Code. The first is a "safe storage" law that allows gun owners to carry loaded weapons freely in their homes, but requires them to store their firearms in a locked container or use a trigger lock whenever those weapons are not under the owner's direct, personal control. S.F. Police Code § 4512. The second, Police Code Section 613.10(g), is a licensing provision that prohibits ammunition retailers from selling types of bullets that have no sporting purpose or are designed to be increase the damage to the human body, such as hollow point bullets that flatten and tear a wider swath through the body, exploding bullets that project barbs or other shrapnel into surrounding tissues, or fragmenting bullets. The third challenged ordinance, Police Code Section 1290, bans firearm discharges within City limits.

Plaintiffs challenge the safe storage law as inconsistent with the Second Amendment right to keep and use handguns in the home in self-defense, asserting that because a safe storage requirement may delay, however briefly, their access to a loaded weapon during a home invasion.  Am. Compl. ¶¶ 47-55.  Plaintiffs assert that the City's refusal to license the sale of unusually injurious ammunition likewise burdens their Second Amendment right to in-home self defense by making a few types of ammunition that are suitable for self-defense purposes more difficult to procure.  *Id*. ¶¶ 56-62.  They further complain that the distinction between permissible and impermissible ammunition sales is unconstitutionally vague.  *Id*. ¶¶ 68-73.  Plaintiffs attack the discharge ban under the Second Amendment because it does not expressly exempt shooting in self-defense in the home.  *Id*. ¶¶ 63-67.  Finally, Plaintiffs also challenge each of the three ordinances as violating an asserted California constitutional right to use firearms for self-defense for similar reasons, and they allege that each ordinance is preempted under various constellations of state statutory and decisional law.  *Id*. ¶¶ 74-81.  In sum, Plaintiffs make 10 claims; four under the federal constitution and six state law claims.

On July 9, 2009, the City moved to dismiss the complaint for lack of subject-matter jurisdiction.  Docket No. 9.  The City argued that all Plaintiffs lacked standing and that their claims were unripe because Plaintiffs failed to allege that any of them (or their members) had ever been arrested or charged with a violation of any of the challenged ordinances, or faced any imminent threat of enforcement.  On August 24, 2009, rather than oppose the City's motion, Plaintiffs filed an Amended Complaint in which they newly alleged, without elaboration, that Plaintiff Golden was "harassed by city agencies regarding the manner of storage of firearms in his home."  Am. Cmplt. at 5.

Three days later, on August 27, 2009, Judge Hamilton held the initial case management conference.  Docket No. 22.  That same day, Plaintiffs filed a regularly noticed motion to stay the case on the basis that the Ninth Circuit (and, as it turned out, the Supreme Court) was poised to address the question whether the Second Amendment was incorporated against state and local governments.  Docket No. 19.  At the case management conference, Judge Hamilton noted that she was prepared to stay the case immediately if both parties agreed.  Declaration of Sherri Kaiser, ¶ 12.  The City indicated its agreement, withdrew its pending motion, and requested that the full statutory period to

respond to the Amended Complaint would begin only when the Court lifted the stay. *Id*. The Court stayed the case with that proviso. Docket No. 22.

On September 23, 2009, with the *Jackson* case already stayed, Plaintiff Therese Pizzo filed a separate action, attacking the same three San Francisco Police Code sections on all of the same grounds as Plaintiffs in this case had, and also challenging the City's denial of her application to carry a concealed weapon. *Pizzo v. Newsom*, N.D. Cal. Case No. 09-4493 CW, Docket No. 1. On December 10, 2009, Judge Wilken stayed *Pizzo* based on a stipulation of the parties. Docket No. 12.

On March 18, 2010, *Jackson* was reassigned to this Court for all further proceedings. Docket No. 27. On September 13, 2010, the Court lifted the stay and advised that any party could seek consolidation with *Pizzo* by stipulation or by noticed motion. Docket No. 37. Shortly thereafter, the City sought the Plaintiffs' agreement to consolidation, which plaintiffs had until that point supported. Kaiser Dec. ¶ 3 & Ex. A. Plaintiffs declined to stipulate, without explanation for their change of heart. *Id*., Ex. B. Plaintiffs have also indicated, by means of their silence in the face of the City's extensive meet and confer attempts, that they will neither agree to extend the time to respond nor jointly seek relief from the governing page limitations.[1]  *Id*., Exs. C-G.

**ARGUMENT**

The Court should increase the page limit for the City's response to the Amended Complaint from 25 to 50 pages and set a filing deadline of 30 days after the Court rules on consolidation.

### 1. The City will present 23 grounds for dismissal under Fed. R. Civ. P. 12 and move for a more definite statement.

The sheer volume of defenses under Rule 12 will make it difficult for the City to observe the standard 25-page limit for an opening brief. In addition to seeking dismissal of all ten claims on the merits for failure to state a claim (10 grounds), the City will argue that the Plaintiffs lack standing to challenge each ordinance absent an allegation of constitutionally sufficient harm (3 grounds); that they do not fall within the zone of interest of the ordinance governing ammunition sales (1 ground); that none of their claims is ripe (3 grounds); that the Court should refuse to exercise supplemental

---

[1] According, contrary to its usual practice, the City does not propose extensions of time or relief from page limit requirements for all parties. Having frustrated the City's attempts to work cooperatively, it is now incumbent upon the Plaintiffs to seek any desired relief in a separate motion.

MOT. TO EXTEND TIME AND PAGE LIMIT      3      n:\govlit\li2010\091333\00653699.doc
USDC No. C09-2143 RS

jurisdiction over novel and complex questions of state law (3 claims); and that the Court should abstain from deciding the state law claims under the *Pullman* doctrine (3 claims).  In addition, the City will move for a more definite statement of City agencies' alleged harassment of Plaintiff Golden.

Given this unusually high number of discrete issues, a 25-page briefing limit would leave the City little more than a page per issue, a number that would in fact be greatly reduced by the need to provide an introduction, background, conclusion and the like.  While the City agrees that briefs must be kept concise, a page limit that is too severe can prevent the parties from making a fair presentation of the issues.  Since that would clearly be the case here (Kaiser Dec. ¶ 13), the City respectfully asks that the Court extend the page limit for the City's opening brief from 25 to 50 pages.

### 2. The Amended Complaint presents difficult and unsettled questions of constitutional law.

The gravamen of the Amended Complaint is its assertion that each of the three Police Code sections violates the newly announced individual right protected by the Second Amendment to keep and fire handguns in the home in self-defense.  But while that right has now been enunciated, there is no decision that is binding on this Court that describes how to test challenged laws for a violation of it.  Thus, in its motion to dismiss, the City will have to present an argument for which standard of scrutiny should apply under the Second Amendment, then apply that standard (and possible competing standards) to three very different ordinances.  The novelty and complexity of those three grounds alone could legitimately take 50 pages to brief, but here the City asks only for 50 total pages, or little more than two pages each to address 23 grounds to dismiss and a motion for a more definite statement.  Although 50 pages is an unusual request, we submit that in these circumstances it is justified.

### 3. It would needlessly waste the Court's and the City's resources to proceed on the merits before deciding whether to consolidate *Jackson* and *Pizzo*.

The only differences between the City's response to the challenges to its ordinances in the Amended Complaint in *Jackson* and the complaint on file in *Pizzo* will be its refutation of *Pizzo's* substantive due process claims and the absence of a motion for a more definite statement.  Given such overwhelming unanimity between the issues in both cases, it would be wasteful for two judges of the same court to wade through them twice, provide two hearings, and issue two separate written opinions. Likewise, it would be imprudent to risk inconsistent decisions that might impose conflicting legal

duties on the City regarding important questions of civil rights and public safety. For these reasons, it makes both practical and legal sense to decide the consolidation issue before proceeding further on the merits. The timeline for responding to the Amended Complaint should be adjusted to accommodate a motion to consolidate, and the City's response should not be due until 30 days after the Court issues its order granting or denying consolidation.

### 4. The order staying the case provided a 20-day floor, but not a ceiling, on the City's time to respond.

Finally, the August 27, 2009 minute order staying the case should not be interpreted to bar the City's request for additional time to respond. The City requested a 20-day time to respond in the minute order to ensure that it would have at least the full statutory response period from the date the Court lifted the stay, even though the Plaintiffs had filed their Amended Complaint three days before the stay order issued. Seeking clarification that the stay would reset the clock rather than merely toll it had no bearing on whether the City might later seek to extend the time to respond, particularly since the City could not have foretold the need to seek consolidation of a nearly identical case that was yet to be filed. Nor could the City have confidently predicted the state of Second Amendment law when the stay would be lifted. In fact, counsel could not even guarantee that she would be available to write a response within 20 days of an unknown date when the stay would lift. Thus, the request and resulting order providing 20 days to respond was merely a safety net for the City. It was not a promise that the City could reasonably respond in 20 days, no matter the unknown, future circumstances.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the City permission to file a response to the Amended Complaint that does not exceed 50 pages in length and that shall be filed no later than 30 days after the Court's order granting or denying consolidation.

Dated: September 22, 2010

                 s/*Sherri Sokeland Kaiser*
                 SHERRI SOKELAND KAISER
                 Deputy City Attorney

                 Attorney for Defendants CITY AND COUNTY OF SAN FRANCISCO, et al.