DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
SHERRI SOKELAND KAISER, State Bar #197986
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:  (415) 554-4691
Facsimile:  (415) 554-4747
E-Mail:  sherri.kaiser@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
MAYOR GAVIN NEWSOM and POLICE CHIEF
GEORGE GASCÓN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPANOLA JACKSON, PAUL COLVIN, THOMAS BOYER, LARRY BARSETTI, DAVID GOLDEN, NOEMI MARGARET ROBINSON, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC. SAN FRANCISCO VETERAN POLICE OFFICERS ASSOCIATION,<br><br>  Plaintiffs,<br><br>  vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM, in his official capacity; POLICE CHIEF GEORGE GASCÓN, in his official capacity, and Does 1-10,<br><br>  Defendants. | Case No. C09-2143 RS<br><br>**NOTICE OF MOTION AND MOTION TO CONSOLIDATE, SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br>**(Fed. R. Civ. P. 42)**<br><br>Hearing Date:  December 9, 2010<br>Time:  1:30 p.m.<br>Place:  Judge Richard Seeborg<br>  United States District Court<br>  450 Golden Gate Avenue, Court Room 3, 17th Floor<br>  San Francisco, California<br><br>Trial Date:  None set |

MOTION TO CONSOLIDATE
USDC No. C09-2143 RS

n:\govlit\li2010\091333\00654500.doc

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED CASE AND IN *PIZZO V. NEWSOM*, N.D. CAL. CASE NO. 09-4493 CW:

Please take notice that at 1:30 p.m. on Thursday December 9, 2010, or as soon thereafter as the matter can be heard, in Courtroom No. 3 of the United States Courthouse located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, all San Francisco Defendants in this case and *Pizzo v. Newsom*, N.D. Cal. Case No. 09-4493 CW (collectively, "City"), will move for consolidation of both cases before this Court on the grounds that consolidation will eliminate the risk of inconsistent adjudications of important constitutional questions of first impression and significantly increase judicial efficiency.

This motion for consolidation is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities, and Declaration of Sherri Sokeland Kaiser, both filed concurrently with this Notice; the pleadings, records, and papers filed herein; and any other such evidence or argument as may be presented or heard by the Court on or before the motion hearing.

## QUESTION PRESENTED

Should the Court grant consolidation of two actions pending in the Northern District of California where (a) both cases raise identical legal challenges to three San Francisco Police Code sections related to guns under the Second and Fifth Amendments to the U.S. Constitution, the California Constitution, and state statutes; (b) the Northern District would be spared substantial time and effort in resolving duplicative claims; (c) there are no relevant factual differences between the two sets of facial challenges; (d) the Second Amendment claims raise complex and unsettled questions of law; (e) there is a substantial risk of inconsistent adjudications in the absence of consolidation; (f) both cases are in an identical procedural posture and neither is ready for trial; (g) consolidation will not cause undue delay; and (h) bifurcation is available for the unrelated claims in one of the complaints?

## INTRODUCTION

This Court should consolidate the two separate cases currently pending before different judges in the Northern District that seek to invalidate the same three San Francisco gun control ordinances under the Second Amendment. A Second Amendment jurisprudence of individual rights emerged only two years ago and remains in its earliest infancy, where even the standard for decision remains unknown. Given this great uncertainty, the risk of inconsistent adjudication of Second Amendment claims is high – and so are the stakes. It is no mere lawyerly hyperbole to say that the challenged ordinances in this case potentially go to matters of life and death: whether the City must permit gun owners to leave loaded handguns lying accessible and outside their personal control in their homes; whether the City must permit the sale of ammunition designed to be unusually injurious to human flesh by, for example, exploding on impact and propelling barbed shrapnel into surrounding tissue; and whether the City must permit shootings. The Court should resolve these important questions in a consistent manner so that the City does not find itself in the untenable position of having its public safety laws judicially sanctioned in one court but enjoined in another, forcing the City to break the law by following it. The Court should ensure it speaks with one voice by consolidating these near-identical Second Amendment challenges.

Consolidation will also save significant judicial resources by resolving a legally complex set of claims but once in one Judge's chambers, not twice in two. The City, another government entity, will also conserve its limited resources, but none of the other parties suffers a duplication of effort as a result. And this can happen without undue expense, inconvenience or delay to any party. While the *Pizzo* case also contains other, distinct claims that go to the separate issue of concealed weapon permits, to the extent that these claims might retard the resolution of the common challenges to San Francisco's ordinances, Rule 42 permits the Court simply to bifurcate them. Under these circumstances, consolidation is an eminently practical case management approach that reduces a significant risk of inconsistent decisions on important issues of civil rights and public safety, increases efficiency, conserves resources, and does so at little to no expense. The City respectfully requests that the Court order it forthwith.

# BACKGROUND

On May 15, 2009, the National Rifle Association ("NRA"), the San Francisco Veteran Police Officers Association, and six individual plaintiffs filed the original complaint in this action against the City, the Mayor, and the Chief of Police.[1] *Jackson* Docket Entry No. 1. The complaint, and the later-filed Amended Complaint (Docket Entry No. 18), attack three ordinances in the San Francisco Police Code. The first is a "safe storage" law that allows gun owners to carry loaded weapons freely in their homes, but requires them to store their weapons in a locked container or use a trigger lock whenever the gun is not under the owner's direct, personal control. S.F. Police Code § 4512 (attached for the Court's convenience of reference as Appendix A). The second, Police Code Section 613.10(g), is a licensing provision that applies to San Francisco ammunition retailers and prohibits them from selling types of bullets that have no sporting purpose or are designed to increase the damage to the human body, such as hollow point bullets that flatten and tear a wider path through the body, exploding bullets that project barbs or other shrapnel into surrounding tissues, or fragmenting bullets. *See* Appendix B. The third challenged ordinance, Police Code Section 1290, bans firearm discharges within City limits without express exceptions, although implied exceptions for law enforcement and other activities are clearly observed. *See* Appendix C.

Plaintiffs allege that the safe storage law is inconsistent with their Second Amendment right to keep and use handguns in the home in self-defense because it may delay, however briefly, their access to a loaded weapon during a home invasion. Am. Compl. ¶¶ 47-55. Plaintiffs also contend that the City's refusal to license the sale of unusually injurious ammunition likewise burdens their Second Amendment right to in-home self-defense by making some ammunition that may be suitable for self-defense purposes more difficult to procure (*id*. ¶¶ 56-62) and further complain that the distinction between permissible and impermissible ammunition sales is unconstitutionally vague. *Id*. ¶¶ 68-73. Plaintiffs attack the discharge ban under the Second Amendment because it does not expressly exempt shootings in self-defense in the home. *Id*. ¶¶ 63-67. Finally, for similar reasons, Plaintiffs also challenge each of the three ordinances as violating an asserted California constitutional right to bear

---

[1] At that time, the San Francisco Chief of Police was Heather Fong. With the City's consent, Plaintiffs have since named current San Francisco Chief of Police George Gascón in her place.

arms, and they allege that each ordinance is preempted under various constellations of state statutory and decisional law. *Id*. ¶¶ 74-81. In sum, they make 10 claims: four under the federal constitution and six state law claims.

Although the case has been pending since May 2009, it has advanced little. In lieu of opposing the City's motion to dismiss for lack of jurisdiction, on August 24, 2009, Plaintiffs filed an amended complaint. *See Jackson* Docket Entry Nos. 9, 18. Three days later, at Plaintiffs' request and with the consent of the City, the Court stayed the case. *Id.,* Nos. 19, 22. Only very recently, on September 13, 2010, did this Court lift the stay. *Id*., No. 37. The City anticipates that it will file a motion to dismiss under Fed. R. Civ. P. 12 as the next substantive step in resolving the Amended Complaint, but it has not done so yet.[2]

On September 23, 2009, with the *Jackson* case already stayed, Plaintiff Therese Marie Pizzo filed a separate action, now pending before Judge Wilken, raising the exact same claims against the exact same San Francisco Police Code sections and the exact same defendants. *Pizzo v. Newsom*, N.D. Cal. Case No. 09-4493 CW, Docket Entry No. 1, ¶¶ 99-102, 134-49, 213-51. In addition, her complaint contains a second, legally and factually distinct set of allegations challenging the City's discretionary denial of her application for a permit to carry a concealed weapon (a "CCW" permit) and the constitutionality of the State's CCW laws. *Id*., ¶¶ 20-42, 117-21, 150-88, 224-51. On the basis of these wholly unrelated CCW claims, Pizzo names three additional defendants: former San Francisco Police Chief Heather Fong and San Francisco County Sheriff Michael Hennessey, each of whom she holds responsible for denying her permit application, and California Attorney General Edmund Brown because the CCW laws are promulgated by the State, not the City.[3]

---

[2] In a companion motion filed last week under Civil Local Rule 6-3, the City seeks an extension of time to file its response to the Amended Complaint until 30 days after the Court decides this motion to consolidate in the hope that it will be allowed to file a single responsive motion addressing both cases. After failing to stipulate to this relief voluntarily in response to the City's repeated attempts to meet and confer, Plaintiffs have now filed a Statement of Non-Opposition.

[3] Pizzo names some of the defendant officials in their individual as well as official capacities, whereas the *Jackson* plaintiffs name Mayor Newsom and Chief Gascón in their official capacities only. But given that all plaintiffs' shared claims against the City's gun control ordinances are identical facial challenges that do not touch upon the individual acts of any defendants, and given that none of the plaintiffs seeks damages in any event, this slight technical difference between the plaintiffs' approaches should not affect the decision to consolidate.

On November 2, 2009, the plaintiffs in *Jackson* filed a Notice of Related Cases in which they described the newly filed *Pizzo* complaint and asked then-presiding Judge Hamilton to relate the two cases. *See Jackson* Docket Entry No. 24 ("Conducting these cases before different Judges would create an unduly burdensome duplication of labor and expense and a risk of conflicting results. These cases should be deemed related, and possibly consolidated." *Id*. at 3.) The City followed suit a few days later, filing its own Motion to Relate Case. *Id*., No. 25. On November 20, 2009, Judge Hamilton in her discretion denied these requests, concluding that despite the series of identical claims against the three San Francisco Police Code sections in both cases, the presence of the additional CCW claims and defendants in *Pizzo* counseled against relating the two cases. *See Jackson* Docket Entry No. 26.

Despite the fact that *Pizzo* has been on file almost as long as *Jackson*, that case too has progressed little because it too has been stayed. *Pizzo* Docket Entry No. 12. Whereas in this case, Plaintiffs sought and the Court granted relief from the stay, the parties in *Pizzo* have thus far preferred to leave their stay in place in anticipation of rulings in pending Ninth Circuit cases that may decide fundamental questions of governing law necessary to resolve Plaintiff's claims.

## ARGUMENT

The Court should exercise its discretion to consolidate *Pizzo* with *Jackson* to avoid inconsistent rulings and a wasteful duplication of effort by the Court and counsel. To the extent the Court has any concern about the effect of the unrelated CCW claims on consolidation, it should use its authority under Rule 42 to bifurcate those claims for separate hearing or trial.

### I. COMMON QUESTIONS OF LAW PREDOMINATE AND PROVIDE A STRONG BASIS FOR CONSOLIDATION.

This Court has a fresh slate and broad discretion to determine whether and how to consolidate *Pizzo* with *Jackson*. While the cases are pending before two different judges, and Judge Hamilton earlier declined to relate them despite the requests by both the *Jackson* Plaintiffs and Defendants to do so, this poses no barrier to consolidation. As the Ninth Circuit has explained, Rule 42(a) permits consolidation of actions that are "pending before the *court*" (emphasis added), which gives the district court "broad discretion . . . to consolidate cases pending in the same district." *Investors Research Co.*

*v. U.S. Dist. Ct. for the Southern Dist. Of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).  It is reversible error to decline to exercise that discretion simply because a related case transfer has earlier been denied.  *Id*.

Rule 42 authorizes the Court to consolidate actions "involving a common question of law or fact."  Fed. R. Civ. P. 42(a).  *Pizzo* and *Jackson* amply qualify for consolidation because they share a series of important, unsettled questions of law.  Nor is consolidation made harder by factual distinctions between the two cases: beyond the facts necessary to support each plaintiff's purported standing to challenge the City's ordinances, there are no factual differences between the claims because there are no facts—not one of the City's three challenged Police Code sections has ever been applied to any of the plaintiffs.  Accordingly, the shared questions of law predominate, *cf*. Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.) (consolidation most appropriate when common issues predominate), and so will the work of resolving them.

The Second Amendment claims in each case, in particular, will require the Court to carefully consider complex and unsettled issues of constitutional law.  Indeed, given that Second Amendment jurisprudence has taken such a sharp turn with the Supreme Court's still-fresh decision in *Heller v. District of Columbia*, 128 S.Ct. 2783 (2008) (departing from prior precedent and announcing for the first time a right to bear arms that flows to individuals), Second Amendment law is now almost entirely uncharted territory.  There is precious little precedent to guide the Court in how to approach, much less resolve, Second Amendment challenges, and so far none of it is in the Ninth Circuit.  Moreover, any final judgment the Court enters will be closely scrutinized.  Appeal is a near-certainty, and it is well within the realm of possibility that this Court's decision will also undergo Supreme Court review.  Presumably, then, the Second Amendment questions will occupy the Court to a much greater extent than all of the many pendant state law claims combined, each of which is grounded in a settled mode of analysis.

Moreover, under the plain language of Rule 42(a), common questions of law or fact are the only prerequisite for consolidation.  Actions need not "be identical before they may be consolidated," *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998), nor is identity of the parties required.  Wright & Miller, 9A Fed. Prac. & Proc. (3d ed.) § 2384.  Thus, the mere presence of the CCW claims and their associated defendants in *Pizzo* does not preclude consolidation in any way, particularly since

all defendants in both actions are City defendants represented by the same counsel, with the sole exception of the California Attorney General in *Pizzo*. Thus, the CCW claims can be litigated alongside, and likely on the same schedule, as the consolidated claims against the Police Code sections, just as they would be if consolidation were denied. Alternatively, as discussed below, the Court may bifurcate the issues in *Pizzo* to allow all parties' challenges to the City's Police Code provisions to proceed together, while not requiring the *Pizzo* plaintiff's CCW challenges to follow the same schedule.

## II. CONSOLIDATION WOULD ELIMINATE THE RISK OF INCONSISTENT RULINGS AND CUT THE COURT'S WORKLOAD IN HALF.

Consolidating the common questions in *Jackson* and *Pizzo* offers the significant benefits of eliminating the risk of inconsistent decisions and dramatically reducing the district court's overall workload. No matter the nature of the controversy, courts of course do what they can to avoid inconsistent rulings. Here, that fundamental concern is heightened because the challenged ordinances all address public safety, whether by putting loaded guns out of reach of children or reducing the lethality of gunshot wounds by taking the most gravely injurious bullets off the shelves. Upholding these laws in one breath and enjoining them in the next would leave San Francisco in an untenable quandary as to how to obey the court's orders and risks leaving the status of the laws pending the Ninth Circuit's resolution of the conflicting judgments to chance rather than principle. Decisions with such potentially significant consequences to public safety should not be made that way.

But even setting aside the unusual gravity of the situation, consolidation should be granted for the simple pragmatic reason that it will cut the court's overall workload in half. Admittedly, that benefit may not flow directly to this Court and its chambers since consolidation would entail assuming additional responsibilities that currently rest with Judge Wilken, but the resources conserved by the Northern District as a whole will greatly outweigh the additional burden that this Court would shoulder. This Court should be able to resolve the duplicative claims easily, possibly by doing little more than printing up a second caption page. And to the extent that this Court may face a decision about the CCW claims that it might otherwise have avoided, that would not increase the overall court's workload, since those claims would have to be decided in someone's courtroom anyway.

### III. CONSOLIDATION WILL NOT CAUSE MEANINGFUL INCONVENIENCE, EXPENSE OR DELAY.

While there is much to be gained by consolidating *Jackson* and *Pizzo*, comparatively little counsels against it. In exercising its discretion to consolidate, the Court should balance "the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir.1984).

In the circumstances of this case, considerations of convenience and expense weigh in favor of, rather than against. consolidation. All of the parties and counsel will remain in the same venue and litigate the same motions as they would otherwise, while the City will be spared the inconvenience and unnecessary expense of briefing and arguing the same issues twice, and possibly multiple times if the cases are not fully resolved on the preliminary motions.

Thus, the only potential disadvantage of consolidation is the comparatively brief and self-imposed[4] delay to the *Jackson* Plaintiffs for the short period of time that it takes for the parties to brief and the Court to consider this motion. Of course, that delay is also unavoidable. By the time this Court can consider it, it will have happened, and denying consolidation will do nothing to prevent it. Moreover, there is no reason to believe that the cases will have to proceed more slowly together than either would have done individually if consolidation is granted.

But even if consolidation with *Pizzo* might somewhat delay the resolution of *Jackson*, perhaps due to the concomitant adjudication of the unrelated CCW claims in *Pizzo*, that still would not counsel against consolidation. In a nearly identical case to this one, the District Court for the District of Columbia granted consolidation of two cases challenging the same local law under the Second Amendment, even though one of the cases "also take[s] issue with a host of other aspects of the District's gun laws." *Hanson v. District of Columbia*, 257 F.R.D. 19, 22 (D.C.D.C. 2009). Citing *Mills v. Beech Aircraft Corp.*, 886 F.2d 758-761-62 (5th Cir. 1989), which had denied consolidation where one case was ready for trial but the other was not, the court in *Hanson* concluded that the

---

[4] The *Jackson* Plaintiffs now claim to oppose consolidation because of the delay it requires to brief, hear and decide a noticed motion. This is quite odd. Their opposition is what requires the City to seek consolidation by noticed motion—it is the very genesis of the delay. The parties could have, and the City offered to, proceed much more swiftly by stipulation. *See* Declaration of Sherri Kaiser in Support of Motion to Consolidate ("Kaiser Dec."), Exs. A-C.

MOTION TO CONSOLIDATE         8         n:\govlit\li2010\091333\00654500.doc
USDC No. C09-2143 RS

potential delay to the narrower Second Amendment challenge was not of the magnitude that might forestall consolidation given that both cases were still at the same, early procedural juncture. *Hanson*, 27 F.R.D. at 22. The court also explained that, "it is the court's duty to consider not only the delay that consolidating the cases might cause for the plaintiffs, but also the delay that *not* consolidating the cases might cause for the defendants and for the court." *Id*. (emphasis in original). For those facing duplicative proceedings, consolidation saves substantial time.

This Court should follow the sound reasoning in *Hanson*. Both *Jackson* and *Pizzo* still face preliminary motions to dismiss—indeed, none of the defendants has even filed an answer—so there is no danger that one case will unfairly keep the other from long-awaited resolution at the eleventh hour. And comparing whatever speculative delay consolidation might cause the *Jackson* Plaintiffs against the certain and significant delay to the Court and the City in the absence of consolidation, the latter well outweighs the former. Accordingly, every single relevant consideration—judicial efficiency, avoiding inconsistent adjudications, convenience, expense and delay—strongly favors consolidation.

Finally, to the extent the Court is concerned that the CCW claims could cause unwarranted delay, it can simply bifurcate them, thereby retaining all of the benefits of consolidation without any potential disadvantages. Consolidation and bifurcation under Rule 42 are "designed to achieve a common end. That objective is to give the district court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2381 (3d ed.). Both procedures are available for use in the same case. *See SanDisk Corp. v. STMicroelectronics, Inc.,* 2009 WL 1404689, at *3 (N.D. Cal. Case No. C04-4379 JF(RS), May 19, 2009) (bifurcating inequitable conduct defense in consolidated patent infringement actions); *Monolithic Power Systems, Inc. v. O2 Micro Intl. Ltd*., 2006 WL 2329466, at *1 (N.D. Cal., Case Nos C04-2000 CW & C 06-2929 CW, Aug. 9, 2006) (granting consolidation and acknowledging power to bifurcate claims or issues should a single trial prove overly complex). Should the Court conclude that bifurcating the CCW claims is desirable here, the City would have no objection.

## CONCLUSION

Because it would be inefficient, inconvenient, wasteful, slow and even risky to continue to adjudicate these cases separately, the City respectfully requests the Court to consolidate them.

Dated: September 27, 2010

                                        DENNIS J. HERRERA
                                        City Attorney
                                        WAYNE SNODGRASS
                                        SHERRI SOKELAND KAISER
                                        Deputy City Attorneys

                        By:       s/*Sherri Sokeland Kaiser*
                               SHERRI SOKELAND KAISER

                                Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO, MAYOR GAVIN NEWSOM and POLICE CHIEF GEORGE GASCÓN