| | |
|---|---|
| 1 | DENNIS J. HERRERA, State Bar #139669 |
|   | City Attorney |
| 2 | WAYNE SNODGRASS, State Bar #148137 |
|   | SHERRI SOKELAND KAISER, State Bar #197986 |
| 3 | Deputy City Attorneys |
|   | 1 Dr. Carlton B. Goodlett Place |
| 4 | City Hall, Room 234 |
|   | San Francisco, California 94102-4682 |
| 5 | Telephone:    (415) 554-4691 |
|   | Facsimile:    (415) 554-4747 |
| 6 | E-Mail:        sherri.kaiser@sfgov.org |
| 7 | Attorneys for Defendants |
|   | CITY AND COUNTY OF SAN FRANCISCO, |
| 8 | MAYOR EDWIN LEE and ACTING POLICE CHIEF |
|   | JEFF GODOWN |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPANOLA JACKSON, PAUL COLVIN, THOMAS BOYER, LARRY BARSETTI, DAVID GOLDEN, NOEMI MARGARET ROBINSON, NATIONAL RIFLE ASSOCIATION OF AMERICA, INC. SAN FRANCISCO VETERAN POLICE OFFICERS ASSOCIATION,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, MAYOR EDWIN LEE, in his official capacity; ACTING POLICE CHIEF JEFF GODOWN, in his official capacity, and Does 1-10,<br><br>　　　　　　　　Defendants. | Case No. C09-2143 RS<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF JURISDICTION**<br><br>Hearing Date:    April 14, 2011<br>Time:              1:30 p.m.<br>Place:             Courtroom 3, 17th Floor |

## INTRODUCTION

In their opposition, Plaintiffs ask this Court to rule—as the first and only court ever to do so in the country—that any member of the general public who believes his right to armed self-defense is hindered by local gun control laws can maintain a federal court action to challenge those laws, simply on the basis that obeying the law "chills" a fundamental right. Not only would this upend established standing law, but it would throw open the courthouse doors to every concerned citizen to bring their favorite constitutional bellyaches to the Court's immediate and lasting attention.

For the many reasons that follow, and not least the requirement that this Court follow existing Ninth Circuit law that precludes Plaintiffs' suggested remodel of constitutional prerequisites to suit, this Court should grant the City's motion to dismiss this case in full for lack of subject matter jurisdiction.

## ARGUMENT

### I. PLAINTIFFS' CHALLENGE TO SECTION 1290 HAS BEEN MOOTED BY RECENT LEGISLATION

Plaintiffs allege that the citywide ban on discharging firearms in Police Code section 1290 violates the Second Amendment because it does not contain an explicit exception for discharging hanguns in the home in self-defense. (Am. Compl. ¶¶ 63-67.) A recent amendment to Section 1290 moots this claim by adding an explicit in-home self-defense exception. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1031 (9th Cir. 2006) (amendment resolving the challenged feature of a law moots the dispute).

San Francisco Ordinance No. 50-11 (effective March 16, 2011 and attached as an appendix[1] for the convenience of the Court) actually amends three Police Code sections: 1290, 4502 and 4506. Prior to this amendment, Section 1290 contained the strange bedfellows of both a blanket prohibition on discharging firearms and a permit requirement for fireworks.[2] Section 4502 separately and

---

[1] It is also available at http://www.sfbos.org/ftp/uploadedfiles/bdsupvrs/ordinances11/o0050-11.pdf.

[2] As the City explained in its opening brief, this odd pairing reflects the origin of Section 1290 as a 19th century nuisance ordinance regulating noise, not as a gun control ordinance at all. Its explicit reservation to every San Franciscan of the right to "shoot[] destructive animals within and upon his own inclosure" strongly implies additional exceptions for, at the very least, the then-as-now compelling purposes of law enforcement and self-defense. *See* Opening Br. at 5-6.

redundantly prohibited the discharge of firearms, though only in public places, and Section 4506 set forth certain exceptions to Section 4502, among them law enforcement and "necessary self-defense." Ordinance No. 50-11 harmonizes these three provisions. It removes all reference to firearms from Section 1290, which now governs only fireworks. It expands the reach of the firearms discharge ban in Section 4502 to the entire City, like prior Section 1290, by eliminating the restriction to public places. And it restates the exceptions in Section 4506, now explicitly applicable to all firearms discharges in the City, to include "[p]ersons in lawful possession of a handgun who discharge said handgun in necessary and lawful defense of self or others while in a personal residence." S.F. Police Code § 4506(a)(2).

Because there is now an explicit exception to San Francisco's ban on firearms discharges for handguns used in the home in self-defense, there is no longer a live dispute between the parties on this issue. Plaintiffs' claim that Section 1290 violates the Second Amendment is moot and must be dismissed.

**II. PLAINTIFFS CONCEDE THAT THEY CANNOT MEET THE STANDING REQUIREMENTS THAT APPLY TO THEIR CLAIMS UNDER EXISTING LAW**

In their Opposition, Plaintiffs take the position—already explicitly and decisively rejected by the Ninth Circuit—that "the mere enactment of the ordinances, which prohibit the exercise of fundamental rights" and the failure of the City to disavow the possibility of enforcement is a "direct harm" or "actual injury" sufficient to confer standing, "regardless of whether prosecution is imminent." Opp. Br. at 7, 15. That is flat-out wrong.

The parties agree that injury-in-fact is a bedrock prerequisite for federal jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The parties also agree that the plaintiffs are not required to break the law and subject themselves to arrest to have standing to seek a declaratory judgment. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). But the parties disagree emphatically over the nature of the injury that suffices to establish constitutionally cognizable injury-in-fact in this pre-enforcement challenge to local ordinances under the Second Amendment.

The law in this Circuit governing standing in pre-enforcement challenges is well established and well elucidated. Plaintiffs who have not yet suffered *actual* injury-in-fact by arrest or prosecution

DEFS' REPLY ISO MOT. TO DISMISS   2   n:\govlit\li2011\091333\00690765.doc
USDC No. C09-2143 RS

under the challenged law have standing only if they can show *imminent* injury-in-fact by means of a genuine and particularized threat that the challenged law will be enforced against them. *Compare, e.g., Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (plaintiff demonstrated imminent injury-in-fact after he was twice warned by police to cease handbilling and a companion engaging in the same conduct who did not comply with the warnings was actually arrested and prosecuted) *with San Diego Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126-28 (plaintiffs failed to show imminent injury-in-fact when they alleged only a "wish and inten[t]" to violate the law, had never personally been threatened with enforcement, and demonstrated no history of past enforcement against anyone on the basis of the conduct in which they intended to engage) *and Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1, 4 (9th Cir. 1974) (plaintiffs lacked standing when they received threats "clearly of a general nature" that gambling on tribal lands was illegal and the gambling laws would be enforced on the reservation, but the threats were not directed at any particularized conduct by the plaintiffs); *see also* Opening Br. at 9-12 and the additional cases discussed therein.

The Ninth Circuit has also been quite clear about the kinds of allegations that do not suffice to establish pre-enforcement standing. As it emphasized in *Gun Rights Committee*, "[w]e have repeatedly admonished . . . that '[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy with the meaning of Article III.' " 98 F.3d at 1126 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223). Likewise, while "every criminal law, by its very existence, may have some chilling effect on personal behavior . . . '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific objective harm or a threat of specific future harm.'" *Gun Rights Committee*, 98 F.3d at 1129 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (additional internal quotation marks and citation omitted). Accordingly, in that case, plaintiffs' allegations that the Crime Control Act they sought to challenge had chilled "their desire and ability to purchase outlawed firearms" did not state a constitutionally cognizable injury. *Id*.

Plaintiffs' amended complaint comes nowhere close to satisfying these standing requirements. The amended complaint is devoid of allegations that any law enforcement official has made a specific threat to any of the Plaintiffs, much less all of them, that their individual conduct is about to be met

with arrest and prosecution under any of the challenged statutes.[3]  Instead, Plaintiffs do as they must and urge this Court to make an exception to the governing law for pre-enforcement challenges in Second Amendment cases.

In advocating this novel approach, Plaintiffs rely extensively on a body of cases that has carved out an exception to the general rule that "chilling" is not a constitutional injury, but that rule is carefully limited to First Amendment and privacy cases because they have special characteristics. Those cases explain that self-censorship is an actual, completed injury at the moment of the foregone speech, regardless of whether the plaintiff also faces imminent injury under a particularized threat of arrest and prosecution.  *See, e.g., Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (in a First Amendment case, "self-censorship [is] a harm that can be realized even without an actual prosecution"); *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (recognizing the "sensitive nature of constitutionally protected expression" and a special need to allow pre-enforcement challenges because "free expression [is] of transcendent value to all society, and not merely those exercising their rights"); *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("Constitutional challenges based on the First Amendment present unique standing considerations."); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("the inquiry tilts dramatically toward a finding of standing" when threats of enforcement touch on First Amendment rights); *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (explaining that a threat to free speech is latent in the mere existence of a prohibitory statute because most speech is easily deterred).[4]

---

[3] Setting aside the now-moot claim against Section 1290, Plaintiffs allege only a general public statement by the District Attorney that the Section 4512, the safe storage law, may be enforced (Am. Compl. ¶ 52) and a visit by an unidentified "City official" to Plaintiff Golden's house, during which the official allegedly checked how Mr. Golden stored his guns (*id*. at ¶ 53). Even if true, neither allegation describes a particularized threat of enforcement against any Plaintiff, including Mr. Golden. Plaintiffs do not assert that additional facts exist that could rectify this deficiency.

[4] Plaintiffs do cite two cases that, at first blush, appear to endorse the idea that the mere chilling effect of a statute, without any particularized threat of enforcement, satisfies the injury-in-fact requirement even outside the core First Amendment context. *See Bland v. Fessler*, 88 F.3d 729, 737 (9th Cir. 1996); *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73, 76 (4th Cir. 1991). But closer examination reveals that the plaintiffs in each case also alleged that the complying with the business regulations at issue had caused them actual economic injury. *Bland*, 88 F.3d at 737; *Mobil Oil*, 940 F.2d at 75.

Despite the careful cordoning of the "chilling" exception to First Amendment cases, Plaintiffs assert that for the purposes of standing to bring a pre-enforcement challenge, "the Second Amendment is no different from the First." According to Plaintiffs, "the Court should relax the 'rigid standing requirements' and recognize Plaintiffs' standing because the 'mere existence' of the challenged ordinances has and continues to 'chill' conduct protected by the Second Amendment." Opp. Br. at 20. But the Court is not writing on a blank slate. The Ninth Circuit has already announced and elaborated the general rule of standing for pre-enforcement challenges outside the First Amendment context, and that rule requires Plaintiffs to show a particularized threat of enforcement. *See, e.g., Gun Rights Committee,* 98 F.3d at 1129; *Rincon Band*, 495 F.2d at 5-6. Unlike the chilling exception, the general rule has not been limited to a particular context. Accordingly, it controls the instant case. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("[C]aselaw on point *is* the law.)

Plaintiffs try to avoid this conclusion. In their view, the Supreme Court's recent recognition of the Second Amendment as a source of fundamental rights means that pre-enforcement challenges under either Amendment should also enjoy relaxed standing requirements. Opp. Br. at 20. But this is an invitation to error. This Court can only disregard existing Ninth Circuit precedent if it has become "clearly irreconcilable" with "intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). That has not happened here, and *Gun Rights Committee* continues to control.

The Court is not required to treat Second Amendment claims just like First Amendment claims simply because they are both fundamental rights. In fact, there are very real differences between the two Amendments in the context of pre-enforcement challenges. Self-censorship, without more, is an actual injury under the First Amendment sufficient to confer standing because it completely and immediately defeats the right to speak freely. In contrast, storing a handgun safely locked when it is not being used or carried does not completely and immediately defeat the use of handguns for self-defense in the home. Rather, the risk of injury is inherently speculative, contingent on the criminal acts of third parties, and thankfully downright unlikely.[5] Likewise, a risk of actual injury to innocent

---

[5] Consider that any given individual may not wish to use firearms in self-defense, and those who do may never face a home invader. And even then, for the safe storage ordinance to make any difference to an armed homeowner's ability to defend herself, the intruder would have to give the homeowner enough warning that she could retrieve her handgun from wherever she was storing it, but not quite enough time to unlock it.

third parties from pass-through or ricochet bullets during a home invasion in which the armed homeowner is firing a gun loaded with standard ammunition rather than collapsing or exploding bullets can be presumed to exist, but it too is speculative, contingent, and possibly even more unlikely.

The fact that Plaintiffs may never experience any actual injury to their ability to use hand guns to defend themselves in their homes, even if they chill own their constitutionally protected storage and ammunition preferences in favor of the challenged ordinances, eliminates the pressing need to adjudicate these pre-enforcement Second Amendment and distinguishes them from First Amendment challenges. The Court neither can nor should treat them as though they were the same.

### III. PLAINTIFFS DO NOT DISPEL THE POWERFUL PRUDENTIAL REASONS TO REFRAIN FROM EXERCISING JURISDICTION OVER THIS DISPUTE

Even assuming that Plaintiffs could meet the constitutional requirements for pre-enforcement standing, which they cannot, prudential standing and prudential ripeness concerns both counsel that Plaintiffs' claims are too undeveloped and uncertain to decide, particularly with delicate constitutional questions at stake. Prudential rules of jurisdiction exist to help the courts avoid unnecessary decisions and promote more accurate judicial decision making. *See Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003) (citing Alexander M. Bickel, *The Supreme Court 1960 Term Foreword: The Passive Virtues*, 75 Harv. L. Rev. 40, 58-64 (1961)).

Plaintiffs insist that their claims are sufficiently "concrete," and the "chill" to their fundamental Second Amendment rights is sufficiently severe, that there can be no prudential reason to decline to hear their challenge. Opp Br. at 20-25. This ignores the fact that the instant dispute lacks nearly all of the common law and constitutional safeguards against judicial error.

First, the constitutional questions can still be avoided, and accordingly they should be. *See Poe v. Ullman*, 367 U.S. 497, 506 (1961) ("[T]he declaratory judgment device . . . does not permit litigants to invoke the power of this Court to obtain constitutional rulings in advance of necessity."). None of the plaintiffs has been threatened with arrest or prosecution under the safe storage law, and none alleges that the law has actually prevented him or her from resorting to armed self-defense in a moment of need. As for the sale restriction on unusually dangerous ammunition, no gun dealers have complained that that their permits have been threatened or revoked, none of the plaintiffs has alleged

an actual inability to purchase their preferred ammunition, and the law does not prohibit the possession or use of such ammunition for in-home self-defense in any event. There is no actual injustice, nor even an imminent threat of injustice, that the Court must act to resolve.

Moreover, waiting for an actual controversy to ripen increases the odds that the proper law will be applied to evaluate the claims. *See Simmonds*, 326 F.3d at 360 (declining jurisdiction on prudential grounds in part because "laws dealing with immigration, removal and the rights of aliens have been especially changeable in recent years. . . . What the law will be when and if Simmonds comes to be detained by the INS is, therefore, anything but clear.") Analogously to *Simmonds*, recent Second Amendment jurisprudence has been volatile and introduced substantial doctrinal change, and there is precious little precedent to guide the Court in its analysis of the constitutional limitations on weapons storage or ammunition sales. Waiting for an actual controversy to develop will give the law that much more time to develop and settle, and decrease the odds that the Court will have to revisit what it decides.

Finally, waiting for an actual or imminent controversy to arise would aid the Court by providing a factual context to anchor its analysis. Even if Plaintiffs are correct that there is nothing more to know about their actions, the Court is missing critical information about how San Francisco will actually interpret and enforce the challenged laws. Will it threaten charges for any failure to apply a trigger lock to a gun that is not being carried in a residence, no matter the circumstances? Will the plaintiff being threatened with enforcement be the primarily absent father of six unsupervised children? Might San Francisco exercise its discretion not to prosecute if there are live threats of violence against the gun owner, or if the gun owner stores the gun in a locked room rather than a locked box? A crystallized controversy puts the flesh on the bones of an abstract law and helps orient the Court to the complexities of its task.

In this case, where the law in uncertain and rapidly changing, the facts are altogether absent, and chilled conduct may never even hamper the use of a handgun for self-defense in the home, this Court should decline jurisdiction for prudential as well as constitutional reasons. For now, the risk of a hasty and mistaken constitutional decision, and the potential detriment to the constitutional rights of

subsequent litigants or the rightful police powers of local governments, vastly outweigh the harm to Plaintiffs of waiting for another day.

## CONCLUSION

For all of the reasons set forth above, the City respectfully requests that the Court dismiss the amended complaint in its entirety for lack of subject matter jurisdiction.

Dated: March 31, 2011

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
SHERRI SOKELAND KAISER
Deputy City Attorneys


By: s/Sherri Kaiser
SHERRI SOKELAND KAISER

Attorneys for Defendants City and County of San Francisco, Mayor Edwin Lee and Acting Police Chief Jeff Godown