**\*\*E-filed 9/27/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ESPANOLA JACKSON, et al.,

    Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

No. C 09-2143 RS

**ORDER DENYING MOTION TO DISMISS FOR LACK OF STANDING, GRANTING LEAVE TO AMEND MOOT CLAIM**

## I. INTRODUCTION

In the wake of the Supreme Court's holding in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Second Amendment confers an individual right to keep and bear arms, plaintiffs brought this challenge to certain ordinances of the City and County of San Francisco relating to storage and discharges of firearms, and sales of particular types of ammunition. This litigation was then stayed pending further guidance as to whether the right announced in *Heller* constrains the states, a question answered in the affirmative in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). Defendants[1] now move to dismiss under Rule 12(b)(1) of the Federal Rules of Civil

---

[1] The operative first amended complaint names as defendants the City and County of San Francisco, its Mayor, and its Chief of Police. As defendants point out, the particular individuals holding those offices have changed since the complaint was filed, and may change again before this action is resolved. Defendants offer to stipulate that the individual defendants at any given time should be deemed to be the Mayor and Chief of Police then in office.

Procedure, contending that plaintiffs lack standing to challenge the ordinances because they have not shown, and cannot show a genuine and particularized threat that the ordinances will be enforced against them. For essentially the same reasons, defendants further contend plaintiffs' claims are not ripe. Because plaintiffs have adequately alleged an intent and desire to engage in conduct that is prohibited by the ordinances but which they contend is constitutionally protected, the motion will be denied. Plaintiffs will be given leave to amend, however, as to one claim involving an ordinance that has been repealed and replaced by somewhat different provisions, and which is therefore subject to dismissal on mootness grounds.

## II. BACKGROUND

The First Amended Complaint challenges three provisions of the San Francisco Police Code ("SFPC"):

*Section 4512*, "The Safe Storage Law," generally allows San Francisco residents to carry unsecured handguns freely in their homes at any time, but requires them to apply trigger locks or to store handguns in locked containers when the guns are not under direct, personal control.

*Section 613.10(g),* entitled "Prohibiting Sale Of Particularly Dangerous Ammunition," prohibits gun shops from selling ammunition that has been enhanced to increase the damage it inflicts on the human body, such as fragmenting bullets, expanding bullets, bullets that project shot or disperse barbs into the body, or other bullets that serve no "sporting purpose." Plaintiffs contend that while bullets designed to expand or fragment upon impact fall within this ban, they are particularly suited for self-defense because they are designed, for safety reasons, to prevent ricochet and to eliminate over-penetration of unarmored assailants. Plaintiffs assert the police often use such bullets for the same reasons, and that they are unlike so-called "cop killer" or armor-penetrating bullets that might more reasonably be characterized as "particularly dangerous."

*Section 1290*, "the discharge ban" formerly prohibited firing or discharging "firearms or fireworks of any kind or description" within city limits. Plaintiffs challenged it on grounds that it did not explicitly contain appropriate exceptions for self-defense. Section 1290 has since been *repealed*, and replaced with amendments to provisions in sections 4502 and 4506. While this

1 motion to dismiss was pending, plaintiffs moved for leave to amend to delete their challenge to
2 section 1290 and to allege the grounds on which they contend the revised provisions of sections
3 4502 and 4506 still fail to pass constitutional muster. The motion for leave to file a second amended
4 complaint at that juncture was denied, with the understanding that unless the entire action were
5 dismissed for lack of standing, plaintiffs would be given leave to amend this particular claim upon
6 issuance of this order.

## III. LEGAL STANDARDS

As noted above, defendants move to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that plaintiffs lack standing and that their claims are unripe. The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing and that claims be "ripe" for adjudication. *Allen v. Wright*, 468 U.S. 737, 750 (1984). The party asserting federal subject matter jurisdiction bears the burden of proving its existence. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. *See Allen*, 468 U.S. at 750-51. The related doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the purported injuries are too speculative and may never occur. Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

"[T]he irreducible constitutional minimum of standing contains three elements," all of which the party invoking federal jurisdiction bears the burden of establishing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). First, the plaintiff must prove that he or she suffered an "injury in fact," i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (citations, internal quotation marks, and footnote omitted). Second, the plaintiff must establish a causal connection by proving that the injury is fairly traceable to the challenged conduct of the defendant.

United States District Court
For the Northern District of California

3

*Id.* at 560-61. Third, the plaintiff must show that the injury will likely be redressed by a favorable decision. *Id*. at 561.

"[T]he question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201(1983)(quotations omitted). The central concern of the ripeness inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (quotations omitted).

## IV. DISCUSSION

Defendants insist that under "well established and well elucidated" law in this circuit, persons who have not yet been arrested or prosecuted under a challenged law have standing only if they can show imminent injury-in-fact by means of a "genuine and particularized threat" that the challenged law will be enforced against them. Relying primarily on *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ("*Gun Rights Committee*"), defendants argue that it simply is not enough for plaintiffs to allege that they "wish and intend" to engage in conduct prohibited by the law in dispute; rather, they must also allege facts showing when and how they will violate the law, and a specific threat that they will be prosecuted if they do. Defendants contend plaintiffs have not shown that any law enforcement official has specifically threatened any of them, much less all of them, with arrest and prosecution under any of the challenged ordinances. Defendants place particular emphasis on the observation in *Gun Rights Committee* that, "[w]e have repeatedly admonished . . . that the mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." 98 F.3d at 1126 (quotations omitted).

*Gun Rights Committee* involved a challenge to the federal "assault weapons" ban enacted by Congress in 1994, which prohibited the manufacture, transfer or possession of semiautomatic assault weapons and the transfer or possession of "large capacity ammunition feeding device[s]."

4

The plaintiffs alleged "that they 'wish and intend' to engage in unspecified conduct prohibited by the Act," but had not "articulated concrete plans" to do so. 98 F. 3d at 1124, 1127.

Because *Gun Rights Committee* long preceded *Heller*, the court quickly dispensed with the notion that the plaintiffs might have standing under the Second Amendment—the lack of any then-recognized individual constitutional right to keep and bear arms foreclosed plaintiffs from asserting standing. 98 F. 3d at 1124-25. Plaintiffs' challenge under the Ninth Amendment was rejected for the same basic reason. *Id*. at 1125. Accordingly, the court's standing analysis proceeded only under the claim that Congress had exceeded its power under the Commerce Clause in enacting the assault weapons ban. Here, in contrast, plaintiffs are pursuing what the Supreme Court has now pronounced to be an individual right guaranteed by the Second Amendment, not simply challenging the scope of the Commerce Clause. While defendants may be correct that *Heller* cannot be seen as overruling *Gun Rights Committee*, *per se*, the applicability of the standing analysis in *Gun Rights Committee* to a case involving assertion of individual constitutional guarantees is uncertain.

The continued vitality of *Gun Rights Committee* is also questionable in light of *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). The *Gun Rights Committee* court had pointed out that, "The acts necessary to make plaintiffs' injury—prosecution under the challenged statute—materialize are almost entirely within plaintiffs' own control." 98 F. 3d at 1127. As a result, the court concluded, "[p]laintiffs have failed to show the high degree of immediacy that is necessary for standing under these circumstances." *Id.* In *MedImmune*, however, the Supreme Court rejected this argument.

> Our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.

549 U.S. at 128-129.[2]

---

[2] Indeed, the Court went on to hold that even where the threatened action was by a *private* party—a patent holder threatening an infringement action—the same principle applies.

Ultimately, though, even to the extent that at least some aspects of *Gun Rights Committee* remain good law, it simply is distinguishable. Plaintiffs have not merely alleged that they "wish and intend" to violate the ordinances in some vague and unspecified way, at some unknown point in the future. Plaintiffs allege they own guns now, and that based on their personal views of how it would enhance their personal safety, they want to keep their guns unlocked *now* for potential use in self defense, and that they wish to acquire prohibited ammunition *now* for the same purpose. While the time that they will actually *use* the guns in self defense is unknown and may never come, that does not undermine the immediacy and concreteness of the injury they have alleged. Even as to the discharge rules, which plaintiffs do not contend they intend to violate unless and until a self-defense situation arises, it would be unreasonable to require an incident to occur before judicial review of the validity of the rules is available.[3]

Defendants also rely on *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1 (9th Cir. 1974), which found no justiciable controversy where the governing body of an Indian tribe sought declaratory relief as to the applicability of a county anti-gambling ordinance to "traditional tribal games of chance," and to the possible development of a tribally-run card room on reservation lands. Although the "case or controversy" issues discussed in *Rincon* underlie part of the standing doctrine, the decision was not framed in terms of standing, and it did not involve an assertion of individual constitutional rights. Nothing in the facts or discussion in *Rincon* otherwise compels a conclusion that plaintiffs lack standing here.

Defendants' contention that the plaintiffs' claims are not ripe are based on the same basic arguments as their position on standing, and do not provide a separate basis for dismissal. *See MedImmune,* 549 U.S. at 128 n. 8 ("standing and ripeness boil down to the same question in this case.") Similarly, their arguments that the case should be dismissed on *prudential* standing grounds

---

[3] Defendants' motion also challenges plaintiffs' standing to make a derivative claim on behalf of gun shop owners with respect to the ban on sales of certain types of ammunition. Plaintiffs, however, have made it clear that they are asserting that the ban unduly burdens their *own* alleged right to acquire and possess such ammunition. While it may be that plaintiffs will be unable, as a factual matter, to establish that a ban on sales within the City and County of San Francisco actually presents a significant burden on their ability to obtain such ammunition, that would only undermine the merits of the claim, not plaintiffs' standing to bring it.

rest on the same assumptions as to the concreteness and immediacy of plaintiffs' alleged injury. Accordingly, the motion to dismiss must be denied.

## IV. CONCLUSION

The motion to dismiss for lack of standing is denied. In light of plaintiffs' concession that the claim directed at Section 1290 is now moot, however, it will be dismissed, with leave to amend to allege plaintiffs' challenges to the amendments of sections 4502 and 4506. Any amended complaint shall be filed with 15 days of the date of this order. The parties shall appear for a Case Management Conference on November 3, 2011, at 10:00 a.m., with a joint Case Management Conference statement to be filed one week in advance.

IT IS SO ORDERED.

Dated: 9/26/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE