PAGES 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

| | |
|---|---|
| ESPANOLA JACKSON, ET AL., )<br>                                )<br>         PLAINTIFFS,       )<br>                                )<br>  VS.                          )<br>                                )<br>CITY AND COUNTY OF SAN      )<br>FRANCISCO, ET AL.,        )<br>                                )<br>         DEFENDANTS.       )<br>_____) | NO. C 09-2143 RS |

SAN FRANCISCO, CALIFORNIA
THURSDAY, MAY 5, 2011

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:            MICHEL & ASSOCIATES, PC
                          180 E. OCEAN BLVD.
                          SUITE 200
                          LONG BEACH, CA  90802
                    BY:  **CLINTON B. MONFORT**
                          **ATTORNEY AT LAW**

FOR DEFENDANT:            OFFICE OF THE CITY ATTORNEY
                          CITY & COUNTY OF SAN FRANCISCO
                          #1 DR. CARLTON B. GOODLETT PLACE
                          CITY HALL, ROOM 234
                          SAN FRANCISCO, CA  94102
                    BY:  **SHERRI SOKELAND KAISER**
                          **ATTORNEY AT LAW**

REPORTED BY:          JAMES YEOMANS, CSR 4039, RPR
                      OFFICIAL REPORTER

COMPUTERIZED TRANSCRIPTION BY ECLIPSE

THURSDAY, MAY 5, 2011                              2:00 P.M.

1

2              (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)

3         **THE CLERK:**  C 09-2143, JACKSON, ET AL. VERSUS CITY AND

4    COUNTY OF SAN FRANCISCO.

5         PLEASE STATE YOUR APPEARANCES.

6         **MS. KAISER:**  GOOD AFTERNOON.

7         SHERRI KAISER FOR DEFENDANT CITY AND COUNTY OF SAN

8    FRANCISCO.

9         **MR. MONFORT:**  GOOD AFTERNOON.

10        CLINTON MONFORT FOR THE PLAINTIFFS.

11        **THE COURT:**  GOOD AFTERNOON.

12        LET ME MAKE SOME COMMENTS, PRELIMINARY COMMENTS.  TO

13   SOME EXTENT A FORM OF A TENTATIVE RULING, OTHERS ARE SORT OF

14   OBSERVATIONS.

15        LET ME MENTION FIRST, THAT I RECEIVED A FLURRY OF

16   SUBMISSIONS IN ADDITION TO THE ACTUAL MOTION WHICH IS FOCUSED,

17   AS I UNDERSTAND IT, ON THE STANDING QUESTION, THE RIPENESS

18   QUESTION.  I RECEIVED THIS SUBMISSION FROM THE CITY LAST WEEK

19   AND THEN ADDITIONAL ONE AS WELL TODAY.

20        I THINK, WITH RESPECT TO THE APPELLATE BRIEFING THAT

21   PLAINTIFFS' COUNSEL APPARENTLY ARGUED, POSITION THAT THE

22   DEFENDANTS THINK IS SOMEHOW INCONSISTENT WITH WHAT THE

23   POSITIONS THAT ARE BEING TAKEN HERE, POSITIONS PLAINTIFFS ARE

24   TAKING.

25        I DON'T THINK THERE IS, TO THE EXTENT THERE'S SUCH A

1    THING AS LAWYER ESTOPPEL, I DON'T THINK THAT CONCEPT WOULD

2    APPLY HERE, EVEN IF THE FACTS OF THE OTHER CASE WERE NOT

3    DISTINGUISHABLE, AND I THINK THAT THEY ARE.

4              I DON'T THINK THERE'S ANYTHING WRONG WITH AN ATTORNEY

5    ARGUING FOR DIFFERENT RESULTS, GOOD ATTORNEY SHOULD BE ABLE TO

6    DO THAT.  SO I DON'T WANT TO DISCUSS THAT.  I DON'T THINK

7    THAT'S WORTH OUR TIME.

8              IF A PARTY WANTS TO SUBMIT SOMETHING, THIS GOES TO THE

9    PROCESS QUESTION, AFTER REPLY BRIEF IS IN, YOU HAVE TO SEEK

10   LEAVE TO DO THAT.

11             AND UNDER OUR LOCAL RULES 7-3(D), WITH A COUPLE OF

12   EXCEPTIONS THERE THAT ARE MENTIONED IN THE RULE BUT DON'T APPLY

13   HERE, YOU GOT TO ASK FOR THAT, AND THE CITY'S SUBMISSION I

14   DON'T THINK WAS CONSISTENT WITH THOSE RULES.

15             THAT SAID, THE SUBMISSION WAS NOT, AS PLAINTIFFS

16   ARGUE, AN EX PARTE.  THAT TERM IS SO MISUSED IN COURT BECAUSE

17   IT WAS SUBMITTED WITH NOTICE TO THE OTHER SIDE.

18             EX PARTE COMMUNICATIONS IS ONE WHERE ONLY ONE SIDE

19   SUBMITS SOMETHING, THE OTHER SIDE DOESN'T SEE IT.  THAT DOES

20   OFTEN CREATE SOME ETHICAL ISSUES, VERY SELDOM IS -- THAT'S NOT

21   WHAT HAPPENED HERE.

22             THE BOTTOM LINE IS, I'M NOT GOING TO CONSIDER THE

23   SUBMISSION THE CITY MADE.  I DON'T THINK IT'S RELEVANT TO ANY

24   OF THE ISSUES I HAVE TO DECIDE ON THIS MOTION.  I JUST -- I

25   DON'T THINK IT'S PRODUCTIVE FOR US TO HEAR ANY ARGUMENT ON

```
 1    THAT.

 2                IN ADDITION TO THAT, I GOT A MOTION FROM PLAINTIFFS

 3    THAT WAS FILED EARLIER THIS WEEK FOR LEAVE TO FILE A

 4    SUPPLEMENTAL REPORT, AND THAT WAS NOTICED FOR HEARING IN JUNE,

 5    UNNOTICED THAT.

 6                THE PURPOSE OF IT IS TO APPARENTLY INCLUDE A NEW CLAIM

 7    THAT PLAINTIFFS NOW WANT TO ADVANCE WITH RESPECT TO THE

 8    AMENDMENTS TO THE DISCHARGE BAN, WHICH FORMALLY WAS SECTION

 9    1290, NOW IT'S SECTION 4502 AND 4506, AND PLAINTIFFS WOULD THEN

10    ALSO DISMISS THE CLAIM IN THE PRESENT COMPLAINT THAT CHALLENGES

11    1290.

12                I THINK, PLAINTIFF IS PROBABLY CORRECT, TECHNICALLY A

13    SUPPLEMENTAL COMPLAINT WOULD BE PROPER.  I THINK, RELATES TO

14    THE EVENTS THAT TOOK PLACE AFTER THE ORIGINAL COMPLAINT WAS

15    FILED, AMENDMENTS TO THE LAW, AND I DON'T WANT TO HAVE MORE

16    THAN ONE OPERATIVE PLEADING.

17                SO RATHER THAN A SUPPLEMENTAL PLEADING WHAT I'M

18    INCLINED TO DO, PUT ASIDE FOR A MOMENT THE STANDING ISSUE,

19    WHICH WE WILL GET TO, WHICH IF I WERE TO GRANT DEFENDANT'S

20    MOTION WOULD RENDER THIS SOMEWHAT ACADEMIC.

21                BUT LET'S PUT THAT ASIDE FOR THE MOMENT.  TO HAVE THE

22    PLAINTIFFS ACCORDED LEAVE TO AMEND, TO SIMPLY AMEND AND HAVE

23    THIS UPDATED CLAIM, IF YOU WILL, RATHER THAN HAVE IT IN TWO

24    DIFFERENT PIECES, SO I WOULD BE INCLINED TO DO THAT.

25                SO THOSE ARE KIND OF THE PRELIMINARY THINGS.  LET'S
```

1  TALK ABOUT THE MAIN ISSUES THAT WE'RE HERE TO DISCUSS.  THAT'S

2  THE STANDING ISSUE AND THE RIPENESS QUESTION, WHICH I THINK IS

3  RELATED.

4          AND THAT'S REALLY THE ONLY THING I THINK WE'RE

5  FOCUSING ON HERE.  FROM TIME-TO-TIME SEEMS TO BE SOME MERGING

6  INTO OTHER ISSUES IN THE CASE.

7          TO THE EXTENT I WERE TO DENY DEFENDANT'S MOTION, WE'LL

8  GET TO THOSE SUBSTANTIVE ISSUES, BUT AT THIS JUNCTURE ALL WE'RE

9  TALKING ABOUT IS STANDING.

10          DEFENDANTS ARE CONTENDING THAT THE PLAINTIFFS LACK

11  STANDING TO BRING THIS ACTION BECAUSE THE CLAIM, AS I

12  UNDERSTAND IT, THE ARGUMENT IS THAT PLAINTIFFS HAVE NOT

13  SUFFERED ANY INJURY IN FACT BY ARREST OR PROSECUTION UNDER THE

14  CHALLENGED LAW AND THEY REALLY COULD ONLY HAVE STANDING TO SHOW

15  EMINENT INJURY IN FACT.

16          I RECOGNIZE THAT IN MAKING THAT ARGUMENT THERE'S

17  RELIANCE ON THE SAN DIEGO GUN RIGHTS CASE.  DEFENDANTS ARE

18  ARGUING THAT BASED ON THAT CASE IT'S SIMPLY NOT ENOUGH FOR

19  PLAINTIFFS TO ALLEGE THAT THEY WISH AND INTEND TO ENGAGE IN

20  CONDUCT PROHIBITED BY THE LAW IN DISPUTE, AFTER ALLEGED FACTS

21  THAT SHOW HOW AND IN WHAT FASHION THEY VIOLATED THE LAW, A

22  SPECIFIC THREAT THAT WOULD BE PROSECUTED.

23          AND DEFENDANTS CONTEND IT'S INSUFFICIENT BECAUSE IT'S

24  DEVOID OF ALLEGATION OF LAW ENFORCEMENT HAS MADE ANY SUCH

25  INDICATION THEY WERE GOING PROCEED IN THAT FASHION.

```
1          THAT SAID, GUN RIGHTS CASE WAS DECIDED PRIOR TO THE

2    SUPREME COURT DECISIONS IN HELLER AND MC DONALD.  GUN RIGHTS

3    INVOLVE A CHALLENGE TO A FEDERAL LAW.

4          I THINK, PROHIBITED MANUFACTURE, TRANSFER, POSSESSION

5    OF SEMIAUTOMATIC WEAPONS, THE TRANSFER AND POSSESSION OF

6    AMMUNITION, ASSAULT WEAPONS BAN, AND IN THAT CASE THE

7    PLAINTIFFS HAVE ALLEGED THEY WISH -- THEY INTENDED TO ENGAGE IN

8    SOME CONDUCT.

9          I DON'T THINK IT WAS ARTICULATED AS TO WHAT WAS GOING

10   TO VIOLATE THE ACT POTENTIALLY, I THINK, BECAUSE IT DOES

11   PREDATE HELLER AND REALLY FOCUSES ON THE COMMERCE CLAUSE

12   QUESTION, THE POWER OF CONGRESS IN ENACTING ASSAULT WEAPONS

13   BAN.

14         I JUST DON'T THINK THAT IT IS REALLY UP TO DATE FOR

15   OUR PURPOSE IN TERMS OF CONSIDERING WHERE THINGS STAND IN THE

16   STANDING QUESTION.

17         AND I THINK IT'S ALSO UNDERCUT TO SOME LARGE EXTENT BY

18   THE MEDLMMUNE CASE SUPREME COURT BECAUSE IN THAT CASE THE COURT

19   INDICATED THE ANALYSIS HAS TO BEGIN WITH AN UNDERSTANDING.  IF

20   THERE'S THREATENED ACTION BY THE GOVERNMENT THE PLAINTIFF IS

21   NOT REQUIRED TO EXPOSE THEMSELVES TO THE LIABILITY BEFORE

22   BRINGING SUIT TO CHALLENGE THE BASIS FOR THE THREAT.

23         SO I THINK THAT FURTHER, AS I SAY, SORT OF UNDERCUTS

24   FOR ITS STANDING PURPOSE THE QUESTION ELUCIDATED IN GUN RIGHTS.

25         I KNOW THAT DEFENDANTS ARE RELYING ON MISSION INDIANS
```

1  CASE.  INTERESTING CASE.  WHERE THERE WAS THIS GENERAL ISSUE

2  ABOUT POSSIBLY ENFORCING GAMBLING LAWS.  BUT I THINK IT WAS

3  QUITE -- THAT THAT CASE QUITE AMORPHOUS AND I THINK WE'RE IN A

4  SOMEWHAT DIFFERENT POSTURE HERE.

5          SO I SUPPOSE MY SENSE IS THAT WE'RE IN A VERY

6  DIFFERENT WORLD, TO JUST SUMMARIZE, THEN WE WERE IN THE GUN

7  RIGHTS CASE, SAN DIEGO GUN RIGHTS AND THAT THE ARGUMENT AT THE

8  VERY LEAST FOR STANDING IS STRONGER IN THIS CASE.

9          SO I KNOW THAT'S A LONG WINDED QUASI TENTATIVE, BUT I

10  THOUGHT I'D START OUT AND GIVE YOU SOME OF MY THOUGHTS ON IT.

11  SO WHY DON'T I TURN FIRST TO MS. KAISER.

12          **MS. KAISER:**  THANK YOU, YOUR HONOR.

13          I THINK, A FEW THINGS.  ONE IS, IT MAY BE THE CASE, AS

14  YOU SAY, THAT DECISIONS BY THE NINTH CIRCUIT ARE SOMEHOW

15  OUTMODED OR OUTDATED, BUT THEY STILL CONTROL.

16          **THE COURT:**  I WOULDN'T SAY OUTDATED.  WHAT I'M SAYING

17  IS, WE DON'T LIVE IN A STATIC WORLD AND EVEN THE JUDGES IN THE

18  CIRCUIT WOULD SAY EVENTS MAY OCCUR IN THE FORM OF SUPREME COURT

19  DECISIONS THAT ONE HAS TO TAKE INTO ACCOUNT IN ASSESSING WHERE

20  THOSE OPINIONS STAND, AND THERE'S -- I THINK, WE ALL HAVE TO

21  AGREE IT'S A MAJOR C CHANGE, WHATEVER ONE MAY THINK IT MEANS IN

22  THE END IN TERMS OF SUBSTANTIVE ISSUES.

23          HELLER AND MC DONALD, IT'S A CHANGED CIRCUMSTANCE FROM

24  WHAT WAS THE STATE OF UNDERSTANDING OF THE LAW WHEN THE NINTH

25  CIRCUIT DEALT WITH THE SAN DIEGO CASE.

1          **MS. KAISER:** I ABSOLUTELY AGREE WITH YOU THERE HAS

2     BEEN A C CHANGE, I WOULD BE FOOLISH TO DENY IT.  BUT THE

3     QUESTION ISN'T SIMPLY WHETHER THERE HAS BEEN A C CHANGE,

4     WHETHER THAT C CHANGE IS CLEARLY IRRECONCILABLE WITH PRIOR

5     NINTH CIRCUIT AUTHORITY.

6          I DON'T THINK THAT THRESHOLD IS MET HERE.  I DON'T

7     THINK THERE'S ANY REASON WHY HELLER OR MC DONALD HAS TO BE READ

8     AS CONFLATING, ANTIDOTALLY CONFLICTING WITH THE PRIOR AUTHORITY

9     THE CITY RELIES ON.

10         AND THE FACT IS THAT HELLER AND MC DONALD ARE BOTH

11    VERY RECENT OPINIONS.  SO IT'S NOT AS THOUGH THE CITY HAS A

12    WEALTH OF SUBSEQUENT CASE LAW TO RELY ON, IT'S SIMPLY THE

13    STANDING DOCTRINE LONG BEEN ESTABLISH IN THE NINTH CIRCUIT.

14         SO THE QUESTION HAS TO BE, HAVE HELLER AND MC DONALD

15    SO ALTERED THE LANDSCAPE IN REGARD TO THE --

16         **THE COURT:** IN ADDITION, AS I INDICATED BEFORE, IN

17    ADDITION TO THE CHANGED TERRAIN THAT HELLER AND MC DONALD

18    REPRESENTS, HOW MUCH MEDLMMUNE DECISION, THE MEDLMMUNE DECISION

19    REALLY DOES SEEM TO INDICATE THAT THE PLAINTIFF DOES NOT HAVE

20    TO PUT THEMSELVES IN POSITION OF HAVING VIOLATED THE LAW IN

21    ORDER TO HAVE STANDING.

22         AND HOW CAN WE RECONCILE THAT WITH SAN DIEGO GUN

23    RIGHTS FOR PURPOSE OF DETERMINING WHETHER OR NOT THERE'S

24    STANDING IN THE CASE.

25         **MS. KAISER:** WELL, I THINK THAT ACTUALLY THOSE CASES

JAMES YEOMANS - OFFICIAL REPORTER - (415)863-5179

```
 1   ARE ALSO CONSISTENT WITH EACH OTHER.  IT'S LONG BEEN THE FACT

 2   YOU CAN BRING REINFORCEMENT CHALLENGES IF YOU HAVE STANDING TO

 3   DO SO.

 4          AND SO THE DOCTRINE HAS BEEN CLEAR FOR A LONG TIME,

 5   YOU DON'T ACTUALLY HAVE TO BREAK THE LAW AND SUBJECT YOURSELF

 6   TO PROSECUTION.  THERE'S ACTUALLY NOTHING NEW WITH THAT IDEA.

 7   THAT'S SIMPLY A RESTATEMENT OF PRE-ENFORCEMENT CHALLENGE

 8   DOCTRINE.

 9          BUT THE PROBLEM IS, EVEN IN TERMS OF A PRE-ENFORCEMENT

10   CHALLENGE THERE ARE STILL STANDING REQUIREMENTS THAT THE

11   PLAINTIFF MUST MEET AND THOSE INCLUDE ACTUAL OR EMINENT INJURY.

12          AND IN THE CASE OF EMINENT INJURY IN THE

13   PRE-ENFORCEMENT CHALLENGE DOCTRINE OTHER THAN IN FIRST

14   AMENDMENT CASES WHICH ARE SPECIAL CASES I'M HAPPY TO TALK

15   ABOUT.

16          THE COURT:  I UNDERSTAND, I AGREE WITH YOUR ARGUMENT

17   THAT THOSE CASES HAVE A PARTICULAR CHILLING ISSUE THAT IS NOT

18   PRESENT WHEN ADDRESSING SOMETHING OTHER THAN THE FIRST

19   AMENDMENT.  I THINK, THAT'S A LEGITIMATE ARGUMENT AND I'M AWARE

20   OF IT.

21          MS. KAISER:  WELL, THEN THE ISSUE BECOMES WHETHER THE

22   INJURY, IF IT'S NOT -- IF CHILL DOESN'T SUFFICE, IS IT

23   SUFFICIENTLY EMINENT?

24          AND THAT'S WHERE THE ACTUAL CONDUCT IN WHICH THE

25   PLAINTIFF WISHES TO ENGAGE OR HAS ENGAGED, ATTRACTS THE
```

```
1    ATTENTION OF LAW ENFORCEMENT, TO THE EXTENT THAT LAW

2    ENFORCEMENT SAYS, HEY, IF YOU DO THAT YOU WILL BE PROSECUTED.

3            AND THERE ARE TWO THINGS THAT ARISE FROM THAT THAT ARE

4    VERY IMPORTANT FOR JUDICIAL DECISION MAKING.  ONE IS A CLEAR

5    SET OF FACTS OF THE PLAINTIFFS' CONDUCT, IT'S THIS PARTICULAR

6    CONDUCT.

7            AND THE SECOND THING IS, IT'S A CLEAR STATEMENT OF HOW

8    THE JURISDICTION INTERPRETS.  THE MAIN ARGUMENT REALLY AGAINST

9    ALL OF THE SAN FRANCISCO ORDINANCES IS THEIR EFFECT ON

10   SELF-DEFENSE, BUT THEY NEVER BEEN APPLIED IN A SELF-DEFENSE

11   CONTEXT.

12           WE DON'T KNOW WHAT PROSECUTORS WOULD DO IN SAN

13   FRANCISCO IN THE EVENT THAT IT WAS IN-HOME SELF-DEFENSE, YOU

14   KNOW, DIRECTLY UNDER THE RUBRIC OF HELLER.

15           I HAVE A HARD TIME IMAGING, FRANKLY, THE PROSECUTORS

16   WOULD IGNORE HELLER BASED ON A PORTION OF THE LAW THAT IS --

17   HAS BEEN EXPLICITLY PREEMPTED BY THE SUPREME COURT.

18           THE COURT:  HOW ABOUT SAFE STORAGE ORDINANCE?

19           MS. KAISER:  THE SAFE STORAGE ORDINANCE IS NOT

20   PREEMPTED BY HELLER BECAUSE THE STORAGE ORDINANCE IN HELLER

21   THAT IS CHALLENGED REQUIRED GUNS TO BE COMPLETELY INOPERABLE AT

22   ALL TIMES.  EITHER DISASSEMBLED OR LOCKED.  YOU COULD NEVER

23   EVER HAVE IT OUT.

24           HERE YOU CAN CARRY YOUR GUN AROUND YOUR HOUSE ALL DAY.

25   AND YOU CAN HAVE IT IN YOUR HOLSTER IF YOU WANT TO.  YOU COULD
```

1    HAVE IT IN YOUR HAND, YOU COULD HAVE IT LOADED.  YOU COULD BE

2    RUNNING.  THE ONLY THING YOU CAN'T DO IS PUT IT DOWN AND WALK

3    AWAY, SO THAT IT'S AVAILABLE TO OTHER PEOPLE IN THE HOUSE TO --

4         **THE COURT:**  YOU'RE ARGUING WHY -- WELL, THE STANDING

5    HURDLE IS ADDRESSED BY PLAINTIFFS, WE'LL GET TO THESE CONCERNS.

6    SOME OF THIS IS WHY YOU'RE SORT OF HEARING, YOU SAY WHY IT

7    SHOULD WITHSTAND SCRUTINY BECAUSE AN ORDINANCE HAS A GOOD

8    PURPOSE AND ALL THE REST OF IT.

9         BUT WE'RE TALKING NOW, I'M CONFINING ENTIRELY TO THE

10   QUESTION OF STANDING AND WHETHER OR NOT THERE IS ENOUGH OF A

11   CONCRETE ACTUAL POTENTIAL INJURY FOR THESE PLAINTIFFS TO BRING

12   FORWARD THE CLAIM.

13        NOT SO MUCH WHETHER OR NOT THE SAFE STORAGE IS

14   SOMETHING THAT IF IT IS LITIGATED WILL SURVIVE THE APPROPRIATE

15   LEVEL OF SCRUTINY.

16        **MS. KAISER:**  I UNDERSTAND.  I WAS ACTUALLY ANSWERING A

17   DIFFERENT QUESTION, WHETHER OUR ORDINANCE IS PREEMPT BY HELLER.

18   I DON'T BELIEVE IT IS FOR THOSE REASONS.

19        YES, SET THAT ASIDE.  IN TERMS OF THE INJURY ANALYSIS

20   THEN UNDER THE SAFE STORAGE LAW ONE OF TWO THINGS WOULD HAVE TO

21   HAPPEN BASED ON THE STANDING CASE LAW.

22        THERE ACTUALLY HAS TO BE EITHER AN ACTUAL INJURY IN

23   TERMS OF AN ACTUAL UNCONSTITUTIONAL PROSECUTION THAT COUNTS OR

24   THE ACTUAL DENIAL OF THE USE OF A FIREARM IN SELF-DEFENSE IN

25   THE HOME WHEN YOU'RE UNDER ATTACK.

1          AND THAT'S A VERY SPECULATIVE INJURY IN THIS CONTEXT.

2     IT'S NOT LIKE SPEECH WHERE YOU DON'T DO IT YOU'RE INJURED.

3     HERE IN ORDER FOR THAT INJURY TO ARISE YOU HAVE TO HAVE --

4     LET'S EVEN ASSUME THAT THIS IS A PLAINTIFF WHO HAS A GUN AND

5     WANTS TO USE IT IN SELF-DEFENSE AT ALL TIMES, BUT HAS A TRIGGER

6     LOCK ON IT, IN ORDER FOR THAT ORDINANCE TO CAUSE INJURY THERE

7     WOULD HAVE TO BE A HOME INVADER, WHICH IS ALREADY FAIRLY

8     UNLIKELY.

9          THEY WOULD HAVE TO GIVE THE PLAINTIFF ENOUGH NOTICE

10    THEY WERE IN THE HOUSE, THAT THE PLAINTIFF COULD REACH THE GUN,

11    BUT NOT QUITE ENOUGH NOTICE THAT THEY COULD ALSO UNLOCK IT AND

12    FIRE IT.

13         THERE'S THIS LITTLE TINY WINDOW WHERE THE SAFE STORAGE

14    ORDINANCE MIGHT HAVE AN EFFECT.  WHILE THE INJURY IS POSSIBLE,

15    ITS VERY SPECULATIVE AND THAT ISN'T ENOUGH FOR STANDING.

16         **THE COURT:**  WELL, EXCEPT, I THINK, THE EXTENSION OF

17    YOUR ARGUMENT, I DON'T SEE A SCENARIO OTHER THAN THE ACTUAL

18    ARREST OR ENFORCEMENT OF THE PROVISION, THAT EVEN THOUGH YOU'RE

19    INDICATING, WELL, I ACKNOWLEDGE THAT MEDLMMUNE SAYS IT DOESN'T

20    HAVE TO BE, YOU HAVE TO BE ARRESTED OR THE LIKE.  I DON'T SEE

21    WHERE ANYTHING BUT THAT WOULD BE ENOUGH FROM YOUR ANALYSIS TO

22    WARRANT STANDING.

23         I MEAN, I DON'T SEE THIS SORT OF ACKNOWLEDGE MENT

24    THAT, YES, WE DON'T, THE PLAINTIFF DOESN'T HAVE TO PUT HIM OR

25    HERSELF IN THAT POSITION, BUT THEN THE ARGUMENT SEEMS TO BE

1    THERE, UNTIL THEY'RE IN THAT POSITION THEY CAN NEVER HAVE

2    STANDING.  THAT'S WHERE I'M HAVING SOME BE TROUBLE.

3          **MS. KAISER:**  OKAY.  I -- JUST TO CLARIFY MY POSITION,

4    WHICH I THINK YOU MAY HAVE UNDERSTOOD QUITE CORRECTLY, JUST TO

5    CLARIFY IT.

6          THERE ARE TWO KINDS INJURY YOU CAN SUFFER.  ONE IS THE

7    ACTUAL DEPRIVATION OF THE RIGHT TO FIRE YOUR GUN IN

8    SELF-DEFENSE IN THE HOME, WE WERE JUST DESCRIBING THAT.

9          THE SECOND KIND OF ACTUAL INJURY THAT YOU CAN SUFFER

10   IS AN UNCONSTITUTIONAL PROSECUTION.

11         YOU DON'T HAVE OBVIOUSLY THE FIRST KIND WE WERE

12   DISCUSSING, IS VERY SPECULATIVE AND HYPOTHETICAL AND PROBABLY

13   NOT ENOUGH TO ANCHOR STANDING.

14         THE SECOND TYPE OF INJURY, THE UNCONSTITUTIONAL

15   PROSECUTION, THAT IS WHERE IT IS IMPORTANT THAT THERE'S AN

16   INDIVIDUALIZED REASON TO BELIEVE BASED, PERHAPS, ON THE PRIOR

17   CONDUCT OF THE PLAINTIFF.

18         MOST OF THE CASES WHERE THERE'S NOT A CLEAR THREAT OF

19   ENFORCEMENT DEAL WITH CONDUCT THE PLAINTIFF HAS ALREADY ENGAGED

20   IN MULTIPLE TIMES.

21         **THE COURT:**  OR ALTERNATIVELY, I SUPPOSE, YOU COULD SAY

22   IF THERE'S A TRACK RECORD OF OTHERS BEING PROSECUTED.

23         **MS. KAISER:**  OR A TRACK RECORD OF OTHERS BEING

24   PROSECUTED, SO WE KNOW HOW THE LOCALITY OR JURISDICTION

25   INTERPRETS AND ENFORCES ITS LAWS IN THE EVENT OF A CONDUCT

1    THAT'S BEING HYPOTHESIZED IN THE COMPLAINT.

2          HERE WE DON'T HAVE EITHER ONE OF THOSE THINGS.  WE

3    NEITHER HAVE AN INDICATION OF CLEAR SET OF FACTS THAT SHOW WHAT

4    EXACTLY IS GOING TO HAPPEN SHOULD THIS SITUATION ARISE, WE

5    SIMPLY HAVE A GENERALIZED RECITATION OF WE INTEND TO DO WHAT

6    THE LAW SAYS WE SHOULDN'T DO AND WE REALLY WISH WE CAN DO IT TO

7    YOU IF THE LAW WERE THE OTHER WAY WE COULD.

8          **THE COURT:**  WHAT SHOULD I MAKE, IF ANYTHING, OF THE

9    FACT THAT IN JUDGE WILKIN'S CASE THE, AS I UNDERSTAND IT, THE

10   CITY ANSWERED THE COMPLAINT AND DID NOT INVOKE A STANDING

11   QUESTION?

12         SHOULD I -- IS THAT A FAIR THING FOR ME TO TAKE INTO

13   ACCOUNT?  AND IF IT IS, HOW SHOULD I TAKE IT INTO ACCOUNT?

14         **MS. KAISER:**  OKAY.  I PERSONALLY THINK NOW THE CASES

15   ARE NOT CONSOLIDATED AND THEY'RE COMPLETELY SEPARATE.  THAT IT

16   REALLY SHOULDN'T MATTER IN THE COURTROOM.

17         I WOULD HAVE BEEN HAPPY TO BRING THEM TOGETHER TO

18   TREAT THEM THE SAME.

19         **THE COURT:**  BUT UNLIKE A LAWYER OF STOCK HOLD SORT OF

20   NOTION, WHICH I DON'T THINK IS REALLY AN ARGUMENT THAT GOES

21   VERY FAR, BUT THE PARTY TAKING DIFFERENT POSITIONS IS SOMETHING

22   THAT, PERHAPS, THE APPROPRIATE CIRCUMSTANCE CAN BE TAKEN INTO

23   ACCOUNT, THERE IS A STANDING ARGUMENT TO BE HAD.  ONE WOULD

24   EXPECT IT SHOULD BE ADVANCED IF THERE IS NO STANDING.

25         AND, I MEAN, I WOULD ASSUME THE CITY TAKEN THE

POSITION, THE CITY HAS ANSWERED THE COMPLAINT, SO WHETHER OR

NOT THE MATTERS WERE CONSOLIDATED, BOTH MATTERS WOULD GO IN

FRONT OF JUDGE WILKEN OR IN FRONT OF ME OR WHAT HAVE YOU.

THAT'S REALLY A CASE MANAGEMENT ISSUE, BUT THE

QUESTION IS SHOULD -- WHY SHOULDN'T, I GUESS, IS A BETTER WAY

TO PHRASE IT, WHY SHOULDN'T I CONSIDER THE CITY'S POSITION IN

THAT LITIGATION FOR PURPOSE OF DETERMINING WHETHER OR NOT THERE

IS A STANDING PROBLEM?

**MS. KAISER:**  TWO THINGS.  TO ANSWER YOUR QUESTION

DIRECTLY.  THERE ARE ADDITIONAL CLAIMS IN PIZZO WHERE I BELIEVE

THE FACTS WILL SHOW ONCE WE ENTER DISCOVERY THAT THE PLAINTIFF

LACKS STANDING, AND BECAUSE OF SITUATION ABOUT THERE'S THIS

APPLICATION AND WHETHER IT WAS SUBMITTED, ET CETERA.

BUT THAT REQUIRES FACTUAL DISCOVERY.  WHEREAS THESE

OTHER CLAIMS THAT I'M CHALLENGING RIGHT NOW IN JACKSON ARE THE

SOLE CLAIMS IN THE COMPLAINT AND NONE OF THEM REQUIRE FACTUAL

DISCOVERY, AT LEAST, FROM THE CITY'S SIDE.

IT MAY BE THAT THE PLAINTIFFS ARGUE THAT THEY CAN

BRING ADDITIONAL FACTS THAT WILL ESTABLISH STANDING BECAUSE OF

IMMEDIATE THREATS OF ENFORCEMENT MAYBE, BUT THE CITY DIDN'T

NEED ADDITIONAL FACTS IN ORDER TO BRING THE MOTION.

SO WE CAN BRING A FULLY DISPOSITIVE MOTION HEARING.

WE DIDN'T HAVE THAT OPPORTUNITY IN PIZZO AND SO WE DECIDED TO

REFRAIN AND BRING ALL OF OUR ARGUMENTS SIMULTANEOUSLY SIMPLY AS

A MATTER OF COMEDY.  WE DON'T WAIVE OUR SUBJECT MATTER

1    JURISDICTION ARGUMENT BY WAITING FOR THE NEXT ROUND OF MOTIONS.

2            SECONDLY, I KNOW YOU DON'T WANT TO DISCUSS THIS, YOU

3    MENTIONED IT A FEW TIMES NOW, THE LETTER FROM THE CITY DOES NOT

4    ALLEGE, TRY TO BRING FORWARD ANY NOTION OF LAWYER ESTOPPEL.

5    ACTUALLY MAKES THE POINT THAT THE CLIENT FOR THE FIRST FILING

6    IS THE STATE ARM OF THE NRA WHICH IS THE PLAINTIFF HERE.

7            AND SO IT MAKES ACTUALLY THE PARTIES NOT THE LAWYER.

8    IT'S TRUE IT WAS THE SAME LAWYER BOTH TIMES, BUT IN FACT THESE

9    TWO PARTIES ARE IN PRIVITY, THAT IS THE POINT OF THE LETTER,

10   NOT THAT THE LAWYER DID SOMETHING IMPROPER.

11           **THE COURT:**  OKAY.  MR. MONFORT.

12           **MR. MONFORT:**  TO THE EXTENT YOUR HONOR WILL BE

13   INCLINED TO DENY THE MOTION, I DON'T WANT TO TAKE UP TOO MUCH

14   OF YOUR TIME.

15           **THE COURT:**  MS. KAISER INDICATED, MADE SOME POINTS

16   THAT I'D LIKE YOU TO ADDRESS.

17           **MR. MONFORT:**  ABSOLUTELY.  THANK YOU.  JUST CHECKING

18   FIRST.

19           **THE COURT:**  SMART MOVE.  ALWAYS WANT TO MAKE SURE.

20           **MR. MONFORT:**  SETTING ASIDE FOR A MOMENT THE CITY'S

21   CLAIMS REGARDING WHETHER OR NOT THE ALLEGED SECOND AMENDMENT

22   VIOLATIONS IN AND OF THEMSELVES WOULD CONSTITUTE THE HARM

23   GIVING PLAINTIFFS STANDING IN THE CASE, AND MOVING AHEAD TO THE

24   GUN RIGHTS CASE THE CITY RELIES ON IN REGARD TO THAT COURT'S

25   ANALYSIS OF PRE-ENFORCEMENT STANDING, THERE'S A COUPLE OF

1   DISTINGUISHING FACTORS THERE THAT, I THINK, ARE IMPORTANT FOR

2   YOUR CONSIDERATION.

3        FIRST, IN THAT CASE THE COURT TOOK TIME AS MEDLMMUNE

4   ALSO NOTED THE PLAINTIFFS HAD NO CONCRETE INTENTION TO ENGAGE

5   IN THE PROHIBITED CONDUCT.

6        CONVERSELY PLAINTIFFS IN THE CASE HAS ALLEGE EVIDENCE

7   THAT BUT FOR THE CHALLENGED PROVISION THEY WOULD IMMEDIATELY

8   ENGAGE IN THE CONDUCT PROHIBITED BY THE ORDINANCES THAT ARE

9   CHALLENGING.

10       **THE COURT:** IT'S TRUE, IS IT NOT, AS MS. KAISER SORT

11   OF SUGGESTED, ALTHOUGH, IT WAS MORE RESPONDING TO THE

12   THEORETICAL QUESTIONS, I SUPPOSE.

13       THERE'S NO TRACK RECORD HERE, THESE ARE RELATIVELY

14   KNEW, I SUPPOSE, THERE'S NO TRACK RECORD OF THE MUNICIPALITY

15   ENFORCEMENT OF ANY OF THESE PROVISIONS.

16       **MR. MONFORT:** WE'RE NOT AWARE OF ANY PROSECUTION.  I'M

17   UNAWARE.  I THINK, THIS MIGHT BE FLESHED OUT IN DISCOVERY

18   WHETHER IT'S BEEN USED IN TERMS OF PLEA AGREEMENTS, ANYTHING OF

19   THAT NATURE, AND ACTUALLY NOT AWARE OF THAT.

20       BUT I'M NOT AFFIRMATIVELY AWARE OF ANY ACTUAL

21   PROSECUTION.  HOWEVER, IN THE SAN DIEGO GUN RIGHTS CASE ALL

22   NOTE A RIGHT OF ENFORCEMENTS IN THAT CASE, I THINK IT'S

23   DISTINGUISHABLE IN THE PRESENT CASE.

24       THERE THE CASE NOT ONLY THE CITY KIND OF THREATENED TO

25   ENFORCE THE ORDINANCES, THEY DONE SO PUBLICLY, BUT ALSO

1    PERSONALLY WITH RESPECT TO PLAINTIFFS, SHOWING UP ONE OF

2    PLAINTIFF'S HOMES TO MAKE SURE HE WAS COMPLYING WITH THE

3    ORDINANCE.

4              I'M NOT SURE HOW THEY CAN READ THAT AS ANYTHING OTHER

5    THAN ATTEMPT TO ENFORCE THE ORDINANCE.

6              AND WITH REGARD TO DISCHARGE ORDINANCE, PLAINTIFFS

7    HAVE BEEN TOLD BY CITY OFFICIALS WHEN ASKED IF THEY DISCHARGED

8    THEIR FIREARMS IN SELF-DEFENSE, WHETHER OR NOT THEY WOULD BE

9    PROSECUTED, THEY WERE TOLD, YES, THEY WOULD BE PROSECUTED,

10   UNLESS THEY ALLEGED THAT THE DISCHARGED OCCURRED ACCIDENTALLY,

11   AND OBVIOUSLY PLAINTIFFS ARE OF THE OPINION THAT SELF-DEFENSE

12   WOULD NEVER BE ACCIDENTAL.

13             SO THEY ARE FACED WITH HAVING TO LIE OR TO FACE

14   PROSECUTION UNDER THE ORDINANCE.

15         **THE COURT:**  HOW ABOUT THE AMMUNITION SALE PROVISION?

16   POINTS OUT THAT FROM THEIR PERSPECTIVE THAT REALLY GOES TO GUN

17   SHOP OWNERS AND THAT'S NOT WHO THESE PLAINTIFFS ARE.  HOW CAN

18   YOU BRING A CLAIM BASED ON THAT PARTICULAR PROVISION?

19         **MR. MONFORT:**  RIGHT.  IT'S INTERESTING, OBVIOUSLY,

20   PLAINTIFFS ARE NEVER GOING TO BE FACED WITH PROSECUTION FOR

21   ORDINANCE THAT CAN'T BE APPLIED TO THEM.

22             HOWEVER, THAT IS NOT TO SAY PLAINTIFFS DON'T SUFFER AN

23   INJURY AS A RESULT OF THE CITY'S ENFORCEMENT, ONGOING

24   ENFORCEMENT OF THE ORDINANCE.

25         **THE COURT:**  YOUR ARGUMENT IS BECAUSE THE ENFORCEMENT

1    OF THAT PROVISION WOULD RESULT IN YOUR CLIENTS NOT BEING ABLE

2    TO BUY THE AMMUNITION, THEREFORE, THEY HAVE STANDING EVEN

3    THOUGH, AS YOU SAY, THEY'RE NEVER GOING TO BE SUBJECT TO ANY

4    PROSECUTION.

5         **MR. MONFORT:** THAT'S CORRECT. SETTING ASIDE, OF

6    COURSE, ANY POTENTIAL CONSPIRACY, SOMETHING LIKE THAT, BUT THAT

7    WOULD DENY THEM ACCESS.

8         THE PRIMARY HARM WOULD BE, YES, DENYING THEM ACCESS TO

9    AMMUNITION, AND PLAINTIFFS PUT FORTH A LITTLE BIT OF A

10   HYPOTHETICAL FOR THE COURT'S REVIEW THAT KIND OF PUTS IT IN

11   PERSPECTIVE FOR -- THE CITY THEN COULD, EACH CITY, CITY OF SAN

12   FRANCISCO BAN THE SALE OF THIS KIND OF SELF-DEFENSE AMMUNITION.

13        NOT AMMUNITION FOR SPORTING GUNS, SELF-DEFENSE

14   AMMUNITION. SELF-DEFENSE BEING A COMPONENT OF THE INDIVIDUAL

15   RIGHT TO KEEP AND BEAR ARMS, OTHER THEN SAY INCREMENTALLY BAN

16   THE SALE OF IT, SUCH THAT PLAINTIFFS WOULD BE DEPRIVED ACCESS

17   TO THE AMMUNITION, AS LONG AS THEY WOULD HAVE 10 PERCENT OF THE

18   CITIES IN AMERICA TO GO TO, 5 PERCENT, I DON'T KNOW WHAT LINE

19   WOULD, PLAINTIFFS WOULD BE HARMED. THEY WOULD BE LEFT WITHOUT

20   A WAY TO VINDICATE OUR RIGHTS UNLESS AND UNTIL A RETAILER

21   DECIDED TO CHALLENGE THE ORDINANCE INSTEAD OF THEM.

22        **MS. KAISER:** MAY I COMMENT?

23        **THE COURT:** LET ME ASK ONE MORE QUESTION. WITH

24   RESPECT TO THE RINCON BAND MICHIGAN INDIANS CASE, I RECOGNIZE

25   YOU'RE TALKING ABOUT TIMING BEING OF CONSEQUENCE AND THAT THIS

1    GOES A BIT FAR BACK AND THE FIRST TO ACKNOWLEDGE THAT.

2            BUT THE SENSE OF THAT CASE IT SEEMS TO BE THAT THERE

3    IS A SUGGESTION THAT THERE'S GOING TO BE ENFORCEMENT OF

4    GAMBLING LAWS AND THE COURT'S SAYS THAT'S NOT ENOUGH.

5            THAT'S FAIRLY GENERAL CONCERN THAT THIS AREA IS GOING

6    TO BE AN AREA SUBJECT OF ENFORCEMENT, ISN'T THAT PRETTY MUCH

7    WHAT WE HAVE HERE?

8            I MEAN, PUTTING ASIDE ALL OF THE INTERVENING DECISIONS

9    SPECIFIC TO GUN ISSUES AND NOT SPECIFIC TO GUN ISSUES LIKE

10   MEDLMMUNE, IN A SENSE THAT CASE IS THE CLOSEST TO OUR

11   SITUATION, ISN'T IT?

12           **MR. MONFORT:**  I THINK, IT'S FACTUAL DISTINGUISHABLE IN

13   A SENSE THAT THE CITY HASN'T ALLEGED A GENERAL INTENT EVEN FOR

14   ENFORCEMENT FIREARM LAWS OR TO ENFORCE THE STATE FIREARM LAWS,

15   RATHER THIS CITY HAS SPECIFICALLY ENTERED PLAINTIFF'S HOME AND

16   MADE SURE HE WAS ENFORCING THE SPECIFIC LAW CHALLENGED IN THIS

17   LITIGATION.

18           SAME THING WITH RESPECT TO THE DISCHARGE BAN, THE ONLY

19   EXCEPTION BEING EXCEPT FOR NOT ENTERING THEIR HOME, BUT TELLING

20   THAT LAW WOULD BE ENFORCED AGAINST THEM IF DISCHARGED IN

21   SELF-DEFENSE AS OPPOSED TO ACCIDENTALLY, WITH THE EXCEPTION

22   BEING THE BAN ON SELF-DEFENSE AMMUNITION BECAUSE PLAINTIFFS

23   CAN'T BE PROSECUTED UNDER THAT THEMSELVES.

24           **THE COURT:**  OKAY.  MS. KAISER, YOU SAID YOU HAD

25   SOMETHING?

1          **MS. KAISER:** YES. I THINK, THAT PLAINTIFFS MAYBE

2    OVERSTATING THEIR ALLEGATIONS A LITTLE BIT.

3          IN TERMS OF THE AMMUNITION ALLEGATIONS, THERE'S NO

4    ALLEGATION ANYWHERE THAT ANY PLAINTIFF EVEN ATTEMPTED TO BUY

5    THE SORT OF AMMUNITION IN SAN FRANCISCO, THAT THEY COULDN'T BUY

6    IT.

7          AND IT'S CLEARLY THE CASE THAT THE ORDINANCE ITSELF

8    DOES NOT EFFECT OR OUTLAW THE USE OF SUCH AMMUNITION, THE

9    POSSESSION OF SUCH AMMUNITION.

10          THEY'RE CLAIMING THEY'RE BEING DEPRIVED OF THE RIGHT

11    TO POSSESS AND USE SUCH AMMUNITION, BUT THERE SIMPLY NO

12    ALLEGATION THAT SUPPORTS THAT.

13          AND IT NEEDS TO BE PARTICULAR TO THE PLAINTIFF.

14    STANDING DOCTRINE IS QUITE CLEAR THE GENERALIZED GRIEVANCES

15    THAT DON'T DISTINGUISH THE PLAINTIFF FROM ANY OTHER MEMBER OF

16    THE PUBLIC ARE INADEQUATE OR ELSE THE COURT WOULD ALREADY BE

17    DECIDING IDEOLOGICAL DISPUTES OR POLITICAL QUESTIONS.

18          THAT'S EXACTLY WANT YOU HAVE HERE WITH AMMUNITION,

19    ALLEGATION. I SUBMIT THAT'S ALSO THE CASE FOR THE REMAINING

20    ALLEGATIONS THAT PLAINTIFFS ARE DISCUSSING.

21          IN TERMS OF THE DA PRONOUNCEMENT ABOUT THE SAFE

22    STORAGE ORDINANCE, THAT WE CAN GO IN YOUR HOUSE ANY TIME AND

23    CHECK. THAT ACTUALLY THEIR OBJECTION SEEMS TO BE MORE TO THE

24    UNREASONABLE SEARCH AND SEIZURE NOTION WE CAN GO INTO YOUR

25    HOUSE ANYTIME.

1      YOU KNOW, THAT'S JUST A GENERALIZED WE CAN ENFORCE OUR

2  ORDINANCE NOT SPECIFIC IN ANY WAY TO THE PLAINTIFFS.

3      SECOND, THE EPISODE WITH PLAINTIFF GOLDEN.

4      **THE COURT:**  HAVEN'T THE PLAINTIFFS, THOUGHT, ON THE

5  STORAGE ISSUE, ALLEGED THAT THEY -- WHAT THEY INTEND TO DO,

6  WHAT THEY -- THEY'RE FREE TO OPERATE WITHOUT THE SPECTER OF THE

7  ORDINANCE, THEY WANT TO ACT IN A CERTAIN FASHION, AND AGAINST

8  THAT THEY HAVE SOME INDICATION FROM THE LOCAL AUTHORITIES THAT

9  THE LOCAL AUTHORITIES FEEL THAT THEY ARE EMPOWERED TO ENFORCE

10  THAT PROVISION.

11      I MEAN, IT'S A BIT MORE CONCRETE AND SPECIFIC THAN I

12  THINK YOU'RE SUGGESTING.

13      **MS. KAISER:**  I DON'T THINK IT'S MORE CONCRETE AND

14  SPECIFIC IN REGARD TO THE PARTICULAR PLAINTIFFS AND WHATEVER

15  CONDUCT IT IS THEY ALLEGED WHICH WE DON'T ACTUALLY KNOW ANY

16  CONCRETE WAY.

17      FOR EXAMPLE, WOULD IT BE THE CASE THAT THE PLAINTIFF

18  WOULD BE CARRYING THE WEAPON AS PERFECTLY ALLOWED, BUT HAS A

19  SHOWER, LOCKS THE -- PUTS THE GUN ON THE SINK, SOMEONE BREAKS

20  IN, THEY NEED TO SHOOT IN SELF-DEFENSE, THEY HAVE THEIR GUN

21  AVAILABLE, IS THAT PERSON GOING TO BE CHARGED?

22      BECAUSE, FIRST OF ALL, THEY'RE DOING, THEY ARE

23  ENGAGING IN CONDUCT PROTECTED BY HELLER.

24      SECOND OF ALL, THEY HAVE THEIR GUN IN A LOCKED

25  CONTAINER IN THE SENSE OF THE LOCKED ROOM WHERE NO ONE CAN COME

```
1    IN AND GET IT.

2              I DON'T KNOW, THE PROSECUTORS ARE FREE TO MAKE A

3    DECISION ABOUT THAT AND WE DON'T KNOW ENOUGH TO KNOW WHAT SORT

4    OF SITUATION IS REALLY BEFORE THE COURT.  REALLY IT MIGHT BE

5    UNCONSTITUTIONAL.

6              THE SAME THING IS TRUE OF A SLEEPING PLAINTIFF, FOR

7    EXAMPLE, WHILE YOU'RE SLEEPING AND YOU WALK THROUGH THE DOOR

8    MAKE SURE THAT THE GUN IS INACCESSIBLE, ARE YOU GOING TO BE

9    CHARGED UNDER THE SAFE STORAGE LAW IF YOU SHOOT YOUR GUN IN

10   SELF-DEFENSE?

11             I HAVE A HARD TIME BELIEVING THAT, BUT MAYBE WE DON'T

12   KNOW IS THE POINT, THAT'S WHY THERE'S NO STANDING, THAT'S WHY

13   THE CASE IS UNRIPE AND THAT'S WHY IT HAS TO BE PARTICULAR TO

14   THE PLAINTIFFS.

15             BECAUSE IT HAS TO BE A SCENARIO THAT'S KIND OF ENOUGH

16   FOR THE COURT TO MAKE INFORMED JUDGMENT.  PARTICULARLY IN A

17   DELICATE UNSETTLED AREA OF LAW LIKE THIS ONE WHERE THERE'S VERY

18   LITTLE PRECEDENT, THE LAW IS CHANGING QUICKLY.

19             YOUR HONOR WOULD BE MAKING DECISIONS THAT MAY ENCROACH

20   ON THE POLITICAL BRANCHES OF THE GOVERNMENT IF YOU ENGAGE IN

21   WHAT IS ESSENTIALLY AN ADVISORY OPINION HOW THESE THINGS SHOULD

22   BE APPLIED BEFORE THEY'RE ACTUALLY BEING APPLIED.

23             YOU MAY ALSO ENCROACH ON THE CONCEPT OF FEDERALISM IN

24   TERMS OF TAKING AWAY A POWER OF A LOCAL GOVERNMENT TO MAKE LAWS

25   UNDER THE CONSTITUTION.
```

1    **THE COURT:**  A LOT OF THOSE ARGUMENTS ARE MERGING INTO

2    ARGUMENTS THAT, PERHAPS, YOU WOULD ADVANCE TO SAY YOU CAN'T ON

3    THE SUBSTANTIVE MERITS OF THE MATTER WEIGH IN BECAUSE IT WILL

4    HAVE THESE AFFECTS.

5    I'M NOT SURE ALL OF THAT GOES DIRECTLY TO THE STANDING

6    QUESTION.  YOU'RE SAYING THERE'S A DANGER THAT BY EXAMPLE

7    YOU'RE GOING ENCROACH IN ANOTHER BRANCH IF YOU WEIGH INTO IT.

8    WELL, LEGITIMATE ISSUE, BUT PERHAPS NOT LEGITIMATE ISSUE FROM

9    THE STANDING PERSPECTIVE.

10   **MS. KAISER:**  ACTUALLY, YOUR HONOR, THIS IT IS A VERY

11   LEGITIMATE ISSUE FROM THE STANDING PERSPECTIVE.  THAT'S ONE OF

12   THE FUNCTIONS THAT THE STANDING DOCTRINE EXPLICITLY SERVES.

13   **THE COURT:**  AGAINST ADVISORY OPINIONS.

14   **MS. KAISER:**  AGAINST ADVISORY OPINIONS.  AGAINST

15   REACHING OUT AND SETTLING GENERALIZE GRIEVANCES THAT ANY MEMBER

16   OF THE PUBLIC CAN BRING.

17   HERE WE HAVE ANY MEMBER OF THE PUBLIC WHO SAYS I WANT

18   TO HAVE MY GUN IN A WAY IN MY HOUSE, I WOULD -- ANY ONE OF THEM

19   CAN COME AND SUE IF THESE PLAINTIFFS HAVE STANDING.

20   NO MATTER WHAT THE CITY HAS DONE OR NOT DONE, NO

21   MATTER HOW THE CITY HAS RESPONDED TO INTERVENING OR HOW THAT

22   HAS SHAPED IT, NO MATTER WHETHER THIS COURT HAS A FULL SET OF

23   FACTS ON WHICH TO BASE ITS DECISION.

24   THAT'S THE CONCERN BY AN ADVISORY OPINION AND IT IS A

25   CONSTITUTIONAL CONCERN FOR THAT REASON.  IT'S NOT JUST A

1    QUESTION OF SOUND JUDICIAL ADMINISTRATION, IT'S A

2    CONSTITUTIONAL QUESTION ABOUT THE PROPER AREA IN WHICH THE

3    JUDICIARY SHOULD FUNCTION.

4            **THE COURT:**  ANY FINAL COMMENTS?

5            **MR. MONFORT:**  SURE.  I WOULD JUST LIKE TO ADD, THAT

6    SUBSEQUENT TO SAN DIEGO GUN RIGHTS AND AUTHORITY RELIED BY THE

7    CITY, THE NINTH CIRCUIT AND THE SUPREME COURT HAVE BOTH HELD

8    THAT THE ISSUE IN TERMS OF PRE-ENFORCEMENT CHALLENGES, IN

9    ARIZONA RIGHT TO LIFE THE COURT CONFIRMED IT'S SUFFICIENT FOR

10   STANDING PURPOSE.

11           PLAINTIFFS INTEND TO ENGAGE IN THE ART OF EFFECTIVE

12   CONDUCT ARGUABLE INFECTED WITH CONSTITUTIONAL INTEREST AND

13   THERE'S A CREDIBLE THREAT AS OPPOSED TO IMPUGNING PROSECUTION.

14           PLAINTIFFS HERE ALLEGES SPECIFIC INTENT TO ENGAGE IN

15   THE PROHIBITED ACTIVITY AND ALSO ALLEGE CREDIBLE THREAT OF THE

16   LAW ENFORCED AGAINST THEM.

17           THE SAME CONCEPT WAS POINTED OUT AS YOU EARLIER

18   ALLUDED TO GENERALLY, THE GOVERNMENT EFFECTIVELY COALESCES

19   BEHAVIOR ELIMINATING ANY THREAT OF PROSECUTION PLAINTIFFS DO

20   NOT LOSE STANDING.

21           AND THAT IS EXACTLY THE CASE HERE.  PLAINTIFFS HAVE

22   HAD THEIR BEHAVIOR COERCED BY THE CITY'S ENACTMENT AND PROMISED

23   ENFORCEMENT OF THESE ORDINANCES.

24           AND THEN FINALLY WITH REGARD TO WHETHER OR NOT THE

25   CITY WILL ACTUALLY SEEK PROSECUTIONS OR ENFORCE THE ORDINANCES

1    AGAINST THE PLAINTIFFS IN THE MANNER FOR WHICH THEY ALLEGE THEY

2    WANT TO ENGAGE IN THE CONSTITUTIONAL CONDUCT, THE SUPREME COURT

3    IN 2010 OVER THE HUMANITARIAN LAW PROJECT FOUND STANDING WHERE

4    THERE WAS A CREDIBLE THREAT OF ENFORCEMENT.

5          AND THE COURT WENT ONTO NOTE PLAINTIFFS INTENDED TO

6    IMMEDIATELY ENGAGE IN PROHIBITED CONDUCT AS IS THE CASE HERE,

7    AND THE COURT ALSO NOTED THE GOVERNMENT NEVER ARGUED PLAINTIFFS

8    WILL NOT BE PROSECUTED IF THEY ENGAGE IN THAT ACTIVITY.

9          IT SOUND LIKE PLAINTIFFS' DEFENSE AT ISSUE WHAT TYPE

10   OF CONDUCT IS LAWFUL, WHAT WILL BE PROSECUTED, WHAT WILL NOT BE

11   PROSECUTED, AND THE CITY HAS GUARANTEED NOT BE PROSECUTED FOR

12   ENGAGING IN THE ALLEGED CONDUCT THEY WISH TO ENGAGE IN.

13         **THE COURT:** MS. KAISER'S POINT WAS JUST GOING TO THE

14   LAST THING YOU SAID.  THERE ARE NO BOUNDARIES AT THE MOMENT AS

15   TO WHEN THE AUTHORITY WOULD PROSECUTE OR WOULDN'T PROSECUTE.

16         WE DON'T HAVE ANY INDICATION AS SHE WAS DESCRIBING

17   SELF-DEFENSE CIRCUMSTANCE, WE JUST DON'T KNOW WHAT THE POSITION

18   WOULD BE OF THE LAW ENFORCEMENT AUTHORITY BECAUSE WE HAVE NO

19   TRACK RECORD FOR THAT YET.

20         **MR. MONFORT:** I UNDERSTAND.  IN THE MEANTIME

21   PLAINTIFFS ARE, HOWEVER, LEFT IN THE POSITION OF HAVING TO KIND

22   OF GUESS WHAT BEHAVIOR ISN'T CONSTITUTIONAL, AND ALL THEY HAVE

23   TO GO ON IS THEIR FIREARMS MUST BE STORED LOCKED UNLOADED OR

24   DISABLED WITH TRIGGER LOCK OR FACE PROSECUTION WITH THE

25   ORDINANCE.

1          THAT'S ALL THEY HAVE TO RELY ON.  SIMILARLY PLAINTIFFS

2    HAVE STANDING TO CHALLENGE VIRTUAL IDENTICAL ORDINANCE IN THE

3    DISTRICT OF COLUMBIA.

4          **THE COURT:**  I'M GOING TO TAKE THE MATTER UNDER

5    SUBMISSION.  INTERESTING ARGUMENT AND I WILL GIVE YOU AN ORDER.

6          **MR. MONFORT:**  THANK YOU.

7          **MS. KAISER:**  THANK YOU.

8

9              (PROCEEDINGS ADJOURNED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

      I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

      I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

      THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

      FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

      IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 21ST DAY OF NOVEMBER, 2011.


      /S/  JAMES YEOMANS

      _____

      JAMES YEOMANS, CSR, RPR