San Francisco Police Code

# SEC. 613.9.5.  FINDINGS.

1.     "Enhanced-lethality ammunition" means the ammunition that licensees may not sell, lease or otherwise transfer under Police Code Sec. 613.10(g).

2.     Enhanced-lethality ammunition is designed to tear larger wounds in the body by flattening and increasing in diameter on impact and/or exploding and dispersing shrapnel throughout the body. These design features increase the likelihood that the bullet will hit a major artery or organ, that it will take a more circuitous path through the body to create more widespread damage, and that it will release all of its propulsive force inside the body to cause maximum injury. Accordingly, enhanced-lethality ammunition is more likely to cause severe injury and death than is conventional ammunition that does not flatten or fragment upon impact.

3.     Enhanced-lethality ammunition has been used in shooting massacres both in San Francisco and abroad. On July 1, 1993, heavily armed gunman Gian Luigi Ferri shot and killed eight people, then himself, in the 101 California Street high-rise in San Francisco using hollow-point bullets. Most recently, on July 24, 2011, Anders Behring Breivik used lethality-enhanced bullets designed to fragment inside the body and cause maximum internal damage to kill and grievously wound dozens of children at a youth camp in Norway.

4.     Banning the sale of enhanced-lethality ammunition in San Francisco does not substantially burden the right of self defense. The right to use firearms in self defense can be fully exercised using conventional, non-collapsing, non-fragmenting ammunition. Enhanced-lethality ammunition is not in general use, and this unusually injurious ammunition has been banned outside the United States. For example, the Hague Convention of 1899, Declaration III, has for more than a century prohibited the use in warfare of bullets that easily expand or flatten in the body.

5.     Personal firearms kept in the home are more likely to be used against family and friends than intruders. Home firearms may also be used in suicide attempts, accidental shootings and criminal assaults.

6.     The City and County of San Francisco has a legitimate, important and compelling governmental interest in reducing the likelihood that shooting victims in San Francisco will die of their injuries by reducing the lethality of the ammunition sold and used in the City and County of San Francisco.

(Added by Ord. 206-11, File No. 110901, App. 10/11/2011, Eff. 11/10/2011)

**A - 1**

San Francisco Police Code

# SEC. 613.10. LICENSE-CONDITIONS.

In addition to all other requirements and conditions stated in this Article, each license shall be subject to all of the following conditions, the breach of any of which shall be sufficient cause for revocation of the license by the Chief of Police:

(a)     The business shall be carried on only in the building located at the street address shown on the license, except as otherwise authorized under Section 12071(b)(1) of the California Penal Code.

(b)     The licensee shall comply with Sections 12073, 12074, 12076, 12077 and 12082 of the California Penal Code, to the extent that the provisions remain in effect.

(c)     The licensee shall not deliver any pistol or revolver to a purchaser earlier than 10 days after the application for the purchase, lease or transfer, unless otherwise provided by State or federal law.

(d)     The licensee shall not deliver any firearm to a purchaser, lessee or other transferee unless the firearm is unloaded and securely wrapped or unloaded in a locked container.

(e)     The licensee shall not deliver any firearm, firearm ammunition, or firearm ammunition component to a purchaser, lessee or other transferee unless the purchaser, lessee or other transferee presents clear evidence of his or her identity and age to the seller. As used in this Section, "clear evidence of his or her identity and age" includes, but is not limited to, a motor vehicle operator's license, a State identification card, an armed forces identification card, an employment identification card which contains the bearer's signature and photograph, or any similar documentation which provides the seller reasonable assurance of the identity and age of the purchaser.

(f)     The licensee shall not display in any part of the premises where it can be readily seen from outside the premises, any firearm, firearm ammunition or imitation thereof, or placard advertising the sale or other transfer thereof, other than a sign identifying the name of the business.

(g)     The licensee shall not sell, lease or otherwise transfer to any person any ammunition that:

(1)     Serves no sporting purpose;

(2)     Is designed to expand upon impact and utilize the jacket, shot or materials embedded within the jacket or shot to project or disperse barbs or other objects that are intended to increase the damage to a human body or other target (including, but not limited to, Winchester Black Talon, Speer Gold Dot, Federal Hydra-Shok, Hornady XTP, Eldorado Starfire, Hollow Point Ammunition and Remington Golden Sabre ammunition; or

American Legal Publishing Corporation                                                    1

San Francisco Police Code

(3)    Is designed to fragment upon impact (including, but not limited to, Black Rhino bullets and Glaser Safety Slugs).

This subsection does not apply to conventional hollow-point ammunition with a solid lead core when the purchase is made for official law enforcement purposes and the purchaser is authorized to make such a purchase by the director of a public law enforcement agency such as the Chief of the San Francisco Police Department or the Sheriff of the City and County of San Francisco.

(h)    The licensee shall post within the licensee's premises a notice stating the following:

"THE CALIFORNIA PENAL CODE PROHIBITS THE SALE OF FIREARMS OR FIREARMS AMMUNITION TO PERSONS UNDER THE AGE OF 18, AND FURTHER GENERALLY PROHIBITS THE SALE OF A PISTOL, REVOLVER, OR FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON TO ANY PERSON UNDER THE AGE OF 21."

The posted notice shall be in a conspicuous location, shall be in 36 point type block letters in black ink on a white background, and shall be located so that the notice can easily and clearly be seen by all prospective purchasers of firearms and firearm ammunition.

(i)    The licensee shall not sell, lease or otherwise transfer any ultracompact firearm except as authorized by Section 613.10-2 or any 50 caliber firearm or 50 caliber cartridge except as authorized by Section 613.10-1.

(j)    Any license issued pursuant to this Article shall be subject to such additional conditions as the Chief of Police finds are reasonably related to the purpose of this Article.

(k)    The licensee shall comply with the requirements of Section 613.10-3 and shall, in addition, post the appropriate notice or notices, as specified below, in a conspicuous location at the entrance of the licensee's premises (or at the entrance to the separate room or, enclosure pursuant to Section 613.10-3(c)). Such notice shall be in 36 point type block letters in black ink on a white background.

(1)    Licensees that sell, lease or otherwise transfer firearms, other than firearms capable of being concealed on the person, shall post a notice at the entrance to the premises (or at the entrance to the separate room or enclosure pursuant to Section 613.10-3(c)) stating the following:

"THE SAN FRANCISCO POLICE CODE REQUIRES THAT FIREARMS DEALERS PROHIBIT ENTRY BY PERSONS UNDER AGE 18, AND FURTHER PROHIBITS ENTRY BY (1) PERSONS CONVICTED OF A VIOLENT OFFENSE WHO ARE PROHIBITED FROM POSSESSING FIREARMS PURSUANT TO CALIFORNIA PENAL CODE SECTIONS 12021 OR 12021.1; AND (2) PERSONS WHO ARE CURRENTLY PROHIBITED

San Francisco Police Code

FROM POSSESSING FIREARMS BECAUSE THEY HAVE BEEN ADJUDICATED AS
MENTALLY DISORDERED, NOT GUILTY BY REASON OF INSANITY OR
INCOMPETENT TO STAND TRIAL."

(2)     Licensees that sell, lease or otherwise transfer firearms capable of being concealed on the person shall post a notice at the entrance to the premises (or at the entrance to the separate room or enclosure containing such firearms pursuant to Section 613.10-3(c)) stating the following:

"THE SAN FRANCISCO POLICE CODE REQUIRES THAT FIREARMS DEALERS
PROHIBIT ENTRY BY PERSONS UNDER AGE 21, AND FURTHER PROHIBITS ENTRY
BY (1) PERSONS CONVICTED OF A VIOLENT OFFENSE WHO ARE PROHIBITED
FROM POSSESSING FIREARMS PURSUANT TO CALIFORNIA PENAL CODE
SECTIONS 12021 OR 12021.1; AND (2) PERSONS WHO ARE CURRENTLY PROHIBITED
FROM POSSESSING FIREARMS BECAUSE THEY HAVE BEEN ADJUDICATED AS
MENTALLY DISORDERED, NOT GUILTY BY REASON OF INSANITY OR
INCOMPETENT TO STAND TRIAL."

(3)     Licensees that sell, lease or otherwise transfer firearms capable of being concealed on the person, but who keep such firearms in a separate room or enclosure in accordance with Section 613.10-3(c) shall post the notice required by paragraph (1) at the entrance to the premises or separate room or enclosure containing firearms that are not capable of being concealed on the person, and shall post the notice required by paragraph (2) at the entrance to the separate room or enclosure containing firearms capable of being concealed on the person.

(l)     The licensee shall notify the Chief of Police of the name, age and address of, and submit a certificate of eligibility under Penal Code Section 12071 from the State Department of Justice for, any person not listed on the licensee's application under Section 613.2(a)(1) who will be given access to, or control of, workplace firearms, firearm ammunition, or firearm ammunition components. The licensee shall submit the required information and certificate within 10 days of such person being employed or otherwise being given access to, or control over workplace firearms, firearm ammunition, or firearm ammunition components.

(m)     Within the first five business days of April and October of each year, licensees shall cause a physical inventory to be taken that includes a listing of each firearm held by the licensee by make, model, and serial number, together with a listing of each firearm the licensee has sold since the last inventory period. In addition, the inventory shall include a listing of each firearm lost or stolen that is required to be reported pursuant to Penal Code Section 12071(b)(13). Licensees shall maintain a copy of the inventory on the premises for which the license was issued. Immediately upon completion of the inventory, licensees shall forward a copy of the inventory to the address specified by the Chief of Police, by such means as specified by the Chief of Police. With each copy of the inventory, licensees shall include an affidavit signed by the licensee (or, if the licensee is not a natural person, by an officer, general manager,

American Legal Publishing Corporation                    3

San Francisco Police Code

or other principal of the licensee) stating under penalty of perjury that within the first five business days of that April or October, as the case may be, the signer personally confirmed the presence of the firearms reported on the inventory.

(Added by Ord. 91-94, App. 2/25/94; amended by Ord. 290-95, App. 9/1/95; Ord. 225-96, App. 6/11/96; Ord. 283-96, App. 7/3/96, Eff. 1/1/97; Ord. 62-00, File No. 000197, App. 4/14/2000; Ord. 242-00, File No. 000950, App. 10/27/2000; Ord. 260-04, File No. 031932, App. 11/4/2004; Ord. 192-07, File No. 070684, App. 8/1/2007)

San Francisco Police Code

# SEC. 4502.  DISCHARGE OF FIREARMS AND FIRING OF PROJECTILE WEAPONS.

Subject to the exceptions in Section 4506, it shall be unlawful for any person to at any time fire or discharge, or cause to be fired or discharged, any firearm or any projectile weapon within the City and County of San Francisco.

(Added by Ord. 89-94, App. 2/25/94; amended by Ord. 50-11, App. 3/16/2011)

San Francisco Police Code

# SEC. 4506. FIREARMS AND PROJECTILE WEAPONS; EXCEPTIONS.

(a)     The provisions of Section 4502 shall not apply to or affect:

(1)     Sheriffs, constables, marshals, police officers, or other duly appointed peace officers in the performance of their official duties, or any person summoned by such officer to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer;

(2)     Persons in lawful possession of a handgun who discharge said handgun in necessary and lawful defense of self or others while in a personal residence; or

(3)     Persons in lawful possession of a firearm or projectile weapon who are expressly and specifically authorized by federal or state law to discharge said firearm or projectile weapon under the circumstances present at the time of discharge.

(b)     Use of firearms and projectile weapons may be permissible when integral to the pursuit of specific competitive and sporting events, including but not limited to events such as target and skeet shooting, upon issuance of a permit from the Chief of Police to persons conducting the event or engaged in the business of providing the location at which the event is to take place. The Chief of Police shall formulate criteria for the application, issuance, and renewal of such permits, and may require as a condition of approval the posting of any bond, or proof of adequate liability insurance.

(Added by Ord. 89-94, App. 2/25/94; amended by Ord. 50-11, App. 3/16/2011)

San Francisco Police Code

# SEC. 4511. FINDINGS.

1.　　Firearm injuries have a significant public health impact both nationally and locally.

a.　　In the United States, firearm injuries accounted for 6.6 percent of premature deaths from 1999-2007. Shootings are a leading cause of injury deaths in the nation, second only to motor vehicle crashes. On average, there were 30,125 firearm deaths in the United States annually between 2000 and 2007, inclusive. In 2007, 31,224 Americans died in firearm-related homicides, suicides, and unintentional shootings – the equivalent of 85 deaths each day and more than three deaths each hour.

b.　　Nationally, more than two thirds of homicides and over half of all suicides are committed with firearms.

c.　　Unintentional shootings killed over 5,700 people in the U.S. between 2000 and 2007. In 2009, over 18,000 people were treated for unintentional gunshot wounds in the United States.

d.　　The firearm-related homicide, suicide, and unintentional death rates for children 5-14 years old in the United States are significantly higher than those other industrialized nations.

e.　　Over the last five years, firearm injuries have ranked third of all causes of injury death in San Francisco, after pedestrian fatalities and falls, respectively. Almost two thirds of these firearm deaths were homicides. In addition, gunshot wounds were the third most common reason for injury-related hospitalizations in San Francisco from 2005 to 2008 and fourth in 2009. Firearm-related suicides accounted for 16.2 percent of the suicide deaths in San Francisco in Fiscal Year 2009-2010.

f.　　San Francisco General Hospital, as the only trauma center in San Francisco, treats approximately 98 percent of the city's shooting victims annually. Approximately 80 percent of the individuals treated for violent injuries at San Francisco General Hospital are uninsured.

2.　　Having a loaded or unlocked gun in the home is associated with an increased risk of gun-related injury and death.

a.　　A firearm stored loaded or unlocked increases the risk of an accidental shooting.

b.　　All U.S. case control studies (12 to date) have found that people who die by suicide are more likely to have lived in a home with a gun than similar people who did not die by suicide. Studies have also shown that the risk of suicide increases in homes where guns are kept loaded or unlocked.

San Francisco Police Code

      c.      A 2007 study compared the 40 million people who live in the states with the lowest firearm prevalence (Hawaii, Massachusetts, Rhode Island, New Hampshire, Connecticut, and New York) to about the same number living in the states with the highest firearm prevalence (Wyoming, South Dakota, Alaska, West Virginia, Montana, Arkansas, Mississippi, Iowa, North Dakota, Alabama, Kentucky, Wisconsin, Louisiana, Tennessee, and Utah). Although non-firearm suicides were about equal in the two groups, total suicides were almost twice as high in the high-gun states.

      d.      Keeping unsecured guns in the home increases the flow of illegal guns into the community. More than half a million firearms are stolen each year in the United States and many are subsequently sold illegally.

    3.      Children are particularly at risk of injury and death, or causing injury and death, when they can access guns in their own homes or homes that they visit.

      a.      The authors of a 2005 study found that an estimated 1.69 million children age 18 and under are living in households with loaded and unlocked firearms. Many young children, including children as young as three years old, are strong enough to fire handguns.

      b.      A significant majority of the guns used in youth suicide attempts and unintentional injuries were stored in the residence of the victim, a relative, or a friend. Of youths under who died by firearm suicide, the vast majority used a family member's gun, usually a parent's. And more than two thirds of school shooters obtained their gun(s) from their own home or that of a relative.

      c.      Quick access to loaded firearms heightens the risk that a young person's impulsive decision to commit suicide will be carried out without reflection or seeking help, and that the impulsive attempt will be fatal. One third of youths who died by suicide had faced a crisis within the previous 24 hours. Among people who nearly died in a suicide attempt, almost a quarter indicated that fewer than five minutes had passed between deciding on suicide and making the attempt. While fewer than 10 percent of suicide attempts by other means are fatal, at least 85 percent of firearm suicide attempts end in death.

    4.      Guns kept in the home are most often used in suicides and against family and friends rather than in self-defense.

      a.      Guns kept in a home are more likely to be involved in an unintentional shooting, criminal assault, or suicide attempt than to kill or injure in self-defense.

      b.      Only one in ten firearm homicides in the shooter's home is considered justifiable, meaning the shooter was not the assailant. Of every ten firearm homicide victims killed at the shooter's residence, six were intimate partners or family members of the shooter, three were friends or acquaintances of the shooter, and only one was a stranger to the shooter.

    5.      Applying trigger locks or using lock boxes when storing firearms in the home

American Legal Publishing Corporation       2

San Francisco Police Code

reduces the risk of firearm injury and death.

     a.     Keeping a firearm locked when it is not being carried ensures that it cannot be accessed and used by others without the owner's knowledge or permission. This simple measure significantly decreases the risk that the gun will be used to commit suicide, homicide, or inflict injury, whether intentionally or unintentionally.

     b.     Safe storage measures have a demonstrated protective effect in homes with children and teenagers where guns are stored.

6.     There is a wide consensus among medical professionals, police chiefs, gun control advocates and gun rights groups that applying trigger locks or using lock boxes to store unsupervised guns in the home promotes health and safety.

     a.     The International Association of Chiefs of Police recommends that state and local governments mandate safe storage of firearms.

     b.     The American Academy of Pediatrics recommends that if families must have firearms in their homes, the firearms should be stored locked, unloaded, and separate from locked ammunition.

     c.     Both gun control and gun rights advocates endorse the use of locking devices when storing guns to ensure that unauthorized or untrained persons cannot use the gun to inflict injury or death. For example, the National Rifle Association's Home Firearm Safety Handbook, developed and used as part of the National Rifle Association (NRA) Basic Firearm Training Program, emphasizes that "there is one general rule that must be applied under all conditions: Store guns so they are not accessible to untrained or unauthorized persons." The NRA Guide To The Basics Of Personal Protection In The Home further explains that "all storage methods designed to prevent unauthorized access utilize some sort locking method."

7.     Requiring unsupervised firearms stored to be secured with trigger locks or in a locked container does not substantially burden the right or ability to use firearms for self-defense in the home.

     a.     The locking requirements apply only to handguns that are not being carried. Gun owners and adults over 18 may carry loaded and unlocked handguns in the home at any time. The safe storage requirements also permit owners who wish to do so to store their handguns fully loaded.

     b.     Gun security does not preclude quick access. For example, affordable lockboxes using Simplex-type locks, which pop open immediately when several keys or pushbuttons are touched in a preset sequence, are widely available. Users report that they can retrieve a loaded weapon in just two to three seconds, and that the locks are also easy to open in the dark. The NRA describes this type lockbox as providing "a good combination of security and quick access." Some lockboxes also feature biometric locks, which provide immediate access when they scan the owner's fingerprint.

American Legal Publishing Corporation      3

San Francisco Police Code

      c.      Portable lockboxes can store loaded weapons such that they are always within easy reach on counters, tables or nightstands. Such safely stored weapons are more quickly and easily retrieved for use in self-defense than unlocked guns that have been hidden away in seldom-used locations.

(Added by Ord. 206-11, File No. 110901, App. 10/11/2011, Eff. 11/10/2011)

San Francisco Police Code

---

# SEC. 4512.  HANDGUNS LOCATED IN A RESIDENCE TO BE KEPT IN A LOCKED CONTAINER OR DISABLED WITH A TRIGGER LOCK.

(a)    **Prohibition.** No person shall keep a handgun within a residence owned or controlled by that person unless the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice.

(b)    **Definitions.**

(1)    "Residence." As used in this Section, "residence" is any structure intended or used for human habitation including but not limited to houses, condominiums, rooms, in law units, motels, hotels, SRO's, time-shares, recreational and other vehicles where human habitation occurs.

(2)    "Locked container." As used in this Section, "locked container" means a secure container which is fully enclosed and locked by a padlock, key lock, combination lock or similar locking device.

(3)    "Handgun." As used in this Section, "handgun" means any pistol, revolver, or other firearm that is capable of being concealed upon the person, designed to be used as a weapon, capable of expelling a projectile by the force of any explosion or other form of combustion, and has a barrel less than 16 inches in length.

(4)    "Trigger lock." As used in this Section, a "trigger lock" means a trigger lock that is listed in the California Department of Justice's list of approved firearms safety devices and that is identified as appropriate for that handgun by reference to either the manufacturer and model of the handgun or to the physical characteristics of the handgun that match those listed on the roster for use with the device under Penal Code Section 12088(d).

(c)    **Exceptions.** This Section shall not apply in the following circumstances:

(1)    The handgun is carried on the person of an individual over the age of 18.

(2)    The handgun is under the control of a person who is a peace officer under Penal Code Section 830.

(d)    **Lost or Stolen Handguns.** In order to encourage reports to law enforcement agencies of lost or stolen handguns pursuant to San Francisco Police Code Section 616, a person who files a report with a law enforcement agency notifying the agency that a handgun has been lost or stolen shall not be subject to prosecution for violation of Section 4512(a) above.

(e)    **Penalty.** Every violation of this Section shall constitute a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00 or by imprisonment in the county

San Francisco Police Code

jail not to exceed six months, or by both.

(f)     **Severability.** If any provision, clause or word of this chapter or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect any other provision, clause, word or application of this Section which can be given effect without the invalid provision, clause or word, and to this end the provisions of this Section are declared to be severable.

(Added by Ord. 193-07, File No. 070683, App. 8/1/2007)

THE

# CHARTER

OF

*council*

## THE CITY OF BOSTON,

AND

## ORDINANCES MADE AND ESTABLISHED

BY THE

MAYOR, ALDERMEN, AND COMMON COUNCIL,

WITH SUCH ACTS OF THE

## LEGISLATURE OF MASSACHUSETTS,

AS RELATE TO THE

Government of said City.

COMPILED AND ARRANGED IN PURSUANCE OF AN ORDER OF
THE CITY COUNCIL.

BOSTON:
TRUE AND GREENE,—CITY PRINTERS.
1827.

Digitized by Google

A - 14

# CHAP. XXIV.

## *Gunpowder.*

### ACTS OF THE LEGISLATURE.

An act in addition to the several acts already made for the prudent storage of Gun powder within the town of Boston.

WHEREAS the depositing of loaded arms in the houses of the town of Boston, is dangerous to the lives of those who are disposed to exert themselves when a fire happens to break out in said town. *Preamble*

SEC. 1. *Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same,* That if any person shall take into any dwelling house, stable, barn, out house, ware house, store, shop or other building within the town of Boston, any cannon, swivel, mortar, howitzer, cohorn, or fire arm, loaded with or having gunpowder in the same, or shall receive into any dwelling house, stable, barn, out house, store, ware house, shop, or other building within said town, any bomb, grenade, or other iron shell, charged with, or having gun powder in the same, such person shall forfeit and pay the sum of *ten pounds,* to be recovered at the suit of the Firewards of the said town, in an action of debt before any court proper to try the same; one moiety thereof, to the use of said Firewards, and the other moiety to the support of the poor of said town of Boston. *Taking loaded arms into houses prohibited.* *Penalty*

SEC. 2. *Be it further enacted,* That all cannons, swivels, mortars, howitzers, cohorns, fire arms, bombs, grenades and iron shells of any kind, that shall be found in any dwelling house, out house, stable, barn, store, ware house, shop or other building, charged with or having in them any gunpowder, shall be *Loaded arms in houses to be seized.*

18

Digitized by Google

138       GUNPOWDER.

liable to be seized by either of the Firewards of the said town; and upon complaint made by the said Fire-wards to the Court of Common Pleas, of such cannon, swivels, mortars, or howitzers, being so found, the Court shall proceed to try the merits of such complaint by a jury; and if the jury shall find such complaint supported, such cannon, swivel, mortar; or howitzer, shall be adjudged forfeit, and sold at public auction; and one half of the proceeds thereof shall be disposed of to the Firewards, and the other half to the use of the poor of the town of Boston. And when any fire arms, or any bomb, grenade or other shell, shall be found in any house, out-house, barn, stable, store, ware-house, shop or other building, so charged, or having gun powder in the same, the same shall be liable to be seized in manner aforesaid; and on complaint thereof, made and supported before a Justice of the Peace, shall be sold and disposed of, as is above provided for cannon.

*How disposed of in cases of for feiture.*

SEC. 3. *Be it further enacted,* That appeals shall be allowed in prosecutions upon this act, as is usual in other cases.

*Appeals allowed*

### [Passed March 1, 1783.]

[An act in addition to the several acts now in force, which respect the carting and transporting Gunpowder through the streets of the town of Boston, and the storage thereof in the same town.] (Repealed by the provisions of the act of 3d February, 1821, see post and 5 vol. special laws, 401.

An act to provide for the storing and safe keeping of Gunpowder in the town of Boston, and to prevent damage from the same. Passed June 19, 1801. Repealed by the provisions of the act of 3d February, 1821, see post (and 5 vol. special laws 401.

An act in addition to the several acts now in force, which respect the transporting, storing and safe keeping of Gunpowder in the town of Boston. Passed March 7th, 1804—and repealed by the provisions of the act of 3d February 1821, see post and 5 vol special laws, 401.

# LAWS

### OF THE

# STATE OF NEW-YORK,

#### PASSED AT THE

### FIRST MEETING OF THE SEVENTH SESSION OF THE LEGISLATURE OF SAID STATE.

---

## CHAP. 1.

AN ACT to lay a duty of tonnage on vessels for defraying the expence of the lighthouse at Sandy Hook.

PASSED the 12th of February, 1784.

I. *Be it enacted by the People of the State of New York represented in Senate and Assembly and it is hereby enacted by the authority of the same.* That a duty of four pence per ton shall be levied and collected on all vessels which shall arrive from sea into the port of New York excepting vessels the property of citizens of this State while actually employed on whaling or coasting voyages, and all vessels the entire property of citizens of any of the United States, which shall not exceed the burthen of sixty tons carpenters tonnage. *Duty levied.*

That for the orderly collection of the said duty it shall be lawful for the master and wardens of the port of New York, who are or shall be appointed by the council of appointment, to appoint a clerk to execute the duties enjoined upon him by this act. *Clerk to be appointed to collect same.*

That every master or commander of a vessel claiming an exemption from the said duty shall if required make oath before the said clerk or in his absence before any of the said wardens who are hereby respectively empowered to administer the same. That according to the best of his knowledge and belief such vessel is a whaling or a coasting vessel entitled to exemption from the said duty, according to the true intent and meaning of this act; and in case of refusal to take the said oath such master or commander shall be liable not only to the duty of tonnage the penalties in such cases to be imposed by this act. That every master of a vessel subject to the said duty who shall not within twenty-four *Masters claiming exemption to make oath. Penalty for failure to report to clerk on arrival.*

74

Digitized by Google

Case3:09-cv-02143-RS   Document128-1   Filed06/07/12   Page18 of 61

*And be it further enacted by the authority aforesaid* That whenever any <span style="float:right">Warrant to issue against witnesses refusing to appear.</span>
person shall refuse to appear and make affidavit in pursuance of such
summons, a warrant shall issue from such judge or magistrate to com-
pel his appearance, and if on his appearance he shall refuse to make
affidavit, or affirmation if a Quaker, of the fact which may be within
his knowledge touching the matters in question, he shall be committed
to the common gaol of the county, there to remain without bail or
mainprise for the term of six callender months.

# CHAP. 27.

AN ACT to repeal an act entitled An act to revive and amend
an act entitled an act more effectually to prevent robberies
within this State.

PASSED the 10th of April, 1784.

*Be it enacted by the People of the State of New York, represented in* <span style="float:right">Act named repealed.</span>
*Senate and Assembly, and it is hereby enacted by the authority of the same,*
That the act entitled "An act to revive and amend an act entitled an act
more effectually to prevent robberies within this State," passed the first
day of July, one thousand seven hundred and eighty, shall be, and the
same is hereby repealed.

# CHAP. 28.

AN ACT to prevent the danger arising from the pernicious prac-
tice of lodging gun powder in dwelling houses, stores, or other
places within certain parts of the city of New York, or on board
of vessels within the harbour thereof.

PASSED the 13th of April, 1784.

WHEREAS the storing of gun powder within the city of New York is <span style="float:right">Preamble.</span>
dangerous to the safety thereof.

*Be it therefore enacted by the People of the State of New York, repre-* <span style="float:right">Unlawful to keep gunpow-der in quantities exceeding twenty-eight pounds except in public magazine, etc.</span>
*sented in Senate and Assembly, and it is hereby enacted by the authority of*
*the same,* That from and after the passing of this act, it shall not be
lawfull for any merchant, shopkeeper, or retailer, or any other person, or
persons whatsoever, to have or keep any quantity of gun powder exceed-
ing twenty-eight pounds weight, in any one place, less than one mile to
the northward of the city hall of the said city, except in the public mag-
azine at the Fresh-water, and the said quantity of twenty-eight pounds
weight, which shall be lawfull for any person to have and keep at any
place within this city, shall be seperated into four stone jugs or tin can-
nisters, which shall not contain more than seven pounds each, on pain
of forfeiting all such gun powder, and the sum of fifty pounds for every
hundred weight, and in that proportion for a greater or lesser quantity, <span style="float:right">Penalty.</span>
and upon pain of forfeiting such quantity which any person may lawfully
keep as aforesaid, and which shall not be seperated as above directed,
with full costs of suit to any person, or persons, who will inform and
sue for the same, by any action, bill, or information, in any of the courts
of record, in this city, who are hereby impowered, and required, to
give special judgment in such action bills or informations, to be brought

Digitized by Google

by virtue of this act, as well for the recovery of the value of such gun powder in specie, as for the penalty aforesaid, besides costs, and to award, effectual execution thereon, provided always that all suits, actions, or prosecutions to be brought, commenced, or prosecuted, against any person or persons, for any thing done in pursuance of this act, shall be commenced and prosecuted without willful delay, within two callender months next after the fact was committed, and not otherwise.

*And whereas* vessels arriving from sea, and having onboard as part of their cargo a quantity of gun powder.

**Gunpowder on vessels to be landed before vessel hauls alongside of wharf, etc.**

*Be it enacted by the authority aforesaid,* That the commander, or owner or owners, of all such ships or vessels, having gun powder onboard, shall, within twenty-four hours after her arrival in the harbour, and before they hawl along side of any wharf, pier or key within the city, land the said gun powder, by means of their boat or boats, or any other craft, at any place along the ship yards on the East river, or at any place to the northward of the air furnace on the North river, which may be most contiguous to the magazine at Fresh water, and shall cause the same o be stored there, or in any other proper magazine, which now is or ereafter may be built for that purpose, at any place to the northward thereof, on pain of forfeiting all such gun powder, to any person or persons, who will inform and sue for the same, in like manner, as is herein before directed, with respect to the having and storing of gun powder within the city as aforesaid.  And in order to prevent any fatal

**How gunpowder to be transported through streets of city.**

consequences which may arise, from the carriage of gun powder, in and through the streets of the city of New York, by carts, carriages, or by hand, or otherways, it shall be in tight cask, well headed and hooped, and shall be put into bags or leather-cases, and intirely covered therewith, so as that none be spilt or scattered in the passage thereof, on pain of forfeiting all such gun powder, as shall be conveyed through any of the streets aforesaid in any other manner than is herein directed, and it shall and may be lawfull for any person or persons, to seize the same to his or their own use and benefit— provided the person or persons so offending, be thereof lawfully convicted, before the mayor, recorder, or any two justices of the city aforesaid.  And that it shall and may be

**Warrant to search in day time for gun powder unlawfully stored may be issued, etc.**

lawfull, for the mayor recorder, or any two justices of the peace of the city and county of New York, upon demand made by any inhabitant or inhabitants of the said city, who assigning a reasonable cause of suspicion on oath, of the sufficiency of which the said mayor or recorder, or justices, is and are to judge, to issue his or their warrant or warrants, under his or their hands and seals, for searching in the day time for gun powder in any building or place whatsoever, within the limits aforesaid, or any ship or vessel within forty eight hours after her arrival in the harbour, or at any time after any such ship or vessel shall and may have hawled alongside of any wharf pier or key within the limits aforesaid, and that upon any such search, it shall be lawfull for the searchers or persons finding the same, immidiatly to seize, and at any time within twelve hours after such seizure, to cause the same to be removed to the magazine at Fresh water, or to any other proper magazine, which now is or hereafter may be at any place north of Fresh water aforesaid, and the same being so removed, it shall be lawfull to detain and keep the same untill it shall be determined by the mayor, recorder or any two of the justices of the peace of the city and county aforesaid, whether the same shall be forfeited by virtue of this act, and the person or persons so detaining the same, shall not be subject or liable to any action or suit, for the detention thereof, provided always that nothing in the act con-

Digitized by Google

tained, shall be construed to authorize any person, having such warrant to take advantage of the same, for serving any civil process of any kind whatsoever.

*And be further enacted by the authority aforesaid,* That if any gun powder, exceeding the quantity which any person by this act may lawfully keep in his custody, shall be found during any fire, or alarm of fire, in the said city, by any of the firemen of the said city, it shall be lawfull for him to seize the same, without warrant from a majestrate, and to hold and have the same to his own use, any thing in this act to the contrary notwithstanding.   This act to be and continue in force from the passing thereof, untill the twenty-eight day of February in the year of our Lord one thousand, seven hundred and eighty six. *If found during any fire may be seized without warrant.*

## CHAP. 29.

AN ACT to lengthen the terms of the inferior courts of common pleas and general sessions of the peace, in the counties of Westchester, Queens and Richmond; and for other purposes therein mentioned.

PASSED the 13th of April, 1784.

WHEREAS the duration of the terms of the inferior courts of common pleas and general sessions of the peace, in the counties of Westchester, Queens and Richmond; which, in the county of Westchester, continue from the fourth Tuesday in May until the Friday following, and from the first Tuesday in November until the Friday following, in every year; in Queens county, from the third Tuesday in May until the Friday following, and from third Tuesday in September until the Friday following, in every year; and in Richmond county, from the first Tuesday in May until the Friday following, and from the last Tuesday in September until the Friday following, in every year, are found from experience, to be too short for the discharge of the necessary business in the said respective courts. *Preamble.*

*Be it therefore enacted by the People of the State of New York represented in Senate and Assembly, and it is hereby enacted by the authority of the same,* That the terms of the inferior courts of common pleas and general sessions of the peace in the county of Westchester, shall hereafter commence on the fourth Monday in May and first Monday in November, in every year, and shall continue until the several Saturdays next following, inclusive; that the terms of the inferior courts of common pleas and general sessions of the peace in Queens county, shall commence on the third Mondays in May and September, in every year, and shall continue until the several Saturdays next following, inclusive; and that the inferior courts of common pleas and general sessions of the peace in the county of Richmond, shall commence on the first Monday in May and last Monday in September, in every year, and shall continue until the several Saturdays next following, inclusive.   That all process issued out of the said respective courts, and made returnable on the usual return days, and all recognizances by which any person or persons shall be bound to appear on the said usual return days, shall be deemed good and valid on such days, although such days of return and appearance, are by this act, respectively altered. *Terms of the courts, when to commence and when to close.* *Process issued returnable on usual return days valid.*

Digitized by Google

# LAWS

### OF THE

## COMMONWEALTH

### OF

# PENNSYLVANIA,

*FROM THE FOURTEENTH DAY OF OCTOBER, ONE THOUSAND SEVEN HUNDRED, TO THE SIXTH DAY OF APRIL, ONE THOUSAND EIGHT HUNDRED AND TWO.*

———◆━━◆———

### REPUBLISHED,

UNDER THE AUTHORITY OF THE LEGISLATURE,

BY

## M. CAREY AND J. BIOREN.

════════

### VOL. II.

════════

## *PHILADELPHIA:*

PRINTED BY J. BIOREN NO: 88, CHESNUT-STREET, FOR MATHEW CAREY AND SELF.

1803.

[ 333 ]

## CHAPTER DCCCCLVII.

An ACT *for the relief of John Amiel, an insolvent debtor, con-
fined in the old gaol of the city and county of Philadelphia.*

Paſſed 13th April, 1782.—Private Act.—Recorded in Law Book
No. I. page 492.

## CHAPTER DCCCCLVIII.

An ACT *for erecting the town of Carlisle, in the county of
Cumberland, into a borough ; for regulating the buildings,
preventing nuisances and encroachments on the commons,
squares, streets, lanes and alleys of the same, and for other
purposes therein mentioned.*

SECT. I. WHEREAS the inhabitants of the town of Car-
liſle have repreſented, by their petition to the
Aſſembly, that the ſaid town has greatly improved, and is year-
ly encreaſing in buildings and number of inhabitants ; that a
good court-houſe and gaol, and three churches or houſes for
public worſhip are erected, and that the courts of juſtice for the
county are held there ; that encroachments and nuiſances have
been committed in the public ſquares, ſtreets, lanes, alleys and
commons of ſaid town ; that contentions happen relative to
partition walls and fences, and a variety of other matters, to the
great annoyance and inconvenience of the inhabitants.

SECT. II. And whereas it is neceſſary, as well for the bene-
fit of the inhabitants of the ſaid town, as thoſe who trade and
reſort there, and for the advantages of the public in general,
that the encroachments, nuiſances, contentions, annoyances
and inconveniences, in the ſaid town, and commons thereto,
belonging, ſhould for the future be prevented :

SECT. III. *Be it enacted, and it is hereby enacted by the Re-
preſentatives of the Freemen of the commonwealth of Pennſylva-
nia, in General Aſſembly met, and by the authority of the ſame,*
That the ſaid town of Carliſle and commons ſhall be, and the Incorporat-
fame is hereby, erected into a borough, which ſhall be called ing clauſe.
" The Borough of Carliſle," for ever ; the extent of which bo-
rough is and ſhall be compriſed within the following bounda-
ries, viz. beginning at a walnut corner tree of land, now of Boundaries.
Thomas Wilſon's heirs, being a poſt at the corner of the wi-
dow M'Donald's out-lots ; thence by the ſaid land of Thomas
Wilſon's heirs, adjoining the out-lots, ſouth twenty-four de-
grees and one quarter eaſt, two hundred and thirty-three per-
ches, to a poſt on Letort's Spring ; thence down the ſaid ſpring,
the different courſes thereof, fifty-nine perches, to a white oak,
at the corner of Jonathan Holme's land ; thence by the ſame
and adjoining out-lots, ſouth twenty-ſix degrees eaſt, one hun-
dred and twenty perches, to a poſt : thence by the ſame, ſouth
fixty-one

[ 349 ]

ſaid nuiſance, or cauſe the ſame to be removed; and on fai-
lure thereof by the ſpace of three days next after notice to him,
her or them, for that purpoſe given, by order of the Burgeſ-
ſes of the ſaid borough, or by the ſaid regulators, or any two
of them, then, and in that caſe, the regulators aforeſaid, or
any of them, ſhall and may remove the ſame, or cauſe the
ſame to be removed; and the coſts and expences attending
ſuch removal ſhall be paid by the party or parties ſo offending.

Sect. XL. *And be it further enacted by the authority afore-*   *Owners of*
*ſaid,* That the owner or owners of every houſe within the   *porches,*
ſaid borough, having, at the publication hereof, any porch,   *&c. exceed-*
cellar-door or ſtep, extending into any ſtreet beyond the limits   *ing the*
aforeſaid, or having fixed or faſtened to ſuch houſe any bulk,   *above limi-*
jut-window, or other incumbrance whatſoever, ſhall, yearly   *tation, to*
and every year, pay to the ſuperviſors of the ſaid ſtreets, lanes,   *be aſſeſſed,*
alleys and highways, to be applied towards repairing and amend-   *till reduced*
ing the ſame, ſuch ſum or ſums of money as the ſaid Burgeſſes   *or taken*
and Aſſiſtants ſhall aſſeſs, until ſuch porch, cellar-door or ſtep,   *away.*
to him, her or them, reſpectively belonging, ſhall be reduced
to the limits aforeſaid, or ſuch bulk, jut-window, or other in-
cumbrance, ſhall be removed and taken away; and every own-
er or owners of any houſe or houſes, whereunto any ſpouts or
gutters ſhall, at the time of the publication hereof, be ſo fixed
or placed, that the waters thereby diſcharged may incommode
perſons paſſing in the ſtreets, lanes or alleys, ſhall, and they are
hereby enjoined and required, forthwith to remove, or effec-
tually to alter or amend the ſame.

Sec. XLI. *And be it enacted by the authority aforeſaid,* That
if any perſon or perſons, after the publication of this act, ſhall   *Penalty on*
wilfully or maliciouſly remove, miſplace, or injure any pipes   *perſons re-*
or trunks already fixed or placed, or that may or ſhall be here-   *moving or*
after fixed or placed, by direction of the Burgeſſes and Aſſiſt-   *damaging*
ants of the ſaid borough, for conveying water to, from or   *the pipes*
through any part of the ſaid borough; or if any perſon or per-   *or trunks*
ſons ſhall wilfully and maliciouſly, without the conſent and di-   *for convey-*
rection of the Burgeſſes and Aſſiſtants aforeſaid, by any ways   *ing water,*
or means whatſoever, obſtruct or prevent the courſe of ſuch   *&c.*
waters in or through any ſuch trunks, pipes or conduits, as are
or ſhall, or may be placed as aforeſaid, or ſhall ſpoil or injure
any ciſtern which ſhall or may be placed for the reception of
ſuch water, every perſon ſo offending, and being thereof le-
gally convicted before the Burgeſſes of the ſaid borough, or
either of them, or before any Juſtice of the peace for the
county aforeſaid, ſhall forfeit and pay the ſum of five pounds
for every ſuch offence, and ſhall pay the coſts of repairing and
putting ſuch trunks, pipes, conduits or ciſterns in good order
and repair.

Sect. XLII. And whereas it hath been uſual for the mer-
chants and traders within the ſaid borough to keep large quan-
titities



[ 350 ]

1782.

tities of gun-powder in their dwelling houses and shops, to the manifest danger of the inhabitants : *Be it therefore enacted by the authority aforesaid,* That no person or persons whatsoever, within the limits of said borough, shall, from and after the publication of this act, keep in any house, shop, cellar, store or other place, within the said borough, any more or greater quantity than twenty-five pounds weight of gun-powder, which shall be kept in the highest story of the house, at any one time, unless it be at least fifty yards from any dwelling house, under the penalty of ten pounds.

No persons to keep more than 25lb. of gun powder in their houses, &c.

SECT. XLIII. And whereas several persons, without right or legal authority, have built on and fenced in many parts of the said commons, which by this act are included in and made part of the said borough, which commons ought to be not only beneficial and convenient for the inhabitants for an out-lot for their cattle in the mean time, but in time to come may be appropriated for the further extension and increase of the buildings in the said borough : *Be it therefore enacted by the authority aforesaid,* That all such buildings, fences, or other erections whatsoever, already made or erected, or which shall or may hereafter be so made or erected, by any person or persons whatsoever, on any part of the said commons, shall be deemed, held and taken for nuisances, and as such may be abated, prostrated, thrown down and removed ; and that it shall and may be lawful for the Burgesses, Assistants, regulators and supervisors aforesaid, for the time being, or the majority of them, with the consent and approbation of the Chief Burgesses, to abate, prostrate, throw down and remove all such buildings, fences and erections, as are now erected and built, or that hereafter may be erected and built on the same commons. And in case the said Burgesses, Assistants, regulators and supervisors, or the majority of them as aforesaid, with the consent and approbation of the Chief Burgess, shall be opposed in abating, prostrating, throwing down and removing the said buildings, fences or other erections, that then it shall and may be lawful for the said Burgesses, Assistants, regulators and supervisors, or the majority of them, as aforesaid, to call to their assistance all or any of the inhabitants of the said borough, who are hereby enjoined and required to be aiding and assisting to the Burgesses, Assistants, regulators and supervisors, or the majority of them, as aforesaid, in abating, prostrating, throwing down and removing all such buildings, fences and erections, by this act declared nuisances, as aforesaid.

Buildings, &c. erected on the commons, declared nuisances.

SECT. XLIV. *And be it further enacted by the authority aforesaid,* That if any person or persons shall, at any time after the publication of this act, presume to erect or build any buildings, fences, or other erection whatsoever, on the said commons, that then the said buildings, fences or other erections, shall be abated, prostrated, thrown down and removed as aforesaid ;

Penalty on persons erecting buildings, &c. on the commons,

Digitized by Google

JAN - 6 2010

No. 08-1521

IN THE

## Supreme Court of the United States

OTIS MCDONALD, ET AL.,

*Petitioners,*

v.

CITY OF CHICAGO, ET AL.,

*Respondents.*

**On Writ of Certiorari to the United States Court
of Appeals for the Seventh Circuit**

**BRIEF OF THIRTY-FOUR PROFESSIONAL
HISTORIANS AND LEGAL HISTORIANS AS
*AMICI CURIAE* IN SUPPORT OF
RESPONDENTS**

MATTHEW M. SHORS
  *(Counsel of Record)*
JUSTIN FLORENCE
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
(202) 383-5300

*Attorneys for Amici Curiae*

1a

## SELECTED STATE STATUTES

### Alabama

1837

AN ACT To suppress the use of Bowie Knives.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That if any person carrying any knife or weapon, known as Bowie Knives or Arkansas Tooth-picks, or either or any knife or weapon that shall in form, shape or size, resemble a Bowie-Knife or Arkansaw [sic] Tooth-pick, on a sudden rencounter, shall cut or stab another with such knife, by reason of which he dies, it shall be adjudged murder, and the offender shall suffer the same as if the killing had been by malice and aforethought.

Section 2. *And be it further enacted*, That for every such weapon, sold or given, or otherwise disposed of in this State, the person selling, giving or disposing of the same, shall pay a tax of one hundred dollars, to be paid into the county Treasury; and if any person so selling, giving or disposing of such weapon, shall fail to give in the same to his list of taxable property, he shall be subject to the pains and penalties of perjury.

Approved June 30, 1837.

2a

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 146 (1999).)

1839

AN ACT

To suppress the evil practice of carrying weapons secretly.

Sec. 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That if any person shall carry concealed about his person any species of fire arms, or any bowie knife, Arkansaw [sic] tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon, the person so offending, shall on conviction thereof, before any court having competent jurisdiction, pay a fine not less than fifty nor more than five hundred dollars, to be assessed by the jury trying the case; and be imprisoned for a term not exceeding three months, at the discretion of the Judge of said court.

Approved Feb. 1, 1839.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 151-52 (1999).)

3a

**Arkansas**

1838

Every person who shall wear any pistol, dirk, butcher or large knife, or a sword in a cane, concealed as a weapon, unless upon a journey, shall be adjudged guilty of a misdemeanor, and upon conviction thereof, in the county in which the said offence shall have been committed, shall be fined in any sum not less than twentyfive dollars, nor more than one hundred dollars, one half to be paid into the county treasury, the other half to the informer, and shall also be imprisoned not less than one, nor more than six months.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 150 (1999).)

1881

Ark. Act of Apr. 1, 1881, as codified in Ark. Stat., chap. 45 (1884).

Section 1907. Any person who shall wear or carry in any manner whatever as a weapon any dirk or bowie knife, or a sword, or a spear in a cane, brass or metal knucks, razor, or any pistol of any kind whatever, except such pistols as are used in the army or navy of the United States, shall be guilty of a misdemeanor. *Provided*, that officers whose duties require them to make arrests, or to keep and guard prisoners, together with persons summoned by such officers to aid them in the discharge of such duties,

4a

while actually engaged in such duties, are exempted from the provisions of this act. *Provided, further*, that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his own premises.

Section 1908.  Any person, excepting such officers or persons on a journey and on their premises as are mentioned in section 1907, who shall wear or carry any such pistol as is used in the army or navy of the United States, in any manner except uncovered and in   his hand, shall be deemed guilty of a misdemeanor.

Section 1909.  Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to any  person, any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor.

Section 1910.  Any person convicted of a violation of any of the provisions of this act shall be punished by a fine of not less than fifty nor more than two hundred dollars.

5a

## Colorado

1881 Colo. Rev. Stat. pt. 229 § 149, as codified in Colo. Stat. Ann., chap. 35 (1911).

Section 1830.  Carrying concealed weapons—Second offense—Search without warrant—Confiscation.

SEC 223.  No person, unless authorized to do so by the chief of police of a city, mayor of a town or the sheriff of a county, shall use or carry concealed upon his person any fire arms, as defined by law, nor any pistol, revolver, bowie knife, dagger, sling shot, brass knuckles or other deadly weapon.  Any person who violates the foregoing provisions shall be guilty of a misdemeanor and, upon conviction, shall be punished by imprisonment in jail for a period of not exceeding one year or by a fine of not more than five hundred ($500.00) dollars, or by both such fine and imprisonment.  Any person who has been once convicted hereunder shall for a second offense be guilty of a felony and, upon conviction shall be punished by a fine of not more than one thousand ($1,000.00) dollars or by imprisonment in the penitentiary for not exceeding two (2) years, or by both such fine and imprisonment.

6a

## Florida

Fla. Act of Feb. 12, 1885, Chap. 3620, § 1, as codified in Fla. Rev. Stat., tit. 2, pt. 5 (1892).

2421.   Carrying concealed weapons. — Whoever shall secretly carry arms of any kind on or about his person, or whoever shall have concealed on or about his person any dirk, pistol or other weapon, except a common pocket knife, shall be punished by imprisonment not exceeding six months, or by fine not exceeding one hundred dollars.

Fla. Act of Aug. 6, 1888, Chap. 1637, subchap. 7, § 10, as codified in Fla. Rev. Stat. , tit. 2, pt. 5 (1892).

2423. Persons engaged in criminal offence having weapons. — Whoever, when lawfully arrested while committing a criminal offence or a breach or disturbance of the public peace, is armed or has on his person slung-shot, metallic knuckles, billies, firearms or other dangerous weapon, shall be punished by imprisonment not exceeding one year and by fine not exceeding fifty dollars.

Fla. Act of Feb. 12, 1885, Chap. 3620, § 3, as codified in Fla. Rev. Stat., tit. 2, pt. 5 (1892).

2424. Officer to take possession of arms. — The officer making any arrest under the preceding sections shall take possession of any arms or weapons found upon the person arrested, and shall retain the same until after the trial of such person, and if he be convicted, said arms or weapons shall be forfeited and the sheriff shall sell the same a t public

7a

sale and account for and pay over the proceeds thereof, as in the case of fines collected, but if such person be acquitted, the said arms or weapons shall be returned to him.

Fla. Act of Aug. 8, 1868, as codified in Fla. Rev. Stat., tit. 2, pt. 5 (1892).

2425.   Manufacturing or selling slung-shot. — Whoever manufactures, or causes to be manufactured, or sells or exposes for sale any instrument or weapon of the kind usually known as slung-shot, or metallic knuckles, shall be punished by imprisonment not exceeding six months, or by fine not exceeding one hundred dollars.

8a

## Georgia

1837

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Georgia, in General Assembly met, and it is hereby enacted by the authority of same.* That, from and after the passage of this act, it shall not be lawful for any merchant, or vender of wares or merchandize in this State, or any other person or persons whatsoever, to sell, or offer to sell, or to keep, or have about their person or elsewhere, any of the hereinafter described weapons, to wit: Bowie, or any other kind of knives, manufactured and sold for the purpose of wearing, or carrying the same as arms of offence or defence, pistols, dirks, sword canes, spears, & c., shall also be contemplated in this act, save such pistols as are known and used, as horseman's pistols, &c.

Section 2. *And be if further enacted by the authority aforesaid,* That any person or persons with in the limits of this State, violating the provisions of this act, except as hereafter excepted, shall for each and every such offence, be deemed guilty of a high misdemeanor, and upon trial and conviction thereof, shall be fined, in a sum not exceeding five hundred dollars for the first offence, nor less than one hundred dollars at the direction of the Court; and upon a second conviction, and every after conviction of a like offence, in a sum not to exceed one thousand dollars, nor less than five hundred dollars, at the discretion of the Court.

9a

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 146-48 (1999).)

10a

**Illinois**

Ill. Act of Apr. 16, 1881, as codified in Ill. Stat. Ann., Crim. Code, ch. 38 (1885).

88. Possession or sale forbidden – Penalty.
§ 1.    Be it enacted by the People of the State of Illinois represented in the General Assembly.  That whoever shall have in his possession, or sell, give or loan, hire or barter, or  whoever shall offer to sell, give, loan, have or barter, to any person within this State, any slung shot or metallic knuckles, or other deadline weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than ten dollars ($10), nor more than two hundred dollars ($200).

91. Concealed weapon - Flourishing weapon.
§ 4.    Whoever shall carry a concealed weapon upon or about his person of the character in this Act specified, or razor as a weapon, or whoever, in a threatening or boisterous manner, shall display or flourish any deadly weapon, shall be guilty of a misdemeanor and shall be fined, in any sum not less than twenty-five dollars ($25) nor more than two hundred dollars ($200).

11a

## Indiana

1820

*AN ACT to prohibit the wearing of concealed weapons.*

Approved, January 14, 1820

Sec. 1. *BE it enacted by the General Assembly of the State of Indiana*, That any person wearing any dirk, pistol, sword in cane, or any other unlawful weapon, concealed, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in any sum not exceeding one hundred dollars, for the use of county seminaries: *Provided, however*, that this act shall not be so construed as to affect travellers.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 145 (1999).)

1831

Sec. 58.    That every person, not being a traveller, who shall wear or carry a dirk, pistol, sword in a cane, or other dangerous weapon concealed, shall upon conviction thereof, be fined in any sum not exceeding one hundred dollars.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 145-46 (1999).)

12a

## Kentucky

1813

AN ACT to prevent persons in this Commonwealth from wearing concealed Arms, except in certain cases.

Sec. 1. *Be it enacted by the General Assembly of the commonwealth of Kentucky*, That any person in his commonwealth, who shall hereafter wear a pocket pistol, dirk, large knife, or sword in a cane, concealed as a weapon, unless when travelling on a journey, shall be fined in any sum, not less than one hundred dollars; which may be recovered in any court having jurisdiction of like sums, by action of debt, or on the presentment of a grand jury — and a prosecutor in such presentment shall not be necessary. One half of such fine shall be to the use of the informer, and the other to the use of the commonwealth.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 143-44 (1999).)

1880

1880 Ky. Gen. Stat. ch. 29, §§ 1, 5

§ 1. If any person shall carry concealed a deadly weapon upon or about his person other than an ordinary pocket knife, or shall sell a deadly weapon to a minor other than an ordinary pocket knife, such person shall, upon indictment and conviction, be fined not less than twenty five nor more than one

13a

hundred dollars and imprisoned in the county jail for not less than ten nor more than thirty days in the discretion of the court or jury trying the case.

§ 5.   Carrying concealed deadly weapons shall be lawful in the following cases:  1st. When the person has reasonable grounds to believe his person or the person of some of his family,  or his property is in immediate danger from violence or crime; 2nd. By sheriffs, constables, marshals, policemen, and other ministerial officers, when necessary for their protection in the discharge of their official duties.

14a

**Louisiana**

1813

Sec. 1. *Be it enacted by the senate and the house of representatives of the State of Louisiana in general assembly convened,* That from and after the passage of this act, any person who shall be found with any concealed weapon, such as a dirk, dagger, knife, pistol or other deadly weapon, concealed in his bosom, coat or in any other place about him that do not appear in full open view, any person so offending, shall on conviction thereof before any justice of the peace, be subject to pay a fine not to exceed fifty dollars nor less than twenty dollars, one half to the use of the state, and the balance to the informer, and should any person be convicted of being guilty of a second offence before any court of competent jurisdiction, shall pay a fine of not less than one hundred dollars to be applied as aforesaid, and be imprisoned for a time not exceeding six months.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 144-45 (1999).)

15a

## Massachusetts

1850 Mass. Gen. Lawa, ch. 194, §§ 1, 2, as codified in Mass. Gen. Stat., chap. 164 (1873).

SECT. 10.    Whoever when arrested upon a warrant of a magistrate issued against him for an alleged offence against the laws of this state, and whoever when arrested by a sheriff, deputy-sheriff, constable, police officer, or watchman, while committing a criminal offence against the laws of this state, or a breach or disturbance of the public peace, is armed with, or has on his person, slung shot, metallic knuckles, billies, or other dangerous weapon, shall be punished by fine not exceeding fifty dollars, or by imprisonment in the jail not exceeding one year.

SECT. 11.    Whoever manufactures, or causes to be manufactured, or sells, or exposes for sale, any instrument or weapon of the kind usually known as slung shot, or metallic knuckles, shall be punished by fine not less than fifty dollars, or by imprisonment in the jail not exceeding six months.

16a

## Nebraska

1893 Neb. Con. Stat. § 5604

Whoever shall carry a weapon or weapons concealed on or about his person, such as a pistol, bowie-knife, dirk, or other dangerous weapon, on conviction of the first offense shall be fined not exceeding one hundred dollars, or imprisoned in the county jail not more than thirty days, and for the second offense not exceeding one hundred dollars or imprisoned in the county jail not more than three months, or both, at the discretion of the court; *Provided, however*, If it shall be proved from the testimony on the trial of any such case that the accused was, at the time of carrying any weapon or weapons as aforesaid, engaged in the pursuit of any lawful business, calling or employment and the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid, for the defense of his person, property, or family, the accused shall be acquitted.

17a

## North Carolina

1879 N.C. Sess. Laws ch. 127, as codified in North Carolina Code, Crim. Code, ch. 25 (1883)

Sec. 1005.   Concealed weapons, the carrying of unlawfully, a misdemeanor.

If any one, except when on his own premises, shall carry concealed about his person any pistol, bowie knife, dirk, dagger, slungshot, loaded cane, brass, iron or metallic knuckles or razor or other deadly weapon of like kind, he shall be guilty of a misdemeanor, and fined or imprisoned at the discretion of the court. And if any one, not being on his own lands, shall have about his person any such deadly weapon, such possession shall be *prima facie* evidence of the concealment thereof. This section shall not apply to the following persons: officers and soldiers of the United States army, civil officers of the United States while in the discharge of their official duties, officers and soldiers of the militia and the state guard when called into actual service, officers of the state, or of any county, city or town, charged with the execution of the laws of the state, when acting in the discharge of their official duties.

18a

## North Dakota

N.D. Penal Code §§ 456, 457, as codified in N.D. Rev.
Code (1895).

§ 7312.     Carrying or using slung shot.  Every
person who carries upon his person, whether
concealed or not, or uses or attempts to use against
another, any instrument or weapon of the kind
usually known as slung shot, or of any similar kind,
is guilty of a felony.

§ 7313.     Carrying concealed weapons.  Every
person who carries concealed about his person any
description of firearms, being loaded or partly
loaded, or any sharp or dangerous weapon, such as is
usually employed in attack or defense of the person,
is guilty of a misdemeanor.

19a

## Ohio

Act of Mar. 18, 1859, 1859 Ohio Laws 56.

If it shall be proved to the jury, from the testimony on the trial of any case presented under the [section of this act banning the carrying of concealed weapons], that the accused was, at the time of carrying any of the weapon or weapons aforesaid, engaged in the pursuit of any lawful business, calling, or employment, and that the circumstances in which he was placed at the time aforesaid were such as to justify a prudent man in carrying the weapon or weapons aforesaid for the defense of his person, property or family, the jury shall acquit the accused.

(Reprinted from Saul Cornell & Nathan DeNino, *A Well Regulated Right: Early American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004).)

20a

## Oregon

An Act to Prevent Persons from Carrying Concealed Weapons, Feb. 18, 1885, as codified in Ore. Code, ch. 8 (1892).

§ 1969.     It shall be unlawful for any person to carry concealed about his person in any manner whatever any revolver, pistol, or other fire-arm, or any knife (other than an ordinary pocket-knife), or any dirk or dagger, slung-shot or metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person.

§ 1970.     Any person violating any of the provisions of section 1969 shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than ten dollars nor more than two hundred dollars, or by imprisonment in the county jail not less than five days nor more than one hundred days, or by both fine and imprisonment, in the discretion of the court. Nothing in this act shall be construed to apply to any sheriff, constable, police, or other peace officer, whose duty it is to serve process or make arrests. Justices of the peace shall have concurrent jurisdiction to try any person or persons charged with violating any of the provisions of this act.

21a

## South Carolina

1880 S.C. Acts 448, §§ 1, 4, as codified in S.C. Rev. Stat. (1894).

Sec. 129. (2472.) Any person carrying a pistol, dirk, dagger, slungshot, metal knuckles, razor, or other deadly weapon usually used for the infliction of personal injury, concealed about his person shall be guilty of a misdemeanor, and upon conviction thereof before a Court of competent jurisdiction shall forfeit to the County the weapon so carried concealed, and be fined in a sum not more than two hundred dollars or imprisoned not more than twelve months, or both, in the discretion of the Court. Nothing herein contained shall be construed to apply to peace officers while in the actual discharge of their duties as such officers, or to persons carrying concealed weapons while upon their own premises.

## South Dakota

S.D. Terr. Pen. Code §§ 455-57, as codified in S.D. Rev. Code, Penal Code (1903).

§ 469.  Every person who manufactures or cause to be manufactured, or sells or offers or keeps for sale, or gives or disposes of any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a misdemeanor.

§ 470.  Every person who carries upon his person, whether concealed or not, or uses or attempts to use against another, any instrument or weapon of the kind usually known as slung shot, or of any similar kind, is guilty of a felony.

§ 471.  Every person who carries concealed about his person any description of firearms, being loaded or partly loaded, or any sharp or dangerous weapon, such as is usually employed in attack or defense of the person, is guilty of a misdemeanor.

23a

**Tennessee**

1838

An Act to suppress the sale and use of Bowie Knives and Arkansas Tooth Picks in this State.

Section 1. *Be it enacted by the General Assembly of the State of Tennessee*, That if any merchant, pedlar, jeweler, confectioner, grocery keeper, or other person or persons whatsoever, shall sell, or offer to sell, or shall bring into this State, for the purpose of selling, giving or disposing of in any other manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or any Arkansas tooth pick, such merchant, pedlar, jeweler, confectioner, grocery keeper, or other person or persons for every such Bowie knife or knives, or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick so sold, given or otherwise disposed of, shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less that one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a person not less than one month nor more than six months.

Section 2.  That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas toothpick under this clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon

24a

conviction thereof shall be fined in a sum not less than two hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail not less than three months and not more than six months.

Sec. 3. That if any person shall maliciously draw or attempt to draw any Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape, or size resemble a Bowie knife or Arkansas tooth pick, from under his clothes or from any place of concealment about his person, for the purpose of sticking, cutting, awing, or intimidating any other person, such person so drawing or attempting to draw, shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State for a period of time not less than three years, nor more than five years.

Sec. 4. That if any person carrying any knife or weapon known as a Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife, on a sudden rencounter, shall cut or stab another person with such knife or weapon, whether death ensues or not, such person so stabbing or cutting shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State, for a period of time not less than three years, nor more than fifteen years.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 148-49 (1999).)

25a

1879

1879 Tenn. Pub. Acts ch. 96, as codified in Tenn. Code (1884).

5522. Any person who carries under his clothes, or concealed about his person, a bowie-knife; Arkansas tooth-pick, or other knife or weapon of like form, shape, or size, is guilty of a misdemeanor, and, upon such conviction, shall be fined not less than two hundred dollars nor more than five hundred, and shall be imprisoned in the county jail not less than three nor more than six months.

5523. It is misdemeanor to sell, or offer to sell, or into this State for the purpose of selling, giving away, or otherwise disposing of any knife or weapon mentioned in the preceding section; and the person guilty thereof, for each knife shall, upon conviction be fined not less than one hundred nor more than five hundred dollars, and be imprisoned in the county jail not less than one month nor more than six months.

1879 Tenn. Pub. Acts ch. 186, as codified in Tenn. Code (1884).

5533. It shall not be lawful for any person to carry, publicly or privately, any dirk, razor concealed about his person, sword cane, loaded cane, slung-shot or brass knucks, Spanish stiletto, belt or pocket pistol, revolver, or any kind of pistol, except the army or navy pistol, usually used in warfare, which shall be carried openly in the hand.

5534. Any person guilty of such offense shall be subject to presentment or indictment, and on conviction shall be fined fifty dollars and imprisoned in the county jail of the county where the offense was committed, the imprisonment only in the discretion of the court; *Provided*, the defendant shall give good and sufficient security for all the costs, fine, and any jail fees that may accrue by virtue of his imprisonment.

27a

## Texas

Tex. Act of Apr. 12, 1871, as codified in Tex. Penal Code (1879).

Art. 163.    If any person, other than a peace officer, shall carry any gun, pistol, bowie knife, or other dangerous weapon, concealed or unconcealed, on any day of election, during the hours the polls are open, within the distance of one-half mile of any poll or voting place, he shall be punished as prescribed in article 161 of this Code.

Art. 316.    If any person shall discharge and gun, pistol or fire-arm of any description, on or across any public square, street or alley in any city, town or village in this state, he shall be fined in a sum not exceeding one hundred dollars.

Art. 318.    If any person in this state shall carry on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie knife, or any other kind of knife manufactured or sold, for purposes of offense or defense, he shall be punished by fine of not less than twenty-five nor more than one hundred dollars; and, in addition thereto, shall forfeit to the county in which he is convicted, the weapon or weapons so carried.

Art. 319.    The preceding article shall not apply to a person in actual service as a militiaman, nor to a peace officer or policemen, or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying

28a

of arms on one's own premises or place of business nor to person traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attacked, upon legal process.

Art. 320.   If any person shall go into any church or religious assembly, any school room, or other place where persons are assembled for sacrament or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball-room social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, or to any other public assembly, and shall have or carry about his person a pistol or other fire-arm, dirk, dagger, slung-short, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of a knife manufactured and sold for the purpose of offense and defense, he shall be punished by fine not less than fifty nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person.

29a

## Virginia

### 1838

An ACT to prevent the carrying of concealed weapons.

*Be it enacted by the general assembly.* That if any person shall hereafter habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind, from the use of which the death of any person might probably ensue, and the same be hidden or concealed from common observation, and he be thereof convicted, he shall for every such offence forfeit and pay the sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the common jail for a term not less than one month or more than six months, and for each instance at the discretion of the jury; and a moiety of the penalty recovered in any prosecution under this act, shall be given to any person who may voluntarily institute the same.

(Reprinted from Clayton E. Cramer, *Concealed Weapon Laws of the Early Republic: Dueling, Southern Violence, and Moral Reform* 150-51 (1999).)

### 1869

1869-70 Va. Acts, ch. 349, pt. 510, as codified in Virginia Code, tit. 54 (1873).

7. If a person habitually carry about his person, hid from common observation, any pistol, dirk, bowie knife, or any weapon of the like kind, he shall be fined fifty dollars, and imprisoned for not more than

A - 54

30a

twelve months in the county or corporation jail. The informer shall have half of such fine.

1856-57 Va. Acts, ch. 140, pt. 554, as codified in Virginia Code, tit. 54 (1873).

8.  If a person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal.

31a

## Washington

Wash. Code § 929 (1881).

If any person carry upon his person any concealed weapon, he shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not more than one hundred dollars, or imprisoned in the county jail not more than thirty days: *Provided*, That this section shall not apply to police officers and other persons whose duty it is to execute process or warrants, or make arrests.

32a

## West Virginia

W. Va. Code ch. 148, § 7 (1870)

If any person, habitually, carry about his person, hid from common observation, any pistol, dirk, bowie knife, or weapon of the like kind, he shall be fined fifty dollars. The informer shall have one half of such fine.

W. Va. Code ch. 153, § 8 (1870)

If any person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal.

33a

## Wyoming

1876 Wyo. Comp. Laws ch. 52 § 1, as codified in Wyo. Rev. Stat., Crimes (1887).

Carrying concealed weapon.

SEC. 980.   Hereafter it shall be unlawful for any resident of any city, town or village, or, for any one not a resident of any city, town or village, in said territory, but a sojourner therein, to bear upon his person, concealed or openly, any fire-arm or other deadly weapon, within the limits of any city, town or village.

1876 Wyo. Comp. Laws ch. 52 § 2, as codified in Wyo. Rev. Stat., Crimes (1887).

Non-resident carrying weapons after notification by officer.

SEC. 981.   If any person not a resident of any town, city or village of Wyoming Territory, shall, after being notified of the existence of the last preceding section by a proper peace officer, continue to carry or bear upon his person any fire-arm or other deadly weapon, he or she shall be deemed to be guilty if a violation of the provisions of said section and shall be punished accordingly.

34a

1876 Wyo. Comp. Laws ch. 52 § 3, as codified in Wyo. Rev. Stat., Crimes (1887).

Penalty for violating last two sections.

SEC. 982.  Any person violating any of the provisions of the last two preceding sections shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and, in the default of the payment of any fine which may be assessed against him, shall be imprisoned in the county jail for not less than five days nor more than twenty days.

1884 Wyo. Sess. Laws ch. 67 § 1, as codified in Wyo. Rev. Stat., Crimes (1887).

Exhibiting deadly weapon in angry manner.

SEC. 983.  whoever shall, in the presence of one or more persons, exhibit any kind of fire-arms, bowie knife, dirk, dagger, slung shot or other deadly weapon, in a rude, angry or threatening manner not necessary to the defense of his person, family or property, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

35a

1879 Wyo. Sess. Laws ch. 43 § 1, as codified in Wyo. Rev. Stat., Crimes (1887).

SEC. 984. It shall be unlawful for any person in this territory to fire any rifle, revolver or other fire-arm of any description whatever, from any window, door, or other part of any railroad car or train, engine or trailer, or along the line of railroad during the passing of any train or engine, or when any person is passing in the vicinity of the person having in his possession, such fire-arm, and any person so offending, shall, on conviction, be fined in a sum not exceeding twenty dollars, and for second offense, confined in the county jail for a term not exceeding sixty days. And it shall be the duty of any railroad company to post a copy of this and the next succeeding section in every railroad car used for the transportation of passengers passing through this territory. But nothing in this section contained, shall be construed as preventing employees on railroad trains from carrying fire arms, and using the same when necessary for protection of themselves and the persons and property under their charge.

1876 Wyo. Comp. Laws ch. 35 § 127, as codified in Wyo. Rev. Stat., Crimes (1887).

Having possession of offensive weapons.

SEC. 1027. If any person or persons shall have upon him any pistol, gun, knife, dirk, bludgeon or other offensive weapon, with intent to assault any person, every such person, on conviction, shall be fined in any sum not exceeding five hundred dollars, or

36a

imprisoned in the county jail not exceeding six months.