IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ESPANOLA JACKSON, et al.,

           Plaintiffs,

   v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

           Defendants.

_____/

No. C 09-2143 RS

**ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.  INTRODUCTION

In this action, plaintiffs challenge the constitutionality of two ordinances of the City and County of San Francisco that regulate, respectively, storage of firearms in the home, and sales of particular types of ammunition.  Relying primarily on the Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) plaintiffs move for judgment on the pleadings.  Because plaintiffs have failed to show that the holdings of those cases compel a conclusion as a matter of law that the challenged ordinances violate the Second Amendment, the motion will be denied.

## II.  BACKGROUND

The operative Amended Complaint seeks declaratory relief that two provisions of the San Francisco Police Code ("SFPC") are unconstitutional, and an injunction against their enforcement:

*Section 4512*, "The Safe Storage Law," generally allows San Francisco residents to carry unsecured handguns freely in their homes at any time, but requires them to apply trigger locks or to store handguns in locked containers when the guns are not under direct, personal control.

*Section 613.10(g),* entitled "Prohibiting Sale Of Particularly Dangerous Ammunition," prohibits gun shops from selling ammunition that has been enhanced to increase the damage it inflicts on the human body, such as fragmenting bullets, expanding bullets, bullets that project shot or disperse barbs into the body, or other bullets that serve no "sporting purpose." Plaintiffs contend that while bullets designed to expand or fragment upon impact fall within this ban, they are particularly suited for self-defense because they are designed, for safety reasons, to prevent ricochet and to eliminate over-penetration of unarmored assailants. Plaintiffs assert the police often use such bullets for the same reasons, and that they are unlike so-called "cop killer" or armor-penetrating bullets that might more reasonably be characterized as "particularly dangerous."[1]

### III.  LEGAL STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Such a motion, like one brought under Rule 12(b)(6), challenges the "the legal sufficiency of the opposing party's pleadings." *Qwest Communications Corp. v. City of Berkley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).  Accordingly, "a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."  *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989).  A defendant's sufficient pleading of an applicable affirmative defense likewise will defeat a plaintiff's motion.  *Id.*  Regardless of what facts or affirmative defenses may be raised by an answer, however, a plaintiff's motion may not be granted absent a showing that he or she "is entitled

---

[1]  The complaint also alleges unconstitutionality of a former version of Section 1290 of the SFPC. That claim was dismissed as moot after Section 1290 was amended.  Plaintiffs elected not to pursue a challenge to revised provisions covering similar subject matter that were codified in other sections of the SFPC.

United States District Court
For the Northern District of California

to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989)

## IV.  DISCUSSION

While plaintiffs assert that the City has failed to raise any factual allegations or affirmative defenses that would defeat their claims, their motion does not contest the adequacy of the pleading of the answer *per se.*  Rather, plaintiffs' motion is focused on supporting their contention that the holdings in *Heller* and *McDonald* compel a finding that Sections 4512 and 613.10(g) violate the Second Amendment, regardless of what the City might offer as justification for their enactment.[2] Plaintiffs have failed to establish that such a conclusion is warranted.

The ordinances at issue in *Heller* effectively (1) completely banned possession of handguns, and (2) required long guns kept in the home to be "unloaded and disassembled or bound by a trigger lock or similar device."  *Heller*, 554 U.S. at 574-575.  Notably, the relief sought by the *Heller* plaintiff was a declaration of his right, "to render a firearm operable and carry it about his home in that condition only when necessary for self-defense."  *Id.* at 576.

After extensively reviewing historical and legal authorities, and parsing the grammatical construction of the Second Amendment, *Heller* declared that "the inherent right of self-defense has been central to the Second Amendment right" and that "the need for defense of self, family, and property is most acute"  in the home. *Id*. at 628.  Accordingly, the Court held, "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, would fail constitutional muster." *Id.* at 628-29 (footnote, citations, and internal quotations omitted).

*Heller* cautioned, however, "the right secured by the Second Amendment is not unlimited." *Id.* at 626.  The Court specifically observed that "nothing in our opinion should be taken to cast

---

[2]  As plaintiffs point out, while *McDonald* held that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*, the opinion does not provide any further guidance on the scope of that right that is material to the analysis here.

1   doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or

2   laws forbidding the carrying of firearms in sensitive places such as schools and government

3   buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at

4   626-27.  Moreover, it stated that this list of permissible types of regulations, "does not purport to be

5   exhaustive." *Id.* at 627 n. 26.

6        Section 4512 of the SFPC, unlike the ordinances challenged in *Heller*, does *not* prohibit the

7   possession of handguns in the home completely, nor require that they (or any other firearms) be kept

8   at all times "unloaded and disassembled or bound by a trigger lock or similar device."  To the

9   contrary, Section 4512 permits individuals the very right the plaintiff in *Heller* was seeking: "to

10  render a firearm operable and carry it about his home in that condition . . . ."

11       Plaintiffs argue that Section 4512 nevertheless impairs their right to bear handguns in self-

12  defense because it is impractical to carry a handgun at all times in the home, particularly when

13  sleeping.  The circumstances under which a person not carrying his or her gun might encounter an

14  immediate threat are endless.  If an intruder burst in during dinner time, and the homeowner's gun

15  were in another room, whatever additional time it might take to disable a trigger lock might be

16  inconsequential, if the gun could not be reached in the first instance.  Conversely, even a sleeping

17  homeowner awakened by a noise downstairs could have plenty of time to render a gun operable

18  before going to investigate.   It is at least conceivable, however, that there could be some situations

19  in which a homeowner, previously asleep or already awake, suddenly becomes aware of an

20  imminent peril when he or she is not armed, but has a gun close at hand.  In such instances, a small

21  delay in being able to fire the weapon might sometimes be consequential.

22       That potentiality, however, is insufficient to compel a conclusion as a matter of law that

23  Section 4512 is unconstitutional under *Heller*, which did not hold that *any* impairment of the ability

24  to use handguns for self defense in the home, no matter how slight, is impermissible. Plaintiffs'

25  argument that 613.10(g), prohibiting the sale of certain types of ammunition within City limit is

26  impermissible under *Heller* is even more attenuated.  The ordinance does not bar the possession and

27  use of handguns for self-defense in the home, or even the possession and use of the specified types

28

United States District Court
For the Northern District of California

1   of ammunition.[3]  Accordingly, plaintiffs simply have not shown that they are entitled to judgment as

2   a matter of law that either Sections 4512 or 613.10(g) are unconstitutional.

3          At the hearing, plaintiffs urged the Court to provide guidance as to the analytical approach,

4   and as to the level of scrutiny, if any, that will be applied in evaluating the constitutionality of these

5   SFPC provisions.  Plaintiffs contend that under a proper reading of *Heller*, courts are not to engage

6   in *any* balancing of interests, such that the traditional nomenclature of "rational basis," intermediate

7   scrutiny," and "strict scrutiny" is no longer applicable in this context.

8          Circuit court decisions after *Heller*, however, have generally applied a "two-step" approach,

9   first examining whether the statute places a burden on conduct falling within the scope of the

10  Second Amendment as historically understood, and then applying either strict or intermediate

11  scrutiny, depending on the severity of any such burden.  *See, e.g.*, *U.S. v. Marzzarella*, 614 F.3d 85,

12  89 (3d Cir. 2010); *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). The Ninth Circuit has yet to

13  issue a binding determination on the point, but concurring opinions in the most recently issued

14  decision in the *Nordyke* matter suggest at least some of its judges are likely to embrace the two-step

15  approach.  *See Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012).

16         At this juncture, it would constitute an improper advisory opinion to state whether a two-step

17  approach will be applied in this case, and what level of scrutiny would then pertain—and a

18  particularly ill-advised one given the rapidly developing state of the law.  As matters currently

19  stand, the only thing reasonably certain is that application of a rational basis standard is not

20  permissible, in the event the ordinances are shown to place a burden on conduct within the historical

21  scope of the Second Amendment in the first instance.  *See Heller*, 554 U.S. at 628 n. 27.

22  _____

23  [3]  Additionally, plaintiffs' argument for the applicability of *Heller's* principles to section 613.10(g)
    rests on their assertion that the prohibited ammunition is in "common use."  Plaintiffs' submission

24  of Exhibits K-N to their request for judicial notice highlights the factual nature of that inquiry, as
    those exhibits consist of magazine and newspaper articles offered to show the "common

25  understanding among those who own firearms" of "the risks and benefits of using expanding
    ammunition, especially in urban areas."  Judicial notice of such materials, offered to prove the truth

26  of the matters asserted therein, is improper, and is denied on that basis.  The balance of plaintiffs'
    request for judicial notice largely consists of legal documents that can be cited for their persuasive

27  value even without judicial notice.  The request is granted as to those materials, but that does not

28  establish as fact the various assertions made in those documents, on which plaintiffs attempt to rely.

1

2                                        V.  CONCLUSION

3          Plaintiffs' motion for judgment on the pleadings is denied.

4

5   IT IS SO ORDERED.

6

7   Dated:  August 17, 2012                         _____
                                                    RICHARD SEEBORG
8                                                   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28