IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ESPANOLA JACKSON, et al., | No. C 09-2143 RS |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. | |

I. INTRODUCTION

Plaintiffs move to enjoin preliminarily the City and County of San Francisco from enforcing two of its local ordinances, one of which requires firearms in the home either to be carried on the person, or kept under lock and key, and one which bans the sale of particular types of ammunition within the jurisdiction. While courts of appeal in other circuits have articulated standards to be applied in Second Amendment cases in the wake of *District of Columbia v. Heller*, 554 U.S. 570 (2008), the only Ninth Circuit decision directly to address those points has been superseded by an opinion that did not. *See Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011)(rehearing *en banc* granted) ("the *Nordyke* panel opinion"); *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) (*en banc*). *Heller* itself focused on addressing the more fundamental question of whether the Second Amendment enshrined any individual rights at all. After concluding that it did, *Heller* overturned the extremely broad handgun ban before it, but expressly left for future consideration the full scope of the Second

Amendment, and the mode of analysis to be employed in evaluating the constitutionality of particular regulations.

Plaintiffs insist that the principles explicated in *Heller* compel the conclusion that San Francisco's ordinances are invalid, even if its holding does not. Ultimately, however, *Heller* left too much unsettled for it to dictate a particular result here. Against the backdrop of evolving law, and in the absence of controlling precedent, the conclusion emerges that plaintiffs have failed to show a probability of success on the merits of their claims that the challenged ordinances are constitutionally infirm. Accordingly, the motion for a preliminary injunction will be denied.

## II.  BACKGROUND

Two provisions of the San Francisco Police Code ("SFPC") remain under challenge in this action. Section 4512, "The Safe Storage Law," generally allows San Francisco residents to possess handguns in their homes at any time, but requires them to apply trigger locks or to store such weapons in locked containers when not carried on their persons.[1]

Section 613.10(g), entitled "Prohibiting Sale Of Particularly Dangerous Ammunition," prohibits gun shops from selling ammunition that has been enhanced to increase the damage it inflicts on the human body, such as fragmenting bullets, expanding bullets, bullets that project shot or disperse barbs into the body, or other bullets that serve no "sporting purpose." Plaintiffs contend that while bullets designed to expand or fragment upon impact fall within this ban, they are particularly suited for self-defense because they are designed, for safety reasons, to prevent ricochet and to eliminate over-penetration of unarmored assailants. Plaintiffs assert the police often use such bullets for the same reasons, and that they are unlike so-called "cop killer" or armor-penetrating bullets that might more reasonably be characterized as "particularly dangerous."

---

[1] In a prior order, the ordinance was described as only requiring that handguns be secured when not "under direct, personal control." Plaintiffs argue that, except for peace officers, San Francisco residents must actually be carrying handguns on their persons to avoid the requirement of using trigger locks or gun safes. The prior language, although imprecise, was not intended to suggest otherwise.

Plaintiffs' prior motion for judgment on the pleadings was denied. They now seek a preliminary injunction, in what they candidly acknowledge is at least in part an attempt to obtain a legal ruling, one way or the other, that would permit appellate review.

### III. LEGAL STANDARDS

A preliminary injunction order is an "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain preliminary relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 21-22. The Ninth Circuit has clarified, however, that courts in this Circuit should still evaluate the likelihood of success on a "sliding scale." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("[T]he 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). As quoted in *Cottrell*, that test provides that, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided, of course, that "plaintiffs must also satisfy the other [*Winter*] factors" including the likelihood of irreparable harm. *Id.* at 1135.

### IV. DISCUSSION

The ordinances at issue in *Heller* in effect (1) completely banned possession of handguns, and (2) required long guns kept in the home to be "unloaded and disassembled or bound by a trigger lock or similar device." *Heller*, 554 U.S. at 574-575. Notably, the relief sought by the *Heller* plaintiff was a declaration of his right, "to render a firearm operable and carry it about his home in that condition only when necessary for self-defense." *Id.* at 576.[2]   After extensively reviewing

---

[2] While not dispositive, this weighs against a conclusion that section 4512 is plainly invalid under *Heller*, as it provides exactly the relief the *Heller* plaintiff sought and obtained, or even more, in that it does not require an explicit need for self-defense.

3

historical and legal authorities, and parsing the grammatical construction of the Second Amendment, *Heller* declared that "the inherent right of self-defense has been central to the Second Amendment right" and that "the need for defense of self, family, and property is most acute" in the home. *Id*. at 628.  Accordingly, the Court held, "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, would fail constitutional muster." *Id.* at 628-29 (footnote, citations, and internal quotations omitted).

*Heller* cautioned, however, "the right secured by the Second Amendment is not unlimited." *Id.* at 626.  The Court specifically observed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.  Moreover, it stated that this list of permissible types of regulations, "does not purport to be exhaustive." *Id.* at 627 n. 26.

Circuit court decisions after *Heller* have generally applied a "two-step" approach, first examining whether the challenged law places a burden on conduct falling within the scope of the Second Amendment as historically understood, and then applying either strict or intermediate scrutiny, depending on the severity of any such burden. *See*, *e.g.*, *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). The Ninth Circuit has yet to issue a binding determination on the point, but concurring opinions in the most recently issued decision in the *Nordyke* matter suggest at least some of its judges would embrace the two-step approach.  *See Nordyke v. King*, 681 F.3d 1041, 1045-1046 (9th Cir. 2012)(O'Scannlain, J., concurring).

Plaintiffs read in *Heller* a rejection of *any* approach that would call for a court to engage in balancing or evaluation of the claimed benefits of a gun control regulation with respect to either the degree to which it burdens rights of gun owners, or is well-designed to achieve its stated ends.

1  Plaintiffs rely on a portion of the majority opinion addressing a proposal in Justice Breyer's dissent.
2  Justice Breyer advocated an "interest-balancing inquiry" that "asks whether the statute burdens a
3  protected interest in a way or to an extent that is out of proportion to the statute's salutary effects
4  upon other important governmental interests." 554 U.S. at 689-90 (Breyer, J., dissenting). In
5  response, the majority said:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

554 U.S. at 634-635.

Because both intermediate and strict scrutiny, as traditionally applied in other areas, require evaluation of, and balancing among, the goals of the law, the degree of infringement on rights, and the "fit" between the law's effects and the governmental interests purportedly served, arguably tension arises between this passage and any application of those traditional forms of scrutiny.[3] *Heller*, however, does not actually hold that some form of further analysis will *never* be appropriate; it merely concluded that as to the ordinance before it, "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," would fail constitutional muster." 554 U.S. at 628-29.

Plaintiffs' proposed analytical framework is wholly unsatisfactory, because it would effectively mean that virtually any regulation of firearms is impossible unless the law plainly fell into one of the categories specifically mentioned in *Heller* (despite the Court's express warning that

---

[3] Although likely dicta, there is no dispute that a footnote in *Heller* precludes application of rational basis review scrutiny—the City does not argue otherwise. *See*, 554 U.S. at 629 n. 27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect.").

its list was non-exhaustive) or could otherwise be shown as a type of regulation with long historical pedigree. Plaintiffs contend that the first *Heller* "step" requires examination of historical precedents to determine if the law is within the "scope" of the Second Amendment, and then, if it is, a further historical evaluation to determine if it falls within some exception.

As an threshold matter, the *Heller* opinion does not plainly adopt or support such an approach. There, most of the historical analysis was addressed to the question of whether the Second Amendment is an *individual* right—an issue no longer in play in this or in any other litigation. *See* 554 U.S. at part II. While the Court also reviewed historical precedents to identify some longstanding exceptions, *see* 554 U.S. at part III, that analysis more properly should be seen as part of the first "step"—i.e., whether the challenged law falls within the scope of the Second Amendment's protections in the first instance. When the Court ultimately turned to the question of the validity of the particular law before it, its reference to historical precedents was more abbreviated, and does not represent the type of analysis plaintiffs suggest must be undertaken in the second "step." *See* 554 U.S. at part III.

Furthermore, as proposed by plaintiffs, the second "step" would be little more than a reiteration of the first, with the result that virtually no regulations of firearms other than those with long historical antecedents would ever be permissible. While some portions of *Heller* could be read to support that view, the Court drew no such bright line, and expressly cautioned that it was not providing "utter certainty" as to the parameters of constitutionally permissible gun control measures. *See* 554 U.S. at 635 ("since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field.").

The question remains, then, as to the appropriate framework for analyzing the constitutionality of these SFPC provisions, post-*Heller*, in the absence of any controlling Circuit precedent. It may well be that before any final judgment is entered in this action, the Circuit will settle the now-existing questions, or at least case law will emerge providing clearer answers. At this juncture, however, the concurring opinion in *Nordyke*, which is consistent with the trends developing in other circuits, represents the best available guidance. Under that approach, which incorporates by reference the *Nordyke* panel opinion, a court is to "consider[] carefully the extent of

1  the regulation's burden on Second Amendment rights." 681 F.3d at 1045 (O'Scannlain, J.,
2  concurring). Furthermore, "only regulations which substantially burden the right to keep and to bear
3  arms trigger heightened scrutiny." *Nordyke* panel opinion, 644 F.3d at 786.[4]

4  Utilizing that analytical structure, it is clear that plaintiffs have not met their burden to show
5  that issuance of a preliminary injunction is warranted against section 613.10(g), which prohibits the
6  sale of certain types of ammunition within city limits. As explained in the *Nordyke* panel opinion,
7  "when deciding whether a restriction on gun sales substantially burdens Second Amendment rights,
8  we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means
9  for obtaining firearms sufficient for self-defense purposes." 644 F.3d at 787. Additionally, "a law
10 does not substantially burden a constitutional right simply because it makes the right more
11 expensive or more difficult to exercise." *Id.* at 787-88. Even assuming a constitutional right to
12 possess and use the particular types of ammunition within the ambit of section 613.10(g) could be
13 found, plaintiffs simply have not shown that prohibiting sales of such ammunition within City limits
14 imposes a substantial burden on their ability to acquire it.[5]

15 Plaintiffs' showing as to the severity of the burdens imposed by section 4512, "The Safe
16 Storage Law," is only marginally better. As noted above, section 4512 gives San Francisco
17 residents the very set of rights the *Heller* plaintiff sought and obtained. San Franciscans may
18 lawfully possess handguns in their own homes, may carry them in their own homes at any time, and
19 may use them for self-defense without running afoul of any aspect of the ordinance.[6] Plaintiffs have

---

[4] The panel opinion declined to decide "precisely what type of heightened scrutiny applies to laws that substantially burden Second Amendment rights." 644 F.3d at 786 n. 9.

[5] Plaintiffs' alternative argument that section 613.10(g) is unconstitutionally vague is not persuasive.

[6] In examining the Second Amendment phrase "keep and bear arms," *Heller* concluded that it refers to two separate concepts. "Bear arms" means "carrying [arms] for a particular purpose—confrontation." "Keep arms" means to "have weapons" or "possess weapons." 554 U.S. at 583-84. Section 4512 imposes no *direct* restrictions at all on the right to "bear" arms. Nor does it preclude anyone from "keeping" arms. The only question is whether its restrictions on how handguns maybe stored interferes with the underlying purposes served by the rights, insofar as they might delay a person's ability to go from merely "keeping" a handgun to "bearing" it in a condition suitable for use in self-defense.

7

offered only the possibility that in a very narrow range of circumstances, the delay inherent in rendering a handgun operable or in retrieving it from a locked container theoretically could impair a person's ability to employ it successfully in self-defense. Even assuming this rises to the level of a "substantial" burden, however, thereby triggering some heightened degree of scrutiny, plaintiffs have not shown the regulation to be overreaching or improper in any way, or that it fails to serve a legitimate governmental interest. Indeed, as noted in *Heller* itself, nothing in its analysis "suggest[s] the invalidity of laws regulating the storage of firearms to prevent accidents." 554 U.S. at 632.

At heart, plaintiffs' contention that the challenged ordinances are unconstitutional turns on a reading of *Heller* that goes well beyond its text. Although the law in this arena undoubtedly will continue to develop, especially with respect to the precise analytical standards and terminology to be employed, plaintiffs have not shown there is reason to believe these provisions of the SFPC are in conflict with the Second Amendment regardless of the particular articulations that may emerge as other district and appellate courts attempt to answer the questions explicitly left open by *Heller*. Accordingly, plaintiffs have not met their burden to show that a preliminary injunction should issue.[7]

## V.  CONCLUSION

The motion for a preliminary injunction is denied.

IT IS SO ORDERED.

Dated: 11/26/12

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[7] Because plaintiffs are claiming infringement of constitutional rights, and contend that their ability to exercise self-defense is impaired, some degree of irreparable harm and hardship to them likely could be presumed. Even on the "sliding scale" of *Cottrell*, however, the balance of the circumstances do not warrant preliminary relief.